1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

8

9  Ramon RODRIGUEZ VAZQUEZ, on behalf of
himself as an individual and on behalf of others
10  similarly situated,

11                    Plaintiff,

12          v.

13  Drew BOSTOCK, Seattle Field Office Director,
Enforcement and Removal Operations, United
14  States Immigration and Customs Enforcement
(ICE); Bruce SCOTT, Warden, Northwest ICE
15  Processing Center; Kristi NOEM, Secretary, United
States Department of Homeland Security; UNITED
16  STATES DEPARTMENT OF HOMELAND
SECURITY; Pamela BONDI, Attorney General of
17  the United States; EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW (EOIR); Sirce OWEN,
18  Acting Director, EOIR; TACOMA
IMMIGRATION COURT,

19                    Defendants.

20

Case No. 25-cv-5240

**CLASS ACTION COMPLAINT
AND PETITION FOR WRIT OF
HABEAS CORPUS**

21
22
23

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

## INTRODUCTION

1.      Plaintiff Ramon Rodriguez Vazquez is a noncitizen detained at the Northwest ICE Processing Center (NWIPC) who faces prolonged, mandatory detention because of a unique, draconian policy adopted by the immigration judges (IJs) at the Tacoma Immigration Court that prevents him and others from being released on bond while in civil immigration proceedings. Agency policies and practices further exacerbate Mr. Rodriguez's plight—and prolong his detention and that of others—by inhibiting meaningful appeals to challenge such bond denials.

2.      For at least the past two years, all but one of the IJs at the Tacoma Immigration Court have adopted a practice of denying *all* requests for release on bond by noncitizens in removal proceedings who entered the United States without inspection, including as to those who have lived here for decades. The IJs have justified their severe policy by citing the mandatory detention provision of 8 U.S.C. § 1225(b)(2), even though that provision is explicitly limited to those "seeking admission." Notably, the Tacoma Immigration Court is an outlier, as similarly situated noncitizens in detention centers elsewhere in the country receive bond hearings.

3.      The Tacoma Immigration Court's policy of refusing to grant bond requests defies the Immigration and Nationality Act (INA). Detention under 8 U.S.C. § 1225(b)(2) is limited to recent arrivals to the United States, and does not apply to those who have lived in this country for years.

4.      Moreover, U.S. Immigration and Customs Enforcement (ICE) itself asserts that 8 U.S.C. § 1226(a), not § 1225(b), governs the arrest and detention of noncitizens who entered without inspection and are later apprehended in the interior. In documenting the arrest of such noncitizens, ICE typically records that the person was arrested and detained under § 1226(a) (unless the person has committed an offense subjecting them to § 1226(c) detention).

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 1
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  Accordingly, in bond proceedings, the agency has declined to defend the Tacoma Immigration

2  Court's rulings.

3       5.     Over the past few years, IJs at the Tacoma Immigration Court have deprived

4  dozens and likely hundreds of noncitizens detained at NWIPC of their right to be released on

5  bond because of this practice.

6       6.     The only avenue for relief comes in the form of an appeal to the Board of

7  Immigration Appeals (BIA). Yet this right to an appeal is virtually meaningless.

8       7.     According to the BIA's own data, on average, the agency takes well over six

9  months to render a decision on a bond appeal. By this time, the damage is done: most appeals

10  become moot because a final decision has been entered and the noncitizen has either been

11  released or deported. Indeed, many noncitizens simply give up on their cases after spending

12  months locked up in detention, as detention makes it much harder for them to secure legal

13  representation and successfully defend themselves in the underlying removal proceedings.

14       8.     Rather than treat the custody appeals as cases involving a person's core right to

15  liberty under the Due Process Clause, the BIA lets them languish for months, and in some cases,

16  years. This practice stands in stark contrast to federal courts facing the similar context of pretrial

17  detention. Both district judges and courts of appeals act within days, weeks, or at most a couple

18  of months, of appeals from magistrate judge detention decisions. By systematically delaying

19  bond appeal determinations, the BIA fails to similarly acknowledge the serious liberty issues at

20  stake in these civil detention cases.

