# Exhibit 2

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
TACOMA IMMIGRATION COURT
TACOMA, WASHINGTON

Matter of:

▮▮▮▮▮▮▮▮▮▮

Respondent

File Number: ▮▮▮▮▮
In removal proceedings

**DETAINED**

Application:           Bond Redetermination

On Behalf of the Respondent:
Julia Braker, Esq.
Northwest Immigrant Rights Project
1119 Pacific Avenue, Suite 1400
Tacoma, Washington 98402

On Behalf of the Department:
Office of the Chief Counsel
Department of Homeland Security
1623 East J Street, Suite 2
Tacoma, Washington 98421

**MEMORANDUM OF THE IMMIGRATION JUDGE**

### I.  SUMMARY OF THE ISSUES

Respondent is a 46-year-old native and citizen of ▮▮▮. Respondent arrived in in the United States in 1994 or 1995. Respondent was last in ▮▮▮ from 2000-2004. The Department of Homeland Security (DHS) encountered Respondent in Wallace, ID after his conviction in Shoshone County, ID for Possession of Open Container on April 15, 2023. DHS placed Respondent in removal proceedings by filing a Notice to Appear, charging him with being removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) as a noncitizen present in the United States without being admitted or paroled. Respondent is now detained at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington. He requested a custody redetermination hearing before an Immigration Judge. DHS contends Respondent failed to meet his burden that he is not a danger or a flight risk. The court agrees, but first and foremost addresses the jurisdictional issue below.

The issue before the court is whether this court has jurisdiction over the DHS' bond determination for an individual who is an "applicant for admission" under section 235 of the INA. At Respondent's hearing, the DHS conceded that the court has jurisdiction under section 236(a)

of the INA.[1] For the reasons explained below, the court finds that Respondent is detained under section 235 of the INA and it does not have jurisdiction to redetermine Respondent's bond. For purposes of judicial economy and the court makes alternative findings that Respondent failed to meet his burden that he is not a danger to the community or a flight risk. Respondent appealed the court's custody redetermination, and the court prepared this memorandum to facilitate review of Respondent's appeal. *See* Immigration Court Practice Manual 9.3(e)(7) (June 23, 2023). Importantly, nothing in this ruling impacts the DHS's authority to release Respondent on parole with or without bond under section 212(d)(5) of the INA.

## II. JURISDICTIONAL AND STATUTORY ANALYSIS

The immigration detention framework is multifaceted and reviewing courts have taken different approaches on the interplay between mandatory and discretionary detention. This court acknowledges that there is no precedent decision squarely on point for a noncitizen who entered the United States without inspection or parole and has not been through the expedited removal or credible fear process. But a plain reading of the statutes undergirding immigration detention, along with current caselaw from the Supreme Court of the United States and Attorney General, makes clear to this court that Congress did not give immigration judges jurisdiction to redetermine bond for individuals who are "applicants for admission" under section 235 of the INA, such as Respondent.

Respondent and the DHS believe that because Respondent was placed in formal removal proceedings under section 240 of the INA by the issuance of an NTA, this court must evaluate Respondent's bond determination under section 236 of the INA. The detention of a noncitizen under section 236 of the INA during formal removal proceedings is discretionary unless the noncitizen is subject to mandatory detention. *See* INA § 236(a), (c)(1). If the DHS exercises this discretion to arrest and detain a noncitizen, it may "continue to detain" the individual pending removal proceedings, or it "may release the [noncitizen]" on bond or conditional parole. INA § 236(a)(1), (2).[2]

But there are many noncitizens who do not fit within the discretionary framework that Congress devised in section 236(a). Relevant here are "arriving aliens" and certain "other aliens" who are applicants for admission. *See* INA § 235(b). The statutory definition for an "applicant for admission" includes individuals seeking initial entry at a designated port of entry and noncitizens

---

[1] Generally, litigating parties cannot waive subject-matter jurisdiction. *See, e.g.* Fed. R. Civ. Proc. 12(b)(1). The mere fact that the DHS is conceding jurisdiction does not mean that this court is empowered to do that which the statute clearly indicates it cannot. For example, if the DHS were to "concede" jurisdiction for an individual charged as an "arriving alien," the court would still not have jurisdiction to redetermine custody.