21       9.     Delays in bond appeal determinations compound the severe harms resulting from

22  erroneous bond denials by the IJ: prolonged detention, difficulty in defending cases, and

23  exposure to the jail-like conditions of ICE's detention facilities, among other harms.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 2
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

10.    Plaintiff Ramon Rodriguez Vazquez (the Named Plaintiff) accordingly seeks to represent two classes of noncitizens to challenge these agency policies and practices denying bond and preventing any meaningful appeal.

11.    First, Mr. Rodriguez seeks to represent a class of noncitizens detained at the NWIPC who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival into the United States, and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing ("Bond Denial Class"). This class of individuals seeks declaratory relief that establishes class members are subject to detention under § 1226(a) and therefore entitled to a full and fair bond hearing.

12.    Second, Mr. Rodriguez seeks to represent a class of noncitizens who have a pending appeal, or will file an appeal, of an IJ's bond hearing ruling to the BIA ("Bond Appeal Class"). This class of individuals seeks declaratory relief that establishes their right to a bond appeal decision by the BIA within sixty days of filing the notice of appeal.

## JURISDICTION AND VENUE

13.    This case arises under the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101–1538, and its implementing regulations; the Administrative Procedure Act (APA), 5 U.S.C. §§ 500–596, 701–706; and the U.S. Constitution.

14.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the laws of the United States, and under 28 U.S.C. § 2241, as the case challenges Plaintiff's and class members' unlawful detention.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 3
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

15. The Court may grant relief pursuant to 28 U.S.C. § 2241; the Declaratory Judgment Act, 28 U.S.C. § 2201; the APA, 5 U.S.C. §§ 702, 706; the All Writs Act, 28 U.S.C. § 1651; Federal Rule of Civil Procedure 65; and the Court's inherent equitable powers.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because Defendants are U.S. agencies and officers of the United States acting in their official capacities or because they reside in this district. In addition, a substantial part of the events or omissions giving rise to the claims occurred in this District, Plaintiff is detained in this District, and no real property is involved in this action.

## PARTIES

17. Plaintiff Ramon Rodriguez Vazquez is currently detained at NWIPC. He is a resident of Grandview, Washington. The immigration court denied him a bond on March 12, 2025.

18. Defendant Drew Bostock is the Field Office Director for ICE Enforcement and Removal Operations (ERO) in Seattle, Washington. As the ERO Seattle Field Office Director, he is Plaintiff's immediate custodian, responsible for his detention at NWIPC, and the person with the authority to authorize their detention or release. Defendant Bostock is sued in his official capacity.

19. Bruce Scott is the Warden of the NWIPC, oversees the day-to-day functioning of NWIPC, and has immediate physical custody of Plaintiff pursuant to a contract with ICE to detain noncitizens. Mr. Scott is sued in his official capacity as the Warden of a federal detention facility. *See Castaneda Juarez v. Asher*, No. C20-700 JLR-MLP, 2021 WL 1946222, at *3–5 (W.D. Wash. May 14, 2021).

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 4
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

20.     Defendant Kristi Noem is the Secretary of the Department of Homeland Security. As Secretary, she oversees the federal agency responsible for implementing and enforcing the INA, including the detention of noncitizens. She is sued in her official capacity.

21.     Defendant Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention of noncitizens.

22.     Defendant Pamela Bondi is the Attorney General of the United States and head of the U.S. Department of Justice. In that capacity, she oversees EOIR and the immigration court system the agency administers. She is ultimately responsible for the agency's operation. She is sued in her official capacity.

23.     Defendant EOIR is a component agency of the Department of Justice responsible for conducting removal and bond hearings of noncitizens. EOIR is comprised of a lower adjudicatory body administered by IJs and an appellate body known as the Board of Immigration Appeals. IJs issue initial decisions in bond hearings, which are then subject to appeal to the BIA.

24.     Defendant Sirce Owen is the Director of EOIR and has ultimate responsibility for overseeing the operation of the immigration courts and the Board of Immigration Appeals, including bond hearings. She is sued in her official capacity.

25.     The Tacoma Immigration Court is the adjudicatory body within EOIR with jurisdiction over the removal and bond cases of all individuals detained at the NWIPC.