[2] While not part of this decision, it is clear to this court that section 236 applies only to individuals who do not meet the definition of applicant for admission. In other words, section 236 applies to those who have been admitted and have subsequently become removable.

present in the United States who have not been admitted. INA § 235(a)(1); *see also Matter of Rosa Isela Velasquez-Cruz*, 26 I&N Dec. 458, 462 n. 5 (BIA 2014) ("We note that regardless of whether an alien who illegally enters the United States is caught at the border or inside the country, he or she will still be required to prove eligibility for admission."). This statute mandates detention for (1) applicants for admission who are subject to expedited removal and (2) applicants for admission who are not subject to expedited removal and who are placed in formal removal proceedings.[3] *Compare* INA § 235(b)(1)(A)(i)-(ii) (stating that someone inadmissible under INA §§ 212(a)(6)(C) or 212(a)(7) shall be ordered removed from the United States without further hearing or review unless they indicate a credible fear of persecution), *with* INA § 235(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240.").

For years, immigration courts assumed that mandatory detention under section 235 only applied to those in expedited removal proceedings and that anyone in formal removal proceedings under section 240 were subject to detention under section 236 based on the ruling in *Matter of X-K-*. The Board held that noncitizens placed in expedited removal proceedings then subsequently transferred to formal proceedings following a positive credible fear determination would be eligible for a custody redetermination hearing, unless excluded per the regulations. *See Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005). But later courts did not agree with this interpretation. The Supreme Court ruled that section 235(b)(1) "unequivocally" required the detention of all noncitizens first placed in expedited removal proceedings and then later transferred to formal removal proceedings under section 240. *Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018). The Court described the statutory language as "quite clear" and "mandate[s] detention of [noncitizens] throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Id*. at 845–56. The Attorney General then ruled that noncitizens subject to expedited removal who have a positive credible fear determination and are subsequently replaced in formal removal proceedings "remain ineligible for bond, whether they are arriving at the border or apprehended in the United States." *Matter of M-S-*, 27 I&N Dec. 509, 515 (AG 2019).

Relying on *Jennings*, *Matter of M–S–* rightly determined that sections 235 and 236 apply to separate classes of noncitizens. The Attorney General's decision expressly overruled *Matter of X–K–*, which essentially presumed that anyone in section 240 proceedings was being held under section 236 and therefore, eligible for a bond determination hearing. After *Matter of M–S–*, that presumption no longer applies—the court is now bound by all of section 235. In other words, immigration judges do not have jurisdiction to redetermine bond for individuals who are placed in removal proceedings after the expedited removal process.

---

[3] The court again notes that while detention is generally mandatory under section 235(b)(1) of the INA, DHS has authority to change a Respondent's custody by granting parole for "urgent humanitarian reasons or significant public benefit." INA § 212(d)(5); 8 C.F.R. § 235.3(b)(2)(iii), (4)(ii), (5)(i) (requiring that applicants for admission shall be returned to the custody from which they were paroled when parole is terminated).

3

However, there is yet a Board case or otherwise that clarifies whether applicants for admission who are *not* subject to expedited removal are entitled to a custody redetermination hearing. Based on their interpretation, the parties would have us conclude that section 235 of the INA applies only to individuals in expedited removal proceedings, and section 236 covers everyone else. Except this court is not bound by an agreement between the parties. Section 235 applies to anyone who meets the definition of an applicant for admission. The court agrees that the authority for those noncitizens in expedited removal comes from section 235(b)(1), as *Matter of M-S-* directly addressed this subset of applicants for admission. But the statute does not end after establishing expedited removal proceedings. The remainder of section 235 applies to individuals who meet the definition of applicant for admission, but, for whatever reason, are not placed in expedited removal proceedings. Section 235(b)(2)(A) of the INA is quite clear that anyone who meets the definition of an applicant for admission and is not covered under another provision of section 235, "shall be detained for a proceeding under section 240."