**LEGAL BACKGROUND**

**Detention under 8 U.S.C. § 1226(a) and § 1225(b)(2)**

26.     The INA prescribes three basic forms of detention for noncitizens in removal proceedings.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 5
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

27.    First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

28.    Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

29.    Last, the Act also provides for detention of noncitizens who have been previously ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

30.    This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

31.    The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

32.    Following enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 6
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

33.    Thus, in the decades that followed, most people who entered without inspection—unless they were subject to some other detention authority—received bond hearings. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

34.    Sometime around 2022, over twenty-five years after IIRIRA was enacted, IJs in Tacoma abruptly departed from their policy of holding bond hearings for individuals who entered the United States without inspection. Parting ways with the rest of the immigration courts in the country, the IJs at the Tacoma Immigration Court—including the Assistant Chief Immigration Judge (ACIJ)—began holding that they lacked jurisdiction to hold bond hearings for all such individuals.

35.    The IJs reasoned the mandatory detention provision of § 1225(b)(2)(A) applies to people who enter without inspection because that subparagraph of the statute references "applicant[s] for admission." According to the IJs, the paragraph therefore applies to all individuals who are subject to the grounds of inadmissibility at § 1182, including § 1182(a)(6)(A) and (a)(7). Those two provisions make inadmissible people who entered the United States without inspection or who do not have adequate documentation to allow them to enter or remain in the United States.

36.    This policy change had and continues to have dramatic consequences. As a result of it, all noncitizens detained at NWIPC who have entered the United States without inspection and are subject to the grounds of inadmissibility, including long-time U.S. residents, are now considered to be in mandatory detention under § 1225(b) and ineligible for bond.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 7
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

37.     This interpretation defies the INA. The plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Plaintiff.

38.     Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, which "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

39.     The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

40.     By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A).

41.     Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Plaintiff and other putative class members.

42.     Notably, the Tacoma Immigration Court adopted its interpretation of § 1225(b) even though DHS, the agency responsible for arresting and detaining noncitizens at NWIPC, takes a contrary position.

43.     DHS continues to issue arrest warrants and make custody determinations pursuant to § 1226 for people who have entered without inspection and who have since resided in the United States.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 8
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

44.     When DHS arrests individuals like Mr. Rodriguez, the agency typically issues a Notice of Custody Determination (Form I-286). That Notice states that the basis for the individual's detention is § 236 of the INA, which corresponds to 8 U.S.C. § 1226.

45.     In proceedings before the Tacoma Immigration Court, DHS has not argued the immigration court lacks jurisdiction.

46.     In several cases where IJs have held that § 1225(b)(2) applies, noncitizens have filed appeals to the BIA. In at least one of the two appeals that are known to have reached adjudication at the BIA, DHS filed a brief asserting the noncitizen was detained pursuant to § 1226(a) and was not subject to mandatory detention under § 1225(b).

47.     In the two appeals the BIA has adjudicated, the Board has reversed the IJ decision finding that the person was ineligible for bond. Neither decision was designated as a precedent decision. *See* 8 C.F.R. § 1003.1(d)(1) (directing BIA to issue "precedent decisions" to "provide clear and uniform guidance . . . on the proper interpretation and administration of the [INA]")

48.     Following the BIA's decision, IJ Fitting—who had issued one of the two decisions that was reversed by the BIA—began finding that noncitizens like Plaintiff are in fact eligible for bond. However, the other three Tacoma IJs, including ACIJ Scala, refused to modify their practice and have refused to follow the Board's decisions, reasoning that the decisions are not binding precedent.

49.     For example, in a bond hearing on September 20, 2023, ACIJ Scala ignored the reasoning of the BIA decision, which an advocate presented in support of her client's bond eligibility. ACIJ Scala instead questioned whether the advocate had permission to submit the decision.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 9
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

50.    Notably, as ACIJ, Scala is responsible for managing the Tacoma Immigration Court. As such, she is charged with assisting the Chief Immigration Judge (a nationwide position) in policy implementation and evaluating the performance of other IJs. *See* 8 C.F.R. § 1003.9(b).

51.    After the September 20, 2023, hearing, advocates moved for the BIA to designate the September 1, 2023, decision as precedent pursuant to 8 C.F.R. § 1003.1(g)(3). In the motion, advocates noted the continued practice of the Tacoma Immigration Court in failing to follow the Board's decision. However, on December 11, 2023, the BIA denied the request.