Beyond the clear language of the statute, the court's support for this position comes from *Jennings* and the regulations. The *Jennings* Court is very careful throughout the decision not to conflate sections 235(b)(1) and (b)(2) and makes specific distinctions between the two clauses. *See Jennings*, 138 S. Ct. at 837. ("[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."). The Supreme Court reiterates this distinction further in the opinion: "Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for 'further consideration of the application for asylum,' and § 1225(b)(2) aliens are in turn detained for '[removal] proceeding[s].'" *Id*. at 842. This court understands that to mean that section 235(b) of the INA must apply to two different groups of people—applicants for admission who are subject to expedited removal proceedings and applicants for admission who are not subject to expedited removal proceedings and are placed directly into section 240 proceedings.

The regulation for "inadmissible aliens and expedited removal" lends further support to this court's understanding. *See* 8 C.F.R. § 235.3. It is split into distinct subsections describing three different groups: (1) individuals who are detained prior to inspection by an immigration officer, (2) individuals who are determined to be inadmissible and subject to expedited removal, and (3) "arriving aliens" placed in proceedings under section 240 of the INA. *Id.* § 235.3(a)–(c). If section 235 of the INA only applied to inadmissible noncitizens in expedited removal proceedings, the regulations would have no need to mention individuals placed in section 240 proceedings while explicitly stating that that "shall be detained in accordance with section 235(b)" of the INA. *See id.* § 235.3(c).

The regulations also address those who have entered the United States without being admitted or paroled:

> An alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2-year period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act.

*Id.* § 1235.3(b)(1)(ii). This regulation contemplates that a noncitizen who meets the definition of applicant for admission may be placed directly into section 240 proceedings and that the noncitizen "shall be detained in accordance with section 235(b)(2)." The noncitizen is either subject to the shall-be-detained provision of 235(b)(1) or the shall-be-detained provision of 235(b)(2) regardless of whether they are ultimately or immediately placed in section 240 proceedings.

The regulations also specifically refute the claim that a noncitizen who is present in the United States without being admitted or paroled and is placed into section 240 removal proceedings is detained under section 236. An immigration officer will serve a Notice to Appear to a noncitizen if, "in accordance with the provisions of section 235(b)(2)(A) of the Act, the examining immigration office detains an alien for a proceeding before an immigration judge under section 240 of the Act[.]" 8 C.F.R. §1235.6(a)(1)(i). That section then describes other scenarios where an immigration officer serves a noncitizen with a Notice to Appear. *See id.* § 1235.6(a)(1)(ii)-(iv). As stated above, there would be no need for the regulations to include individuals who are in section 240 proceedings if the detention authority of section 235 only covered people in expedited removal proceedings. The regulation is clear and does not imply that serving a Notice to Appear and placing the noncitizen in section 240 proceedings changes the detention authority to any other portion of the INA.

Further, this statutory authority is not altered by the issuance of an I-200 warrant. Courts have never determined that "arriving aliens" are eligible for bond because DHS also issued an I-200.[4] The DHS has the authority to arrest individuals who are classified as an "alien seeking admission" with or without a warrant. *See* INA § 287(a)(2); 8 C.F.R. § 287.8(c)(2)(ii). If arrested without a warrant, the mere fact that DHS then elected to issue a warrant in Respondent's case

---

[4] Similarly, there are other detention statues for which the issuance of a warrant does not convert the detention authority. *See* INA § 236A (requiring the detention of "terrorist aliens" and allowing for release "only if" the Attorney General decides that certain conditions are met); INA § 241(a)(1)-(2), (6) (providing the detention scheme for those who have been ordered removed); INA § 241(c)(2) (describing stay of removal procedures and release authority for removal of noncitizens arriving at a port of entry); (c)(3) (delineating detention pending removal for noncitizens arriving at a port of entry and giving exceptions for those eligible to apply for admission). *See also Matter of A–W–*, 25 I. & N. Dec. 45 (BIA 2009) (holding that noncitizens who have been admitted into the United States under the visa waiver program, *see* 8 U.S.C. § 1187(a), and who are placed in asylum-only proceedings after being found subject to removal, are ineligible for bond hearings). In each instance, DHS may issue an I-200 in connection with the arrest of the noncitizen, but these laws do not allow the existence of a warrant to convert the detention authority.

does not bestow additional jurisdiction on the court in contravention of the express language of section 235 of the INA.