52.    Upon information and belief, the BIA has not issued a ruling on any other appeals challenging this practice. One other appeal, which was filed on August 18, 2023, remains pending.

53.    To the best of Plaintiff's knowledge, the Tacoma Immigration Court is the only immigration court in the country to ignore the INA's text and DHS's own statements that it is detaining individuals like Plaintiff under § 1226(a).

54.    National statistics reflect that IJs in Tacoma are denying bond hearings at extraordinary rates. For example, in Fiscal Year (FY) 2023, bond was granted in a mere 3% of cases at NWIPC—far less than most courts, and by far the lowest grant rate in the United States for any immigration court. *See* Transactional Records Access Clearinghouse (TRAC), Detained Immigrants Seeking Release on Bond Have Widely Different Outcomes (July 19, 2023), https://tracreports.org/reports/722/.

55.    That trend continues. For example, in the FY 2025 data available to date, 13 bond cases have been granted, 126 have been denied, and 65 cases have been withdrawn. In other words, only around 6% of bond requests filed before the Tacoma Immigration Court in FY 2025

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 10
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

have been granted. TRAC, *Immigration Court Bond Hearings and Related Case Decisions* (last accessed Mar. 19, 2025), https://tracreports.org/phptools/immigration/bond/ (field selections: Bond Hearing Immigration Court: Tacoma; Bond Hearing Fiscal Year: 2025; Bond Hearing Outcome: Granted, Not Granted, Withdraw). Upon information and belief, many of the "withdrawn" decisions occur in cases where the IJ indicates he or she will deny on jurisdiction because 8 U.S.C. § 1225(b)(2) applies. Moreover, these numbers likely mask the true rate of denial, as many noncitizens likely forgo seeking bond in the first place because they know the IJ will conclude there is no jurisdiction to set bond.

**The BIA's Practice of Delayed Decisions in Bond Proceedings**

56.   The BIA's appellate process does not offer a meaningful avenue to correct the Tacoma Immigration Court's errors.

57.   According to the agency's own data, during FY 2024, the agency's average processing time for a bond appeal was 204 days, or nearly seven months.

58.   The lengthy delays in bond appeal determinations do not affect only Mr. Rodriguez and similarly situated individuals subject to the Tacoma Immigration Court's bond denial policy described above. It also affects all noncitizens who are detained, who have a right to a bond hearing, and who have their request for a bond denied or cannot afford the bond they are provided.

59.   This average of 204 days tells only part of the story. The data released by EOIR shows that in many cases, the BIA review takes far longer—in some cases, a year or more—to decide a person's bond appeal.

60.   These processing times defy the Due Process Clause.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 11
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

61.    The Supreme Court and the Ninth Circuit have explained that appellate review is a critical component of a constitutional civil detention scheme, including in immigration cases. *See, e.g.*, *Schall v. Martin*, 467 U.S. 253, 280 (1984); *Singh v. Holder*, 638 F.3d 1196, 1209 (9th Cir. 2011); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1065–66 (9th Cir. 2008).

62.    The Supreme Court has also made clear that *timely* appellate review is a key feature of any civil detention scheme. As the Court has explained, "[r]elief [when seeking review of detention] must be speedy if it is to be effective." *Stack v. Boyle*, 342 U.S. 1, 4 (1951).

63.    Most notably, the Court upheld the federal pretrial detention under the Bail Reform Act in part because the statute "provide[s] for immediate appellate review of the detention decision." *United States v. Salerno*, 481 U.S. 739, 752 (1987). As the Ninth Circuit later elaborated, "[e]ffective review of pretrial detention orders necessarily entails a speedy review in order to prevent unnecessary and lengthy periods of incarceration on the basis of an incorrect magistrate's decision." *United States v. Fernandez-Alfonso*, 813 F.2d 1571, 1572 (9th Cir. 1987).

64.    These principles derive from the federal pretrial context, where, by definition, individuals are subject to federal criminal proceedings. Yet here, where only civil proceedings are at issue, the BIA provides nothing like the speedy review federal district and appellate courts provide of magistrate judge detention decisions.