An I-200 also effectuates an arrest of an individual who has been lawfully admitted in the United States. Generally, if a noncitizen is in the United States with legal authority, the DHS has limited authority to arrest that individual without a warrant. *See* INA § 287(a). Conversely, section 236(a) of the INA describes the Department's authority to arrest an individual in lawful status *with* a warrant. Considering the language of the statue and guidance from the Supreme Court and Attorney General, this court finds that the issuance of a warrant may be a prerequisite for detention under section 236, but it does not convert detention under section 235 to section 236

With this understanding, it is not the issuance of a warrant that determines detention authority. Instead, it is an individual's status as an applicant for admission that governs detention. In short, section 235 applies to applicants for admission and section 236 only applies to those who have been admitted. The court finds that Respondent is an applicant for admission as defined under section 235(a) of the INA. Respondent is present in the United States without being admitted or paroled after inspection by an immigration officer. *See* INA § 212(a)(6)(A)(i). An immigration officer determined that Respondent was not clearly and beyond a doubt entitled to be admitted, so Respondent was served with a Notice to Appear and detained for proceedings under section 240 of the INA. Because Congress requires the detention of all applicants for admission, this court does not have jurisdiction to review Respondent's bond determination made by DHS.[5]

### III. ALTERNATIVE FINDING: DANGER AND FLIGHT RISK ANALYSIS

Respondent presented evidence in support of his bond application including: his testimony, his sister's naturalization certificate, support letters from his sister and niece, the warranty deed for his sister's home, Record of Deportable Alien/Form I-213 and an unredacted unpublished BIA bond decision. *See* Bond Exhibits 1 and 2. DHS submitted a Record of Deportable Alien/Form I-213 detailing Respondent's criminal history. Bond Exhibit 3.

*Were the court to find jurisdiction*, the respondent carries the burden of demonstrating: (1) he is not a danger to the community; and (2) he is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Matter of Urena*, 25 I&N Dec. 140 (BIA 2009). Relying on *Carlson v. Landon*, 342 U.S. 524 (1952) (holding that denial of bail to an alien will be overruled only where it is shown to be "without a reasonable foundation"). The BIA stated there is no limitation on the discretionary factors that an Immigration Judge may consider when ruling on custody and bond issues. *See*

---

[5] Both parties have the right to appeal this decision, using a Form EOIR-26, which the Board of Immigration Appeals must *receive* within 30 calendar days after the mailing of this order. 8 C.F.R. §§ 1003.3(a)(1), 1003.38(b), 1240.15. If the final date for filing the notice of appeal occurs on a Saturday, Sunday, or legal holiday, the period for filing will be extended to the next business day. If the time expires and no appeal has been filed, this decision becomes final. 8 C.F.R. § 1003.38(d). Respondent has the right to an attorney of their choosing during the appeal at no expense to the United States government. A filing-fee must accompany an appeal, but a fee-waiver is available. 8 C.F.R. § 1003.8(a)(3).

*Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). *See also, Carlson v. Landon*, 342 U.S. 524 (1952) (holding that denial of bail to an alien will be overruled only where it is shown to be "without a reasonable foundation"). An Immigration Judge may consider various factors when setting bond such as: the respondent's immigration history, criminal record, family ties in the United States, employment history, and length of time in the United States. *Id*. at 39; *see also Matter of Andrade*, 19 I&N Dec. 488, 489-90 (BIA 1987) (listing factors, including whether the alien has potential relief from removal, for consideration in a bond hearing). If the court determines that the respondent is not a danger to the community, the court should then assess the respondent's potential risk of flight. *Id.*

Alternatively, based on the totality of evidence the court finds that Respondent failed to meet his burden that he is not a danger to the community or a flight risk. In making this determination, the court considered all of the evidence of record including but not limited to: (1) the Respondent's length of residence in the United States; (2) the Respondent's family and community ties in the United States; (3) the Respondent's potential available relief from removal; (4) the Respondent's employment history; (5) the Respondent's criminal history and (5) the Respondent's immigration history.