65.    Without timely review, appellate review is meaningless. Indeed, the Supreme Court has explained that the opportunity to obtain "freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack*, 342 U.S. at 4. Additionally, such detention "may imperil the [detained person's] job, interrupt his source of income, and impair his family relationships." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 12
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

66.    During the many months the BIA takes to review a bond appeal, a detained noncitizen will be forced to defend themselves against their removal on the merits, depriving them of a meaningful chance to assemble evidence outside detention, coordinate with family, or communicate with potential witnesses in other countries.

67.    Indeed, their very detention significantly reduces their likelihood of obtaining legal representation. In removal proceedings, noncitizens have the right to be represented by legal counsel but "at no expense to the government." 8 U.S.C. § 1362. Those detained while in removal proceedings face significant challenges to accessing and communicating with counsel or other forms of legal assistance. *See, e.g.*, ACLU, *No Fighting Chance: ICE's Denial of Access to Counsel in U.S. Immigration Detention Centers* 6 (June 9, 2022), https://www.aclu.org/ publications/no-fighting-chance-ices-denial-access-counsel-us-immigration-detention-centers.

68.    The lack of legal representation in turn dramatically reduces the potential for successful outcomes in their underlying removal proceedings. *Id.* at 12.

69.    The months a noncitizen waits for appellate review also deprives them of time with their spouses, children, parents, and other family members. These individuals—who are often U.S. citizens or lawful permanent residents—are similarly deprived of the love, care, and financial support that the detained person provides.

70.    Time in detention is also difficult in other ways. Detained persons are often incarcerated in jail-like settings, forced to sleep in communal spaces, receive inadequate medical care, and subjected to other degrading treatment.

71.    While not all noncitizens succeed in their appeals, some do. The BIA's months-long appellate review means that for those individuals, they have spent months of unnecessary time in detention and suffered the many harms outlined above.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 13
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

72.    Such review processing times violate the Due Process Clause and do not constitute a reasonable time as required by the APA.

### NAMED PLAINTIFF'S ALLEGATIONS

73.    Plaintiff Ramon Rodriguez Vazquez (Mr. Rodriguez) is currently detained at NWIPC.

74.    Mr. Rodriguez is a resident of Grandview, Washington. He has lived there since 2009. He works in Washington's agriculture sector.

75.    Mr. Rodriguez has been married nearly 40 years. His wife, four children, and ten grandchildren all live in the United States. His eight siblings, all of whom are U.S. citizens, live in California.

76.    Mr. Rodriguez owns his home in Grandview. His children and grandchildren all lives minutes aways from him.

77.    Mr. Rodriguez was arrested at his home on February 5, 2025, when police and immigration authorities arrived to serve a warrant. Mr. Rodriguez was not arrested or charged for criminal activity.

78.    Mr. Rodriguez has no criminal history in the United States or anywhere else in the world.

79.    Following his arrest, Mr. Rodriguez requested a bond hearing. In support of that request, he included information regarding his ties to the United States to demonstrate that he is not a flight risk or a danger.

80.    At a hearing on March 12, 2025, IJ John Odell denied Mr. Rodriguez a bond hearing, holding that he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2) because DHS alleged he entered the United States without inspection.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 14
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

81.     Mr. Rodriguez has since appealed the IJ's order, and that appeal is pending.

82.     Mr. Rodriguez's continued detention is harming him and his family in several ways.

83.     First, he has not received a meaningful opportunity to present his request for release from detention before a neutral decisionmaker. Mr. Rodriguez has a fundamental interest in his freedom and receiving the legal process to which he is entitled by statute before he is deprived of liberty.

84.     Mr. Rodriguez is also separated from his family and community. He cannot be with his partner of 40 years, his children, or his grandchildren, all of whom live close to him. Mr. Rodriguez is experiencing significant and deep emotional and mental trauma from this separation from all of those he loves.

85.     In addition, Mr. Rodriguez is unable to help support and provide for his family because he is detained.

86.     Further, Mr. Rodriguez also suffers from medical conditions, including high blood pressure, that require regular medication. Staff at NWIPC have not always provided him with the daily medication that his health requires, resulting in significant and at times painful health effects.