Respondent is a native and citizen of ▮▮▮▮. He entered the United States illegally in 1994 or 1995 and again in 2004 by evading detection of immigration officers. Respondent is single and has four United States citizen children. Three children are under age 21. The children live with each of their mothers in Las Vegas, Nevada, and Tennessee. Respondent testified that he cannot remember the last time he lived with any of his children. Respondent did not submit birth certificates for any of his children. Respondent previously resided in Spokane, Washington. If released he plans to live with his United States citizen sister in Odessa, Texas. Respondent's parents reside in ▮▮▮▮. Respondent stated he was last in ▮▮▮▮ from 2000-2004. Respondent worked as a drywall installer. He admitted that he never had work authorization.

Respondent's criminal history is outlined below:

1. 04/15/23- Arrested by Shoshone County, ID for Open Container, convicted.

2. 09/21/19 -Arrested by Spokane County, WA for DUI, dismissed.

3. 02/24/18- Arrested by Kootenai County, ID for Reckless Driving, convicted.

4. 03/13/17- Arrested by Kootenai Tribal Police for DUI, convicted.

5. 04/11/04- Arrested by Las Vegas, NV Police for DUI, convicted.

Respondent has four alcohol related arrests and two convictions for driving under the influence (DUI). Respondent also has another conviction for reckless driving. Driving under the influence is a significant adverse consideration in determining whether a non-citizen is a danger to the community in bond proceedings. *Matter of Siniauskas,* 27 I&N Dec. 207 (BIA 2018); *Begay v. United States*, 553 U.S. 137, 141 (2008) ("drunk driving is an extremely dangerous crime");

7

*Marmolejo-Campos*, 558 F.3d 903, 913 (9th Cir. 2009)("the dangers of drunk driving are well established"). It takes "a grisly toll on the Nation's roads, claiming thousands of lives, injuring many more victims, and inflicting billions of dollars in property damage every year." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2166 (2016). "[T]he very nature of the crime of [driving while intoxicated] presents a 'serious risk of physical injury' to others . . . ." *United States v. DeSantiago-Gonzalez*, 207 F.3d 261, 264 (5th Cir. 2000).

The court recognizes that Respondent has family ties in the United States including his United States citizen sister, niece, and children. However, Respondent cannot remember the last time he lived with his children, and he would be relocating across the country to live with his sister. Additionally, Respondent has a negative immigration history. He entered the United States illegally, without permission at least twice, deliberately evading detection. He also worked without authorization from DHS. Further, Respondent indicated that he intends to apply for asylum, withholding of removal and protection under the convention against torture as well as cancellation of removal for non-permanent residents. The court notes Respondent is subject to the one-year asylum bar for failure to timely file an application for asylum unless he can establish an exception. Moreover, Respondent's alcohol related criminal history is a significant negative discretionary factor the adjudicating court would consider in evaluating his eligibility for cancellation of removal for non-permanent residents. As a result, Respondent has limited relief from removal.

Respondent's equities do not outweigh the severity of his criminal actions. Alternatively, weighing the totality of the evidence the court finds Respondent failed to meet his burden that he is not a danger to the community, or a flight risk and no bond is the only way to secure his future appearance.

**ORDER**

Respondent's motion for a custody redetermination is denied for a lack of jurisdiction.

Alternatively, Respondent failed to meet his burden that he is not a danger to the community or a flight risk.

Respondent shall be held without bond.

OCTOBER 5, 2023

_____           _____
Date                                                                             Theresa M. Scala
                                                                                       Immigration Judge