87.     Finally, Mr. Rodriguez faces a more difficult prospect of defending against his removal from detention. Detention inhibits removal defense in many ways, including by making it difficult to communicate with witnesses, gather evidence, and afford a lawyer, among other related harms. In addition, because he is not working, Mr. Rodriguez cannot afford a lawyer to help pay for his defense.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 15
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1

## CLASS ALLEGATIONS

2      88.    Mr. Rodriguez brings this action on behalf of himself and all other persons who

3  are similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). A class

4  action is proper because this action involves questions of law and fact common to the class; the

5  class is so numerous that joinder of all members is impractical; the claims of the Plaintiff are

6  typical of the claims of the class, Plaintiff will fairly and adequately protect the interests of the

7  class; and Defendants have acted on grounds that apply generally to the class, so that final

8  declaratory relief is appropriate with respect to the class as a whole.

9  **<u>Bond Denial Class</u>**

10      89.    Plaintiff seeks to represent a "Bond Denial Class" comprised of the following:

11      All noncitizens detained at the Northwest ICE Processing Center who (1) have
        entered or will enter the United States without inspection, (2) are not apprehended
12      upon arrival, and (3) are not or will not be subject to detention under 8 U.S.C. §
        1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or
13      requests a bond hearing.

14      90.    The Bond Denial Class is so numerous that joinder of all members is

15  impracticable. Plaintiff is not aware of the exact number of putative class members as

16  Defendants are uniquely positioned to identify such persons. Upon information and belief, there

17  are hundreds of individuals detained each year at NWIPC to whom the Tacoma Immigration

18  Court's no-bond policy applies. The class is also comprised of many future members.

19      91.    The proposed class meets the commonality requirement of Federal Rule of Civil

20  Procedure 23(a)(2). All class members present the same question of whether § 1225(b)(2)'s

21  mandatory detention provisions apply to them and prevent them from receiving a bond hearing

22  under § 1226(a) and its implementing regulations.

23

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 16
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

92.     Named Plaintiff's claims are typical of the class, as he faces the same injury as the class and asserts the same claims and rights as the class.

93.     The proposed class meets the adequacy requirement of Federal Rule of Civil Procedure 23(a)(4). The Named Plaintiff seeks a declaration of rights applicable to the whole class, are represented by competent class counsel, and will fairly and adequately protect the class's interest.

**Bond Appeal Class**

94.     Mr. Rodriguez seeks to represent a class entitled the "Bond Appeal Class," which consists of:

> All detained noncitizens who have a pending appeal, or will file an appeal, of an immigration judge's bond hearing ruling, to the Board of Immigration Appeals.

95.     The Bond Appeal Class is so numerous that joinder of all members is impracticable. Plaintiff is not aware of the exact number of potential class members because Defendants are uniquely positioned to identify such persons. However, upon information and belief, there are thousands of noncitizens who file an appeal in their bond proceedings each year.

96.     The proposed class meets the commonality requirement of Federal Rule of Civil Procedure 23(a)(2). All class members present the same question of whether the Due Process Clause or the APA entitles them to timely adjudication of their bond hearing appeals.

97.     Plaintiff's claims are typical of the class, as he faces the same injury as the class and asserts the same claims and rights as the class.

98.     The proposed class meets the adequacy requirement of Federal Rule of Civil Procedure 23(a)(4). The proposed class seeks a declaration of rights applicable to the whole class, is represented by competent immigration counsel, and Plaintiff will fairly and adequately protect the class's interest.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 17
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**CAUSES OF ACTION**

**COUNT I**
**Violation of 8 U.S.C. § 1226(a)**
**Unlawful Denial of Bond Hearings**
**(on Behalf of Plaintiff and the Bond Denial Class)**

99.     Plaintiff incorporates by reference the allegations of fact set forth in paragraphs 1–98.

100.     The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to noncitizens residing in the United States who are subject to the grounds of inadmissibility because they previously entered the country without being admitted. Such noncitizens are detained under § 1226(a), unless they are subject to another detention provision, such as § 1225(b)(1), § 1226(c), or § 1231.

101.     Nonetheless, the Tacoma Immigration Court IJs have a policy and practice of applying § 1225(b)(2) to Bond Denial Class members.

102.     The application of § 1225(b)(2) to Bond Denial Class members violates the Immigration and Nationality Act.

**COUNT II**
**Violation of the Administrative Procedure Act**
**Unlawful Denial of Bond**
**(on Behalf of Plaintiff and the Bond Denial Class)**

103.     Plaintiff incorporates by reference the allegations of fact set forth in paragraphs 1–98.

104.     The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to noncitizens residing in the United States who are subject to the grounds of inadmissibility because they originally entered the United States without inspection. Such noncitizens are

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 18
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

detained under § 1226(a), unless they are subject to another detention provision, such as § 1225(b)(1), § 1226(c) or § 1231.

105.    Nonetheless, the Tacoma Immigration Court IJs have a policy and practice of applying § 1225(b)(2) to Bond Denial Class members.

106.    The application of § 1225(b)(2) to Bond Denial Class members is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA. *See* 5 U.S.C. § 706(2).

## COUNT III
### Violation of the Due Process Clause of the Fifth Amendment
### Delayed Adjudication of Bond Appeals
### (on Behalf of Plaintiff and the Bond Appeal Class)

107.    Plaintiff incorporates by reference the allegations of fact set forth in paragraphs 1–98.

108.    The Due Process Clause guarantees persons in civil detention timely appellate review of the decision to detain.

109.    By not adjudicating appeals within sixty days of the filing of a notice of appeal, the BIA does not provide timely appellate review of detention decisions.

110.    This failure to provide timely appellate review violates the Due Process Clause of the Fifth Amendment.

## COUNT IV
### Violation of the Administrative Procedure Act
### Delayed Adjudication of Bond Appeals
### (on Behalf of Plaintiff and the Bond Appeal Class)

111.    Plaintiff incorporates by reference the allegations of fact set forth in paragraphs 1–98.

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 19
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

112.    The APA requires that agencies act on matters presented to them within a "reasonable time." 5 U.S.C. § 555(b). It also empowers individuals to sue for "agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1)

113.    In the context of physical liberty, a reasonable time for appellate review of a civil detention decision is sixty days from the filing of the notice of appeal.

114.    The BIA's appellate review extends far longer than sixty days in the cases of proposed Bond Appeal Class members.

115.    This failure to provide timely appellate review violates the APA.

**PRAYER FOR RELIEF**

WHEREFORE,

A.  Plaintiff respectfully requests that this Court:

    1.  Assume jurisdiction over this matter;

    2.  Certify this case as a class action, and certify a Bond Denial Class and a Bond Appeal Class;

    3.  Appoint Named Plaintiff Ramon Rodriguez Vazquez as representative of the Bond Denial Class;

    4.  Appoint Named Plaintiff Ramon Rodriguez Vazquez as representative of the Bond Appeal Class;

    5.  Appoint undersigned counsel as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

B.  As remedies for each of the causes of action asserted above, Plaintiff and proposed class members request:

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 20
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1. A declaratory judgment finding Defendants' policy and practice denying bonds for lack of jurisdiction to Named Plaintiff Ramon Rodriguez Vazquez and Bond Denial Class members to violate the INA and the APA;

2. A writ of habeas corpus as to Named Plaintiff Ramon Rodriguez Vazquez, requiring that Defendants release him or provide the bond hearing to which he is entitled within 14 days;

3. A declaratory judgment finding that the Due Process Clause or the APA provides that the Named Plaintiff and the Bond Appeal Class Members have a right to timely adjudication of their bond appeal by receiving a decision within 60 days of filing the notice of appeal so long as the noncitizen remains detained;

4. A writ of habeas corpus as to Named Plaintiff, requiring that Defendants release him or adjudicate his bond appeal within 60 days;

C. Reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and

D. Such further relief as this Court deems just and appropriate.

DATED this 20th day of March, 2025.

s/ Matt Adams
Matt Adams, WSBA No. 28287
matt@nwirp.org

s/ Leila Kang
Leila Kang, WSBA No. 48048
leila@nwirp.org

s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid, WSBA No. 46987
glenda@nwirp.org

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974
aaron@nwirp.org

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Suite 400
Seattle, WA 98104
(206) 957-8611

*Counsel for Plaintiff and the
Proposed Class*

CLASS ACTION COMPL. & PET. FOR
WRIT OF HABEAS CORPUS - 21
Case No. 25-cv-5240

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611