District Judge Tiffany M. Cartwright

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Ramon RODRIGUEZ VAZQUEZ, and those
similarly situated,

              *Plaintiffs*,

   v.

Drew BOSTOCK, *et al*.,

           *Defendants*.

CASE NO. 3:25-cv-05240-TMC

**DEFENDANTS' MOTION TO DISMISS**

Noting Date: July 7, 2025

Oral Argument Requested

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1

**TABLE OF CONTENTS**

2

INTRODUCTION ............................................................................................................... 6

3

BACKGROUND ................................................................................................................. 7

4

    I.      Statutory and Regulatory Background ........................................................ 7

5

        A.    Detention under 8 U.S.C. § 1225 .......................................................... 7

        B.    Detention under 8 U.S.C. § 1226(a) ..................................................... 8

6

        C.    Review at the BIA .................................................................................. 9

7

    II.     Factual and Procedural History ................................................................... 9

8

STANDARD OF REVIEW ............................................................................................... 12

9

    I.      Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1) ....................................... 12

10

    II.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) ....................................... 12

11

ARGUMENT .................................................................................................................... 13

12

    I.      Rodriguez's Individual Claims Are Moot and Should Be Dismissed. ................... 13

PART I: THE BOND DENIAL CLAIMS SHOULD BE DISMISSED ........................................... 15

13

    I.      The Bond Denial Claims Fail and Should Be Dismissed for Lack of Jurisdiction

14

    Under Rule 12(b)(1). .......................................................................................... 15

        A.    Multiple provisions of 8 U.S.C. § 1252 preclude the Court's review of the Bond

15

    Denial Claims ..................................................................................................... 15

16

        i.    8 U.S.C. § 1252(g) bars review of the Bond Denial Claims ................... 15

17

        ii.    8 U.S.C. § 1252(b)(9) bars review of the Bond Denial Claims. .............. 17

18

        iii.    8 U.S.C. § 1252(f)(1) bars the Court's review of, and prevents it from providing

           relief as to, the Bond Denial Claims. ..................................................... 20

19

          a.    Classwide declaratory relief runs afoul of § 1252(f)(1) because it would

20

             impermissibly restrain the operation of § 1255(b)(2). ........................... 20

21

          b.    Even if declaratory relief were available, it would not satisfy Rule 23(b)(2)'s

             requirement that "corresponding declaratory relief is appropriate respecting the

22

             class as a whole." ................................................................................. 23

23

24

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

1

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

c.   BDC members' injuries are not redressable, and they lack Article III standing because the Court is precluded from granting declaratory relief under § 1252(f)(1). ....................................................................................... 26

II.   The Bond Denial Claims Fail Under Rule 12(b)(6) and Should Be Dismissed. ..... 27

A.   The Court should dismiss the bond denial claims under Rule 12(b)(6) because applicants for admission must be detained under 8 U.S.C. § 1225 and *Jennings v. Rodriguez*……………………………………………………………………27

PART II: THE REMAINING BOND APPEAL CLAIM SHOULD BE DISMISSED ..................................... 31

I.   The Court Lacks Jurisdiction to Review the Bond Appeal Claims and Should Dismiss under Rule 12(b)(1). ..................................................................................... 31

A.   8 U.S.C. § 1252 precludes review of the Bond Appeal Claims. E ......................... 31

II.   The Court Should Dismiss the Bond Appeal Claims under Rule 12(b)(6).............. 32

A.   The Complaint fails to state a claim for relief under the Due Process Clause to challenge the alleged delay of bond appeals. ........................................................ 32

i.   The BAC fails to identify a protected interest in the pace of immigration bond appeals.................................................................................................... 33

ii.   The BAC fails to plausibly state a claim to a specific timeframe for bond appeals. 33

CONCLUSION.................................................................................................................... 36

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

2

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

# TABLE OF AUTHORITIES

**CASES**

*Aguilar v. ICE*,
    510 F.3d 1 (1st Cir. 2007) .................................................................................... 18

*Ajlani v. Chertoff*,
    545 F.3d 229 (2d Cir. 2008) ............................................................................... 18

*Al Otro Lado v. Exec. Off. for Immigr. Rev.*,
    120 F.4th 606 (9th Cir. 2024) ............................................................................. 21

*Alli v. Decker*,
    650 F.3d 1007 (3d Cir. 2011) ....................................................................... 22, 28

*Alvarez v. ICE*,
    818 F.3d 1194 (11th Cir. 2016) .......................................................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 14, 33, 36

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1990) ....................................................................... 33, 34

*Barton v. Barr*,
    590 U.S. 222 (2020) ........................................................................................... 28

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 13, 35

*Biden v. Texas*,
    597 U.S. 785 (2022) ................................................................................ 9, 21, 22

*Billingsley v. Comm'r*,
    868 F.2d 1081 (9th Cir. 1989) ........................................................................... 13

*Clark v. Martinez*,
    543 U.S. 371 (2005) ........................................................................................... 16

*Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*,
    98 F.R.D. 254 (D. Del. 1983) ............................................................................. 24

*Corley v. United States*,
    556 U.S. 303 (2009) ........................................................................................... 30

*Delgado v. Quarantillo*,
    643 F.3d 52 (2d Cir. 2011) ................................................................................ 19

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]                    1

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

*Djadju v. Vega,*
    32 F.4th 1102 (11th Cir. 2022) ................................................................ 14

*E.F.L. v. Prim,*
    986 F.3d 959 (7th Cir. 2021) ................................................................ 16

*Fatty v. Nielsen,*
    2018 WL 2244713 (W.D. Wash. April 5, 2018) ................................................ 34

*Ferry v. Gonzales,*
    457 F.3d 1117 (10th Cir. 2006) ................................................................ 15

*Garland v. Aleman Gonzalez,*
    596 U.S. 543 (2022) ................................................................ 21, 22, 23

*Gonzales v. Gorsuch,*
    688 F.2d 1263 (9th Cir. 1982) ................................................................ 27

*Gunn v. Minton,*
    568 U.S. 251 (2013) ................................................................ 13

*Hamama v. Adducci,*
    912 F.3d 869 (6th Cir. 2018) ................................................................ 22

*Herrera-Correra v. United States,* No. CV 08-2941 DSF (JCx),
    2008 WL 11336833 (C.D. Cal. Sept. 11, 2008) ................................................ 17

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984) ................................................................ 33

*In re Guerra,*
    24 I. & N. Dec. 37 (BIA 2006) ................................................................ 10

*J.E.F.M. v. Lynch,*
    837 F.3d 1026 (9th Cir. 2016) ................................................................ 18

*Jennings v. Rodriguez,*
    583 U.S. 281 (2018) ................................................ 8, 9, 19, 20, 21, 25, 28, 31, 35

*Johnson v. Arteaga,*
    596 U.S. 573 (2022) ................................................................ 35

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ................................................................ 13

*Ky. Dep't of Corrections v. Thompson,*
    490 U.S. 454 (1989) ................................................................ 33, 34, 35

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]                                    2

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ............................................................. 31

*Lopez v. Barr,* No. CV 20-1330 (JRT/BRT),
    2021 WL 195523 (D. Minn. Jan. 20, 2021) ............................. 17

*Maldonado v. Bostock,* No. 2:23-cv-00760-LK-BAT,
    2023 WL 5804021 (W.D. Wash. Aug. 8, 2023) ....................... 31

*Mansor v. United States Citizenship & Immigr. Servs.*,
    345 F.R.D. 193 (W.D. Wash. 2023) ....................................... 24

*Marquez-Reyes v. Garland*,
    36 F.4th 1195 (9th Cir. 2022) ............................................... 29

*Matter of Q. Li*,
    29 I. & N. Dec. 66 (BIA 2025) .......................................... 9, 29

*New York v. DHS*,
    969 F.3d 42 (2d Cir. 2020) .................................................... 28

*Onosamba-Ohindo v. Searls*,
    678 F. Supp. 3d 364 (W.D.N.Y. 2023) .................................. 25

*Ortega-Cervantes v. Gonzales*,
    501 F.3d 1111 (9th Cir. 2007)(a) ............................................ 9

*Pitts v. Terrible Herbst, Inc.*,
    653 F. 3d 1081 (9th Cir. 2011) ............................... 13, 14, 15

*Preiser v. Rodriguez*,
    411 U.S. 475 (1973) .............................................................. 14

*Rangel v. Boehner*,
    20 F. Supp. 3d 148 (D.D.C. 2013) ......................................... 27

*Reno v. American-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ........................................................ 17, 32

*Rivera v. Holder*,
    307 F.R.D. 539 (W.D. Wash. 2015) ...................................... 24

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ............................................... 21

*Rosario v. Holder*,
    627 F.3d 58 (2d Cir. 2010) ............................................. 18-19

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

3

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

*Ruiz v. Mukasey,*
    552 F.3d 269 (2d Cir. 2009) ............................................................... 18

*Saadulloev v. Garland, No. 3:23-CV-00106,*
    2024 WL 1076106 (W.D. Pa. Mar. 12, 2024) ..................................... 19

*Sanchez v. Mayorkas,*
    593 U.S. 409 (2021) ............................................................... 28, 30, 31

*Sibley v. Diversified Collection Servs., Inc., No. 396-cv-0816,*
    1998 WL 355492 (N.D. Tex. June 30, 1998) ................................. 24-25

*Smriko v. Ashcroft,*
    387 F.3d 279 (3d Cir. 2004) .............................................................. 35

*Solorzano v. Sessions, No. 18-CV-00025-JCS,*
    2018 WL 1811792 (N.D. Cal. Apr. 17, 2018) .................................... 14

*Spencer v. Kenma,*
    523 U.S. 1 (1998) ............................................................................... 14

*Stack v. Boyle,*
    342 U.S. 1 (1951) ............................................................................... 36

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ............................................................................. 27

*Tazu v. Att'y Gen. U.S.,*
    975 F.3d 292–99 (3d Cir. 2020) ........................................................ 17

*Torres v. Barr,*
    976 F.3d 918 (9th Cir. 2020) (en banc) ............................................. 30

*United States v. Fernandez-Alfonso,*
    813 F.2d 1571 (1987) ......................................................................... 36

*United States v. Salerno,*
    481 U.S. 739 (1987) ........................................................................... 36

*United States v. Woods,*
    571 U.S. 31 (2013) ............................................................................. 30

*Valencia-Mejia v. United States*, No. CV 08–2943 CAS (PJWx),
    2008 WL 4286979 (C.D. Cal. Sept. 15, 2008) .................................. 16

*Velasco Lopez v. Decker,*
    978 F.3d 842 (2d Cir. 2020) .............................................................. 19

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]
4

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

*Wagafe v. Trump*, No. C17-0094-RAJ,
2017 WL 2671254 (W.D. Wash. June 21, 2017) ........................................................ 24

*Wang v. United States, No. CV 10-0389 SVW*
(RCx), 2010 WL 11463156 (C.D. Cal. Aug. 18, 2010) ................................. 16-17, 17

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004) .................................................................................. 13

*Xiao Ji Chen v. U.S. Dep't of Justice*,
434 F.3d 144 (2d Cir. 2006) .................................................................................. 18

**STATUTES**

8 U.S.C. § 1101 ............................................................................................................ 28

8 U.S.C. § 1182 ............................................................................................................ 28

8 U.S.C. § 1225 ................................................. 7, 8, 9, 11, 20, 28, 29, 31, 30, 32

8 U.S.C. § 1226 ....................................................... 9, 10, 11, 12, 24, 25, 26, 29, 31

8 U.S.C. § 1229c ......................................................................................................... 12

8 U.S.C. § 1252 ..................................... 7, 15, 16, 17, 18, 19, 20, 21, 22, 25, 26, 31, 32

8 U.S.C. § 1231 ........................................................................................................... 12

8 U.S.C. § 1252 ..................................... 15, 16, 17, 18, 20, 21, 22, 23, 24, 25, 27, 32

8 U.S.C. § 1255 ........................................................................................................... 21

8 U.S.C. § 1775 ........................................................................................................... 24

28 U.S.C. § 2241 ........................................................................................................ 16

**RULES**

Fed. R. Civ. P. 12 ......................................... 8, 12, 13, 15, 21, 27, 28, 31, 33, 37

Fed. R. Civ. P. 23 ....................................................... 20, 21, 23, 24, 25, 26, 27

**REGULATIONS**

8 C.F.R. § 236.1 ............................................................................... 9, 10, 32, 35

8 C.F.R. § 1003.1 ......................................................................... 10, 11, 32, 35

8 C.F.R. § 1003.4 ........................................................................................................ 15

8 C.F.R. § 1003.39 ............................................................................................. 12, 15

8 C.F.R. § 1236.1 ............................................................................................. 10, 15

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]                    5                    U.S. DEPARTMENT OF JUSTICE
                                                                                                         CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
                                                                                                         P.O. BOX 878, BEN FRANKLIN STATION
                                                                                                         WASHINGTON, D.C. 20044
                                                                                                         (202) 742-7118

1

**INTRODUCTION**

2      Plaintiff Ramon Rodriguez Vazquez and the partially certified class seek relief that the Court

3   cannot grant. Rodriguez's individual claims must be dismissed as moot because he is not in custody.

4   The only remaining claims in this action are those belonging to the two certified classes: the Bond

5   Denial Class ("BDC") and the Bond Appeal Class ("BAC").

6      Numerous provisions of 8 U.S.C. § 1252 deprive the Court of jurisdiction to review the BDC's

7   claims and preclude the Court from granting the relief they seek. Congress has unambiguously stripped

8   federal courts of jurisdiction over challenges to the commencement of removal proceedings, including

9   detention pending removal proceedings. Congress further directed that *any* challenges arising from

10  *any* removal-related activity—including detention pending removal proceedings—must be brought

11  before the appropriate court of appeals, not a district court. And the Court cannot provide any relief

12  that would restrain the operation of §§ 1225(b)(2) or 1226(a). But that is exactly what the BDC

13  requests. The Court should dismiss the Bond Denial Claims on jurisdictional grounds.

14     Assuming jurisdiction, the Court should still dismiss the BDC—comprised of individuals who

15  are currently detained pending removal proceedings under 8 U.S.C. § 1225(b)(2) and therefore

16  ineligible for bond ("Bond Denial Claims")—because they seek to circumvent the detention statute

17  under which they are rightfully detained to secure bond hearings that they are not entitled to. The

18  members of the BDC fall precisely within the statutory definition of aliens subject to mandatory

19  detention without bond found in § 1225(b)(2).

20     Second, BAC alleges that they have or will be injured by the time it takes the Board of

21  Immigration Appeals ("BIA") to adjudicate their bond hearing appeals (the "Bond Appeal Claims").

22  These claims should be dismissed under 8 U.S.C. § 1252(b)(9) and (g) because these challenges must

23

24

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

6

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

be raised in a court of appeals. Alternatively, the BAC claims under the Due Process Clause fail because the BAC is unable to demonstrate any violation of Due Process arising from the amount of time it takes the BIA to adjudicate appeals.

The Court should therefore dismiss the Complaint in its entirety under either Rule 12(b)(1), 12(b)(6), or both.

## BACKGROUND

### I.    Statutory and Regulatory Background

#### A.    Detention under 8 U.S.C. § 1225

Section 1225 applies to "applicants for admission," who are defined as "alien[s] present in the United States who [have] not been admitted" or "who arrive[] in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) applies to arriving aliens and "certain other" aliens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.*; 8 U.S.C. § 1225(b)(1)(A)(i), (iii). These aliens are generally subject to expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1)(A)(i). But if the alien "indicates an intention to apply for asylum . . . or a fear of persecution," immigration officers will refer the alien for a credible fear interview. *Id.* § 1225(b)(1)(A)(ii). An alien "with a credible fear of persecution" is "detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii). If the alien does not indicate an intent to apply for asylum, express a fear of prosecution, or is "found not to have such a fear," he is detained until removed. *Id.* § 1225(b)(1)(A)(i), (B)(iii)(IV).

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

7

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1    Section 1225(b)(2) is "broader" and "serves as a catchall provision." *Jennings*, 583 U.S. at

2    287. It "applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Under § 1225(b)(2),

3    an alien "who is an applicant for admission" shall be detained for a removal proceeding "if the

4    examining immigration officer determines that [the] alien seeking admission is not clearly and beyond

5    a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see Matter of Q. Li*, 29 I. & N. Dec. 66, 68

6    (BIA 2025) ("for aliens arriving in and seeking admission into the United States who are placed

7    directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A),

8    mandates detention 'until removal proceedings have concluded.'") (citing *Jennings v. Rodriguez*, 583

9    U.S. 281, 299 (2018)). Still, the Department of Homeland Security ("DHS") has the sole discretionary

10   authority to temporarily release on parole "any alien applying for admission to the United States" on

11   a "case-by-case basis for urgent humanitarian reasons or significant public benefit." *Id.* §

12   1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022).

13       **B.    Detention under 8 U.S.C. § 1226(a)**

14       Section 1226 provides for arrest and detention "pending a decision on whether the alien is to

15   be removed from the United States." 8 U.S.C. § 1226(a). Under § 1226(a), the government may detain

16   an alien during his removal proceedings, release him on bond, or release him on conditional parole.[1]

17   By regulation, immigration officers can release aliens if the alien demonstrates that he "would not

18   pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. §

19   236.1(c)(8). An alien can also request a custody redetermination (i.e., a bond hearing) by an

20

21   ─────────────

22   [1] Being "conditionally paroled under the authority of § 1226(a)" is distinct from being "paroled into the United States under the authority of § 1182(d)(5)(A)." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007) (holding that because release on "conditional parole" under § 1226(a) is not a parole, the alien was not eligible for adjustment of status under § 1255(a)).

23

24   DEFENDANTS' MOT. TO DISMISS                              U.S. DEPARTMENT OF JUSTICE
     [CASE NO. 3:25-CV-05240-TMC]          8          CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
                                                             P.O. BOX 878, BEN FRANKLIN STATION
                                                                  WASHINGTON, D.C. 20044
                                                                       (202) 742-7118

immigration judge ("IJ") at any time before a final order of removal is issued. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19.

At a custody redetermination, the IJ may continue detention or release the alien on bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). IJs have broad discretion in deciding whether to release an alien on bond. *In re Guerra*, 24 I. & N. Dec. 37, 39–40 (BIA 2006) (listing nine factors for IJs to consider). But regardless of the factors IJs consider, an alien "who presents a danger to persons or property should not be released during the pendency of removal proceedings." *Id.* at 38.

### C.    Review at the BIA

The BIA is an appellate body within the Executive Office for Immigration Review ("EOIR"). *See* 8 C.F.R. § 1003.1(d)(1). Members of the BIA possess delegated authority from the Attorney General. 8 C.F.R. § 1003.1(a)(1). The BIA is "charged with the review of those administrative adjudications under the [INA] that the Attorney General may by regulation assign to it," including IJ custody determinations. 8 C.F.R. §§ 1003.1(d)(1), 236.1; 1236.1. The BIA not only resolves particular disputes before it, but also "through precedent decisions, [it] shall provide clear and uniform guidance to DHS, the immigration judges, and the general public on the proper interpretation and administration of the [INA] and its implementing regulations." *Id.* § 1003.1(d)(1). "The decision of the [BIA] shall be final except in those cases reviewed by the Attorney General." 8 C.F.R. § 1003.1(d)(7).

### II.    Factual and Procedural History

Plaintiff Ramon Rodriguez Vazquez is an alien who "has been residing in the United States for years and has not sought admission." Pl.'s Mot. for Prelim. Inj. at 9, ECF No. 3 ("PI Motion"). On February 5, 2025, immigration officers arrested him during a joint operation by the Drug Enforcement Agency. ECF No. 22 at 15.  Rodriguez told officers that he last entered the United States without

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]                    9                    U.S. DEPARTMENT OF JUSTICE
                                                                     CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
                                                                     P.O. BOX 878, BEN FRANKLIN STATION
                                                                     WASHINGTON, D.C. 20044
                                                                     (202) 742-7118

admission or parole near Nogales, Arizona, in June 2009. *Id.* Immigration officers served him a Notice to Appear for removal proceedings based on his presence in the United States without being admitted or paroled. ECF No. 4–6 at 2.

On March 12, 2025, an IJ conducted a custody redetermination hearing for Rodriguez. ECF 22 at 15; Compl. ¶ 80. The IJ concluded there was no jurisdiction to set bond because Rodriguez is an "applicant for admission" under 8 U.S.C. § 1225. *Id.* The IJ acknowledged that there was no published "decision squarely on point," but assessed that detention under § 1225 "applies to anyone who meets the definition of an applicant for admission." ECF 22 at 15, 16. Rodriguez appealed to the BIA on March 13, 2025. Id. at 7–13. The BIA dismissed Rodriguez' appeal on May 23, 2025. Harrold Decl., Ex. C.

One week after filing his appeal to the BIA, Rodriguez filed the Complaint alleging unlawful denial of bond (Count One) and entitlement to bond hearings (Count Two) (together, the "Bond Denial Claims"). *Id*. at ¶¶ 99–106. It also alleges delayed adjudication of bond appeals in violation of the Fifth Amendment (Count Three) and the APA (Count Four) (together, the "Bond Appeal Claims"). *Id*. ¶¶ 107–15. Rodriguez seeks relief for himself and on behalf of a now certified class. *Id.* at 21–22. Concurrently with filing the Complaint, Plaintiff filed a Motion for Class Certification and a Motion for Preliminary Injunction as to himself. *See* Mot. for Class Certification, ECF No. 2 ("Class Certification Motion"); PI Motion.

On April 24, 2025, the Court granted the PI Motion, ordering, among other things, that Defendants "provide Rodriguez with a bond hearing under 8 U.S.C. § 1226(a) within fourteen days of this Order." *See* Order Granting Prelim. Inj., ECF No. 29 at 36 ("PI Order"). On May 5, 2025, pursuant

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

10

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1    to the Court's PI Order, Defendants provided Rodriguez with a bond hearing. Harrold Decl., Ex. A.

2    The IJ denied bond, finding that Rodriguez Vazquez is a danger to the community and a flight risk. *Id.*

3         On May 2, 2025, the Court granted in part and denied in part the Motion for Class Certification.

4    Order Granting in Part and Denying in Part Mot. for Class Certification, ECF No. 32 ("Class

5    Certification Order"). The Court certified the following classes:

6         <u>Bond Denial Class:</u> All noncitizens without lawful status detained at the Northwest ICE
Processing Center who (1) have entered or will enter the United States without

7         inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to
detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen

8         is scheduled for or requests a bond hearing.

9         <u>Bond Appeal Class:</u> All detained noncitizens who have a pending appeal, or will file an
appeal, of an immigration judge's bond hearing ruling to the Board of Immigration

10         Appeals.

11    *Id.* at 43. The Court noted that "the Bond Appeal Class is certified only as to Plaintiff's Due Process

12    claims. The motion for class certification is DENIED as to the Bond Appeal Class for claims of

13    unreasonable delay under the APA." *Id.*

14         On May 8, 2025, the IJ conducted Rodriguez's merits hearing in removal proceedings. During

15    these proceedings, the IJ denied Rodriguez's applications for (1) asylum, (2) withholding of removal

16    under 8 US.C. § (b)(3), and (3) withholding of removal under the Convention Against Torture. *See*

17    Harrold Decl., Ex. B ("May 8, 2025, Order"). However, at the conclusion of the proceedings, the IJ

18    granted Rodriguez's request for voluntary departure to Mexico under 8 U.S.C. § 1229c(b) for a period

19    of 60 days and ordered that he depart by July 7, 2025. *Id.* at 2. Rodriguez and DHS waived appeal of

20    the May 8, 2025, Order, rendering it final. *Id*. at 4; 8 C.F.R. § 1003.39. On May 14, 2025, Rodriguez

21    departed the United States and is no longer in the custody of DHS. *See* Strzelczyk Decl., ¶ 3.

22

23

24

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

11

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

**STANDARD OF REVIEW**

### I.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotations omitted). "Subject matter jurisdiction is fundamental . . . and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction." *Billingsley v. Comm'r*, 868 F.2d 1081, 1085 (9th Cir. 1989) (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). The plaintiff bears the burden of establishing that the court has subject matter jurisdiction over their complaint. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion may be either facial, when the inquiry is confined to the complaint's allegations, or factual, when the court may look beyond the complaint to extrinsic evidence. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Additionally, Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" or "Controversies." *See* U.S. Const. art. III, § 2, cl. 1. "The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F. 3d 1081, 1086 (9th Cir. 2011) (citing *Burke v. Barnes*, 479 U.S. 361, 363 (1987)). "[I]f events subsequent to the filing of the case resolve the parties' dispute, we must dismiss the case as moot . . . because '[w]e do not have the constitutional authority to decide moot cases.'" *Id*. at 1086–87 (internal citations omitted).

### II.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

Dismissal under Rule 12(b)(6) is warranted when a complaint fails to state a claim upon which relief may be granted that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

1    (2007). Courts accept as true all well-pleaded factual allegations but need not credit a "legal conclusion

2    couched as a factual allegation." *Bell Atl. Corp.*, 550 U.S. at 555. "Threadbare recitals of the elements

3    of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

4    U.S. 662, 663 (2009).

5                                        **ARGUMENT**

6    **I.    Rodriguez's Individual Claims Are Moot and Should Be Dismissed.**

7          The individual claims brought by Rodriguez are moot because he is no longer in DHS custody.

8    Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" or "Controversies."

9    *See* U.S. Const. art. III, § 2, cl. 1. "[I]f events subsequent to the filing of the case resolve the parties'

10   dispute, we must dismiss the case as moot . . . because '[w]e do not have the constitutional authority

11   to decide moot cases.'" *Pitts*, 653 F.3d at 1086–87 (internal citations omitted). The Court does not

12   "have the constitutional authority to decide" this case as it relates to Rodriguez's individual claims

13   because his voluntary departure from the United States "resolve[s] the parties' dispute." *See id.*

14         Rodriguez's habeas claim is moot and must be dismissed. Habeas jurisdiction is limited to

15   cases in which the individual is "in custody" when "the petition was filed." *Spencer v. Kenma*, 523

16   U.S. 1, 7 (1998) (internal quotation marks omitted)*; see also Preiser v. Rodriguez*, 411 U.S. 475, 484

17   (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that

18   custody, and . . . the traditional function of the writ is to secure release from illegal custody.").

19   Rodriguez's request for habeas relief is moot because he has received the ultimate relief requested:

20   release from DHS custody. Because Rodriguez is no longer in custody, the Court should dismiss his

21   habeas petition. *See, e.g.*, *Solorzano v. Sessions*, No. 18-CV-00025-JCS, 2018 WL 1811792 (N.D. Cal.

22   Apr. 17, 2018) (dismissing habeas petition as moot because petitioner was no longer detained); *Djadju*

23

24
U.S. DEPARTMENT OF JUSTICE
                                                                CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
                                                                P.O. BOX 878, BEN FRANKLIN STATION
                                                                WASHINGTON, D.C. 20044
                                                                (202) 742-7118

*v. Vega*, 32 F.4th 1102, 1109 (11th Cir. 2022) (dismissing habeas appeal as moot because the petitioner had been removed from the country).

Rodriguez's Bond Denial Claims are similarly moot. These claims challenge his detention during removal proceedings. Compl. ¶¶ 1 88–89. But Rodriguez is no longer detained. Thus, his voluntary departure "subsequent to the filing of the case resolve[s] the parties' dispute" and the Court "must dismiss the case as moot." *See Pitts*, 653 F.3d at 1087.

Rodriguez's Bond Delay Claims are also moot. The IJ granted voluntary departure, Rodriguez waived appeal and departed the United States on May 14, 2025. Harrold Decl., Ex. B. Strzelczyk Decl., ¶ 3. There is now an administratively final order, *see* 8 C.F.R. § 1003.39, and thus neither the IJ nor the Board have authority to set bond conditions. *See* 8 C.F.R. § 1236.1(d)(1). Rodriguez's bond appeal is now moot before the BIA. *See, e.g., Ferry v. Gonzales*, 457 F.3d 1117, 1132 (10th Cir. 2006) (holding that challenge to detention without bond is moot after execution of administrative final order of removal); U.S. Dept. of Justice, EOIR, Immigr. Ct. Practice Manual Ch. 9.3(b)(2) (explaining voluntary departure moots bond proceedings). Indeed, by voluntarily departing the United States, Rodriguez withdrew his pending bond appeal with the BIA. *See* 8 C.F.R. § 1003.4 (stating that departure from United States while appeal is pending is a withdrawal of the appeal). No live case or controversy exists relating to alleged delays of Rodriguez's now-withdrawn BIA.

Rodriguez's individual claims are moot. This Court must dismiss. *See Pitts*, 653 F.3d at 1087.

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]                    14                    U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1    <u>PART I: THE BOND DENIAL CLAIMS SHOULD BE DISMISSED</u>

2    **I.    The Bond Denial Claims Fail and Should Be Dismissed for Lack of Jurisdiction Under Rule 12(b)(1).**

3    **A.    Multiple provisions of 8 U.S.C. § 1252 preclude the Court's review of the Bond Denial Claims.**

4

5         **i.    8 U.S.C. § 1252(g) bars review of the Bond Denial Claims.**

6    Section 1252(g) specifically deprives courts of jurisdiction, including habeas corpus

7    jurisdiction, to review "any cause or claim by or on behalf of an alien arising from the decision or

8    action by the Attorney General to [1] *commence proceedings*, [2] adjudicate cases, or [3] execute

9    removal orders against any alien under this chapter."[2] 8 U.S.C. § 1252(g) (emphasis added). Section

10   1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other

11   provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or

12   any other habeas corpus provision, and sections 1361 and 1651 of such title."[3] Except as provided in

13   § 1252, courts "cannot entertain challenges to the enumerated executive branch decisions or actions."

14   *E.F.L. v. Prim*, 986 F.3d 959, 964–65 (7th Cir. 2021).

15   Section 1252(g) also bars district courts from hearing challenges to the *method* by which the

16   Secretary of Homeland Security chooses to commence removal proceedings, including the decision to

17   detain an alien pending removal. *See Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its

18   plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal"

19

20

21   [2] Much of the Attorney General's authority has been transferred to the Secretary of Homeland Security and many references to the Attorney General are understood to refer to the Secretary. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005)

22   [3] Congress initially passed § 1252(g) in the IIRIRA, Pub. L. 104-208, 110 Stat. 3009. In 2005, Congress amended § 1252(g) by adding "(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title" after "notwithstanding any other provision of law." REAL ID Act of 2005, Pub. L. 109-13, § 106(a), 119 Stat. 231, 311.

23

24   DEFENDANTS' MOT. TO DISMISS                                    U.S. DEPARTMENT OF JUSTICE
     [CASE NO. 3:25-CV-05240-TMC]              15          CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
                                                                  P.O. BOX 878, BEN FRANKLIN STATION
                                                                      WASHINGTON, D.C. 20044
                                                                           (202) 742-7118

1   and also to review "ICE's decision to take [plaintiff] into custody and to detain him during removal

2   proceedings").

3       The BDC's Bond Denial Claims stem from their detention during removal proceedings. *See*

4   Compl. ¶¶ 2, 11. That detention arises from the decision to commence such proceedings against them.

5   *See, e.g.*, *Valencia-Mejia v. United States*, No. CV 08–2943 CAS (PJWx), 2008 WL 4286979, at *4

6   (C.D. Cal. Sept. 15, 2008) ("The decision to detain plaintiff until his hearing before the Immigration

7   Judge arose from this decision to commence proceedings[.]"); *Wang v. United States*, No. CV 10-0389

8   SVW (RCx), 2010 WL 11463156, at *6 (C.D. Cal. Aug. 18, 2010); *Tazu v. Att'y Gen. U.S.*, 975 F.3d

9   292, 298–99 (3d Cir. 2020) (holding that 8 U.S.C. § 1252(g) and (b)(9) deprive district court of

10  jurisdiction to review action to execute removal order).

11      As other courts have held, "[f]or the purposes of § 1252, the Attorney General commences

12  proceedings against an alien when the alien is issued a Notice to Appear before an immigration court."

13  *Herrera-Correra v. United States*, No. CV 08-2941 DSF (JCx), 2008 WL 11336833, at *3 (C.D. Cal.

14  Sept. 11, 2008). "The Attorney General may arrest the alien against whom proceedings are commenced

15  and detain that individual until the conclusion of those proceedings." *Id.* at *3. "Thus, an alien's

16  detention throughout this process arises from the Attorney General's decision to commence

17  proceedings" and review of claims arising from such detention is barred under § 1252(g). *Id.* (citing

18  *Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007)); *Wang*, 2010 WL 11463156, at *6; 8 U.S.C. §

19  1252(g). As such, judicial review of the Bond Denial Claims is barred by § 1252(g). The Court should

20  dismiss for lack of jurisdiction.

21

22

23

24  DEFENDANTS' MOT. TO DISMISS
    [CASE NO. 3:25-CV-05240-TMC]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1

ii.    **8 U.S.C. § 1252(b)(9) bars review of the Bond Denial Claims.**

2

Under § 1252(b)(9), "judicial review of all questions of law . . . including interpretation and

3

application of statutory provisions . . . arising from any action taken . . . to remove an alien from the

4

United States" is only proper before the appropriate court of appeals in the form of a petition for review

5

of a final removal order. *See* 8 U.S.C. § 1252(b)(9); *Reno v. American-Arab Anti-Discrimination*

6

*Comm.*, 525 U.S. 471, 483 (1999) ("*AADC*"). Section 1252(b)(9) is an "unmistakable 'zipper' clause"

7

that "channels judicial review of all [claims arising from deportation proceedings]" to a court of

8

appeals in the first instance. *Id.*; *see Lopez v. Barr*, No. CV 20-1330 (JRT/BRT), 2021 WL 195523, at

9

*2 (D. Minn. Jan. 20, 2021) (citing *Nasrallah v. Barr*, 590 U.S. 573, 579–80 (2020)).

10

Moreover, § 1252(a)(5) provides that a petition for review is the exclusive means for judicial

11

review of immigration proceedings:

12

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition
> for review filed with an appropriate court of appeals in accordance with this section

13

> shall be the sole and exclusive means for judicial review of an order of removal entered
> or issued under any provision of this chapter, except as provided in subsection (e)

14

> [concerning aliens not admitted to the United States].

15

8 U.S.C. § 1252(a)(5). "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether

16

legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition-

17

for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original);

18

*see id.* at 1035 ("§§ 1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-

19

practices challenges . . . whenever they 'arise from' removal proceedings"); *accord Ruiz v. Mukasey*,

20

552 F.3d 269, 274 n.3 (2d Cir. 2009) (only when the action is "unrelated to any removal action or

21

proceeding" is it within the district court's jurisdiction); *cf. Xiao Ji Chen v. U.S. Dep't of Justice*, 434

22

F.3d 144, 151 n.3 (2d Cir. 2006) (a "primary effect" of the REAL ID Act is to "limit all aliens to one

23

bite of the apple" (internal quotation marks omitted)).

24

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1      Critically, "[§] 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Aguilar*

2  *v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007). Indeed, 8 U.S.C. § 1252(a)(2)(D) provides that "[n]othing . . . in

3  any other provision of this chapter . . . shall be construed as precluding review of constitutional claims

4  or questions of law raised upon a petition for review filed with an appropriate court of appeals in

5  accordance with this section." *See also Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008)

6  ("[J]urisdiction to review such claims is vested exclusively in the courts of appeals[.]"). The petition-

7  for-review process before the court of appeals ensures that aliens have a proper forum for claims

8  arising from their immigration proceedings and "receive their day in court." *J.E.F.M.*, 837 F.3d at

9  1031–32 (internal quotations omitted); *see also Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010)

10  ("The REAL ID Act of 2005 amended the [INA] to obviate . . . Suspension Clause concerns" by

11  permitting judicial review of "nondiscretionary" BIA determinations and "all constitutional claims or

12  questions of law.").

13      In evaluating the reach of subsections (a)(5) and (b)(9), the Second Circuit explained that

14  jurisdiction turns on the substance of the relief sought. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d

15  Cir. 2011). Those provisions divest district courts of jurisdiction to review both direct and indirect

16  challenges to removal orders, including decisions to detain for purposes of removal or for proceedings.

17  *See Jennings*, 583 U.S. at 294–95 (section 1252(b)(9) includes challenges to the "decision to detain

18  [an alien] in the first place or to seek removal[.]"). Here, the Bond Denial Claims challenges the

19  decision and action to detain them, which arises from DHS's decision to commence removal

20  proceedings, and is thus an "action taken . . . to remove [them] from the United States." *See* 8 U.S.C.

21  § 1252(b)(9); *see also, e.g.*, *Jennings*, 583 U.S. at 294–95; *Velasco Lopez v. Decker*, 978 F.3d 842, 850

22  (2d Cir. 2020) (finding that 8 U.S.C. § 1226(e) did not bar review in that case because the petitioner

23

24

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]                    18                    U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

did not challenge "his initial detention"); *Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) (recognizing that there is no judicial review of the threshold detention decision, which flows from the government's decision to "commence proceedings"). As such, the Court lacks jurisdiction over this action. The reasoning in *Jennings* outlines why the Bond Denial Claims cannot be reviewed by the Court.

While holding that it was unnecessary to comprehensively address the scope of § 1252(b)(9), the Supreme Court in *Jennings* provided guidance on the types of challenges that may fall within the scope of § 1252(b)(9). *See Jennings*, 583 U.S. at 293–94. The Court found that "§1252(b)(9) [did] not present a jurisdictional bar" in situations where "respondents . . . [were] not challenging the decision to detain them in the first place." *Id.* at 294–95. In this case, the BDC *does* challenge the government's decision to detain them in the first place. *See, e.g.*, Compl. ¶¶ 1–2 ("Plaintiff . . . faces prolonged, mandatory detention because of a unique, draconian policy adopted by the immigration judges . . . [who] have justified their severe policy by citing the mandatory detention provision of 8 U.S.C. § 1225(b)(2) . . . ."). Though the BDC frame their challenge relating to detention authority, rather than a challenge to DHS's decision to detain them in the first instance, such creative framing does not evade the preclusive effect of § 1252(b)(9).

The fact that the BDC is challenging the basis upon which they are detained is enough to trigger § 1252(b)(9) because "detention *is* an 'action taken . . . to remove' an alien." *See Jennings*, 583 U.S. 318, 319 (Thomas, J., concurring); 8 U.S.C. § 1252(b)(9). The Court should dismiss the Bond Denial Claims for lack of jurisdiction under § 1252(b)(9). The BDC must present their claims before the appropriate court of appeals because they challenge the government's decision or action to detain them, which must be raised before a court of appeals, not this Court. *See* 8 U.S.C. § 1252(b)(9).

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

19

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

**iii.    8 U.S.C. § 1252(f)(1) bars the Court's review of, and prevents it from providing relief as to, the Bond Denial Claims.**

Section 1252(f)(1) not only prohibits classwide injunctive relief relating to specified provisions of the INA, it also precludes coercive classwide relief that would enjoin or restrain the government's operation of the specified portions of the INA—including §§ 1225(b)(2) and 1226(a). *See* 8 U.S.C. § 1252(f)(1). But even if standalone declaratory relief were not barred, such relief would not meet the requirements of Rule 23(b)(2) because any such relief would not affect the behavior of the government and would therefore constitute an improper advisory opinion. The Court therefore cannot grant the BDC the relief they seek. And thus, the BDC's injuries are not redressable. The Court should dismiss their claim under Rule 12(b)(1) because they lack standing.

**a.    Classwide declaratory relief runs afoul of § 1252(f)(1) because it would impermissibly restrain the operation of §§ 1255(b)(2) and 1226(a).[4]**

Section 1252(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of provisions of part IV of this subchapter,

---

[4] Within the context of a Rule 23(b)(2) analysis, the Court held that declaratory relief is available on a classwide basis, notwithstanding § 1252(f)(1). *See* Class Certification Order at 42–43. In doing so, the Court relied on several cases, most notably *Rodriguez v. Hayes*, 591 F.3d 1105, 119 (9th Cir. 2010). *See id.* But *Rodriguez* was decided before *Jennings*, *Aleman Gonzalez*, and *Biden v. Texas*—all cases that would support Defendants' assertion that granting declaratory relief here would run afoul of § 1252(f)(1) because it would be the functional equivalent of injunctive relief or otherwise impermissibly restrain the operation of §§ 1225(b)(2) and 1226(a). *See Jennings*, 583 U.S. at 313; *Garland v. Aleman Gonzalez*, 596 U.S. 543, 551 (2022); *Texas*, 597 U.S. at 839 (2022) (Barrett, J., dissenting). The Court also noted that the Supreme Court, in *Aleman Gonzalez*, did not decide whether § 1252(f)(1) applied to declaratory relief (because only injunctive relief was issued by the lower court). *See Aleman Gonzalez*, 596 U.S. at 551 n.2; Class Certification Order at 42. Thus, the Ninth Circuit held that classwide declaratory relief was not barred because it was not clearly irreconcilable with Ninth Circuit precedent. *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 120 F.4th 606, 625 n.14 (9th Cir. 2024) *amended and superseded on denial of reh'g en banc*, --- F.4th ---, 2024 WL 5692756, at *14 n. 13 (9th Cir. May 14, 2025). Despite this, the plain language of § 1252(f)(1) prohibits relief that would "restrain the operation of [§§ 1225(b)(2) and 1226(a)]." 8 U.S.C. § 1252(f)(1). For the reasons outlined herein, Defendants have a good faith basis to argue that granting declaratory relief in this case would restrain the operation of §§ 1225(b)(2) and 1226(a) in violation of § 1252(f)(1). *See, e.g., Alli v. Decker*, 650 F.3d 1007, 1020 (3d Cir. 2011) (Fuentes, J., dissenting) ("[E]ven if a declaratory judgment is a 'milder' form of relief—a milder form of relief can still 'limit,' 'restrict' or 'keep [someone] back from action'. . . Congress used the unambiguous word 'restrain' because the word has a broad meaning that would encompass declaratory judgments . . . [s]ection 1252 (f)(1) seeks to limit a remedy that applies to entire classes and, to achieve that aim, uses broad verbs—'enjoin or restrain'—that encompass a range of court actions.").

---

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

20

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1     as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of
2     1996, other than with respect to the application of such provisions to an individual
alien against whom proceedings under such part have been initiated.

3  8 U.S.C. § 1252(f)(1). This provision consists of two parts: (1) a general rule that courts lack

4  jurisdiction "to enjoin or restrain the operation" of the specified provisions "[r]egardless of the nature

5  of the action or claim," and (2) an exception for "the application of such provisions to an individual

6  alien." *Id.*

7     The BDC's request for declaratory relief does not comply with § 1252(f)(1). Section 1252(f)(1)

8  is not limited to injunctions. It prohibits court orders that "enjoin or *restrain*" the Executive Branch's

9  operation of the covered provisions. *Id.* (emphasis added). The common denominator of those terms

10  is that they involve coercion. *See* Black's Law Dictionary 529 (6th ed. 1990) ("[e]njoin" means to

11  "require," "command," or "positively direct" (emphasis omitted)); *id.* at 1314 ("[r]estrain" means to

12  "limit" or "put compulsion upon" (emphasis omitted)). Though declining to determine whether

13  § 1252(f)(1) prohibits classwide declaratory relief because only injunctive relief was at issue, the

14  Supreme Court in *Aleman Gonzalez* indicated that a court may not impose coercive relief that

15  "interfere[s] with the government's efforts to operate" the covered provisions in a particular way. 596

16  U.S. at 551. If the relief sought would require the government to implement or refuse to implement

17  procedures under § 1225(b)(2) or § 1226(a), that relief would be barred by § 1252(f)(1). *See Hamama*

18  *v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018) (While "declaratory relief will not always be the

19  functional equivalent of injunctive relief . . . in this case it is the functional equivalent."). Indeed, the

20  Supreme Court left open the question of whether declaratory relief is coercive such that it is barred by

21  § 1252(f)(1). *Texas*, 597 U.S. at 839 (Barrett, J., dissenting).

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

21

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1    Here, the "declaratory" relief sought by the BDC is impermissibly coercive and violates

2  § 1252(f)(1). In asking this Court for "a declaratory judgement [sic] establishing that [Plaintiff's and

3  the proposed class's] detention is governed by § 1226(a)" as opposed to § 1225(b)(2), the BDC really

4  asks the Court to (1) restrain the government's application of § 1225(b)(2), and (2) require that the

5  government apply § 1226(a) instead. *See* Mot. for Class Certification at 18; Compl. at 3. The effect of

6  such a "declaratory" judgment is the equivalent of telling IJs they are precluded from determining that

7  members of the BDC are detained under § 1225(b)(2). It essentially requires IJs to find that members

8  of the BDC are really detained under § 1226(a). Such a result violates § 1252(f)(1) by "restrain[ing]

9  the operation of" § 1225(b)(2). This also deprives the BIA of an opportunity to rule on the application

10 of § 1225(b)(2) and § 1226(a) in a published decision. And the Class Certification Motion reveals that

11 the BDC seeks injunctive relief, or at least, relief that would restrain the operation of § 1225(b)(2).

12 Class Certification Mot. at 18–19.

13    In arguing that numerosity is met, the Class Certification Motion states that "[b]ecause

14 plaintiffs seek *injunctive* and declaratory relief, the numerosity requirement is relaxed." *See id.* at 13

15 (emphasis added). This admission reveals the true nature of the relief sought here: an injunction, or at

16 least the functional equivalent of an injunction that would restrain the operation of § 1225(b)(2) and

17 coercively "interfere with the government's efforts to operate" § 1225(b)(2) in a particular way. *See*

18 *Aleman Gonzalez*, 596 U.S. at 551.

19    Section 1252(f)(1) therefore prevents the Court from reviewing the Bond Denial Claims and

20 granting the coercive declaratory relief the BDC requests. Accordingly, an analysis under § 1252(f)(1)

21 further indicates that Rule 23(b)(2)'s requirement "that final injunctive relief or *corresponding*

22

23

24
DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]                          22                    U.S. DEPARTMENT OF JUSTICE
                                                                CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
                                                                        P.O. BOX 878, BEN FRANKLIN STATION
                                                                            WASHINGTON, D.C. 20044
                                                                                (202) 742-7118

1  declaratory relief is appropriate respecting the class as a whole" cannot be met. Fed. R. Civ. P. 23(b)(2)

2  (emphasis added).

3        **b.  Even if declaratory relief were available, it would not satisfy Rule 23(b)(2)'s requirement that "corresponding declaratory relief is appropriate respecting the class as a whole."[5]**

4

5        Even if standalone declaratory relief is not barred by § 1252(f)(1), the declaratory relief sought

6  here is inappropriate because Rule 23 requires that any non-injunctive relief granted must be

7  "corresponding declaratory relief." *Id.* The Advisory Committee defines "corresponding declaratory

8  relief" as any remedy that "as a practical matter . . . affords injunctive relief or serves as a basis for

9  later injunctive relief." Fed. R. Civ. P. 23(b)(2) Advisory Committee Note to 1996 Amendment; *see*

10 *also* 7AA Fed. Prac. & Proc. Civ. § 1775 (3d ed.). The purpose of the Rule 23(b)(2) class was to enjoin

11 certain action or inaction on a classwide basis, and that any anticipated declaratory relief issued under

12 this provision should be equivalent to an injunction to satisfy the requirements of class certification.

13 *See id.*; *see also Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.,* 98 F.R.D. 254, 271

14 (D. Del. 1983) (refusing to certify a Rule 23(b)(2) class where "[d]etermination of the [] issues would

15 not result in corresponding declaratory relief that would have the effect of enjoining the defendant

16

---

17 [5] The Court rejected Defendants' argument that the requirements of Rule 23(b)(2) cannot be satisfied because class

18 certification can only be granted where any declaratory relief sought must "correspond" to a request for injunctive relief. *See* Class Certification Order at 41; Defs.' Opp'n to Pl.'s Mot. for Class Certification at 17–18, ECF No. 23 ("Opposition"). But in so holding, the Court relied on several cases that "found the requirements of Rule 23(b)(2) [were] met" under similar

19 circumstances. *See* Class Certification Order at 40. But those cases do not actually overcome the arguments that Defendants made in their Opposition: Rule 23(b)(2) requires that a plaintiff seek injunctive relief in conjunction with requesting

20 corresponding declaratory relief. *See Wagafe v. Trump,* No. C17-0094-RAJ, 2017 WL 2671254, at *16 (W.D. Wash. June 21, 2017) (plaintiffs sought injunctive and declaratory relief); *Rivera v. Holder,* 307 F.R.D. 539, 543 (W.D. Wash. 2015)

21 (same). The Court also points to *Mansor*—there, the court certified a class that only sought declaratory relief in a case involving Temporary Protected Status; it did not involve § 1252(f)(1). *See Mansor v. United States Citizenship & Immigr.*

22 *Servs.,* 345 F.R.D. 193 (W.D. Wash. 2023). As Defendants explain below, § 1252(f)(1) changes the calculus: it prohibits relief that would have a similar effect to that of an injunction. Because Rule 23(b)(2) allows only declaratory relief that has the same practical effect as an injunction, § 1252(f)(1) forecloses even declaratory relief under these circumstances.

23 Finally, as will be further explained in this section, caselaw indicates that this issue is not as well-settled, nor clear-cut, as the Court may have previously determined.

24 DEFENDANTS' MOT. TO DISMISS
   [CASE NO. 3:25-CV-05240-TMC]
                23

1   from acting in the future"); *Sibley v. Diversified Collection Servs., Inc.*, No. 396-cv-0816, 1998 WL

2   355492, *4 (N.D. Tex. June 30, 1998) (under Rule 23(b)(2), "the declaratory judgment should be the

3   equivalent of an injunction") (internal citations omitted). Because Rule 23(b)(2) allows only

4   declaratory relief that has the same practical effect as an injunction, and because § 1252(f)(1) prevents

5   the BDC from obtaining any relief that has the same effect as an injunction, the Court is unable to

6   grant the classwide relief the BDC requested. For this reason, the BDC—again—lacks standing

7   because redressability cannot be met. Dismissal is warranted.

8       The Supreme Court in *Jennings* echoed this point when it suggested that if 8 U.S.C.

9   § 1252(f)(1) prohibits classwide injunctive relief, then it may equally prohibit corresponding

10  declaratory relief. *See Jennings*, 583 U.S. at 313 ("[I]f the Court of Appeals concludes that it may issue

11  only declaratory relief, then the Court of Appeals should decide whether that remedy can sustain the

12  class on its own" in light of Rule 23(b)(2)'s language concerning "*corresponding*" relief (emphasis in

13  original)). Any declaratory judgment here would be limited to stand-alone declaratory relief, which is

14  not contemplated by Rule 23(b)(2).

15      This conclusion is reinforced by *Onosamba-Ohindo v. Searls*, 678 F. Supp. 3d 364 (W.D.N.Y.

16  2023), which addressed whether class certification remained appropriate in light of the unavailability

17  of injunctive relief. The district court had certified a class defined as: "All individuals currently

18  detained at the Buffalo Federal Detention Facility under § 1226(a) who will have a custody hearing

19  before the Batavia or Buffalo Immigration Courts." *Id*. Following *Aleman Gonzalez*, the government

20  moved to decertify because: (1) the court certified the class only for purposes of injunctive relief, and

21  injunctive relief is no longer available; (2) because there could be no class-wide injunctive relief, there

22  can be no corresponding declaratory relief; and (3) post-*Aleman Gonzalez*, the Court cannot issue a

23

24  DEFENDANTS' MOT. TO DISMISS
    [CASE NO. 3:25-CV-05240-TMC]          24          U.S. DEPARTMENT OF JUSTICE
                                                       CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
                                                       P.O. BOX 878, BEN FRANKLIN STATION
                                                       WASHINGTON, D.C. 20044
                                                       (202) 742-7118

declaratory order that would provide relief to each member of the class. *Id*. at 371. The court concluded that, in light of *Aleman Gonzalez*, it was not able to issue an indivisible injunctive or declaratory remedy and decertified the class. *Id*.

The court's order is instructive. It concluded that although *Aleman Gonzalez* forbids an injunctive remedy, it was not forbidden from issuing a declaratory remedy under the terms of 8 U.S.C. § 1252(f)(1). *Id*. at 369.[6] Thus, the court proceeded to determine whether certification was still appropriate. *Id*. at 370. The court began with clarifying the question before it, explaining that for purposes of determining whether certification was still appropriate, "the relevant question is whether the Court could, in this case, issue an indivisible declaratory judgment that would satisfy these requirements." *Id*. at 371. The court found that the answer to this question was no, because "[a]s Class Petitioner concedes," the "Court's issuance of the proposed declaration would not compel the government to operate the relevant statute in any particular way." *Id*. at 372. The court noted that "the government would not be required—as it was by the Court's preliminary injunction—to provide bond hearings that complied with the procedures outlined by the Court." *Id*. Instead, armed with the declaration that could be issued in the case, "individual class members would still need to bring individual habeas corpus petitions, but could in those petitions invoke prior class-wide declaratory relief as one element in establishing their entitlement to *individual* injunctive relief." *Id*. (cleaned up, emphasis in original).

The court explained the problems with this procedure: the declaration would constitute an improper advisory opinion, because it would not "*affect the behavior of the defendant towards the*

---

[6] While Defendants disagree with the *Onosamba-Ohindo* court's determination that it was not forbidden from issuing declaratory relief, *see supra* I.A.iii.a., this case demonstrates that regardless of whether standalone declaratory relief is proper under these circumstances, such relief would still fail to pass muster under Rule 23(b)(2).

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

25

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1    *plaintiff*." *Id*. (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original)). Rather, the

2    "requested declaration would instead be relied upon by individual class members in hypothetical future

3    litigation, in which those individual class members would be asking different courts to compel the

4    government to conduct bond hearings in a particular manner based on issue preclusion." *Id*. And, as

5    another judge observed, "it would be silly to allow class-wide injunctions as long as plaintiffs use two

6    steps—a class action for declaratory relief followed by individual injunction actions—instead of one."

7    *Alli v. Decker*, 650 F.3d 1007, 1020 (3d Cir. 2011) (Fuentes J., dissenting). Thus, even if the Court

8    were to find declaratory relief appropriate here, granting such relief would not satisfy Rule 23(b)(2).

9         If a declaratory judgment in this case is the functional equivalent of an injunction, then it is

10   barred by § 1252(f)(1). If it is not the functional equivalent of an injunction, then granting standalone

11   declaratory relief would provide no more than an impermissible advisory opinion and fail to meet Rule

12   23(b)(2)'s "corresponding declaratory relief" requirement. Either way, the BDC's request for

13   declaratory relief is impermissible under § 1252(f)(1), and the Court lacks jurisdiction to grant it.

14       **c.  BDC members' injuries are not redressable, and they lack Article III standing**
         **because the Court is precluded from granting declaratory relief under § 1252(f)(1).**

15   "[I]f the court is unable to grant the relief that relates to the harm, the plaintiff lacks standing"

16   because the redressability element cannot be satisfied. *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th

17   Cir. 1982); *Rangel v. Boehner*, 20 F. Supp. 3d 148, 164, 175–76 (D.D.C. 2013), *aff'd*, 785 F.3d 19

18   (D.C. Cir. 2015) (finding plaintiff was not able to show redressability where the court could not grant

19   the requested relief because it involved a political question). And a lack of standing requires dismissal.

20   *See* Fed. R. Civ. P. 12(h)(3); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998). Because

21   the Court is unable to provide the coercive classwide relief that the BDC requests, their alleged injuries

22

23

24   DEFENDANTS' MOT. TO DISMISS
     [CASE NO. 3:25-CV-05240-TMC]                    26                 U.S. DEPARTMENT OF JUSTICE
                                                                CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
                                                                       P.O. BOX 878, BEN FRANKLIN STATION
                                                                           WASHINGTON, D.C. 20044
                                                                              (202) 742-7118

1    are not redressable, and they lack Article III standing. The Court should dismiss the Bond Denial

2    Claims for lack of jurisdiction under Rule 12(b)(1).

3    **II.    The Bond Denial Claims Fail Under Rule 12(b)(6) and Should Be Dismissed.**

4    **A.    The Court should dismiss the bond denial claims under Rule 12(b)(6) because
     applicants for admission must be detained under 8 U.S.C. § 1225 and *Jennings v.*
5    ***Rodriguez.***

6    In granting preliminary relief, the Court erred in treating the statutory terms "not been

7    admitted" as synonymous with "inadmissible." PI Order at 23–29. Under the INA, "admitted" means

8    "the lawful entry of the alien into the United States after inspection and authorization by an

9    immigration officer." 8 U.S.C. § 1101(a)(13)(A). In contrast, "inadmissibility" is a "status" that can

10   arise long after being admitted by an immigration officer.[7] *See, e.g.*, *Barton v. Barr*, 590 U.S. 222,

11   236 (2020). "Lawful status and admission . . . are distinct concepts in immigration law: Establishing

12   one does not necessarily establish the other." *Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021). The

13   "grounds for inadmissibility are assessed not only when a person is physically entering the country,

14   but at multiple points in the immigration process." *New York v. DHS*, 969 F.3d 42, 51 (2d Cir. 2020).

15   The Tacoma IJ's interpretation aligns with the plain text of § 1225 and the Supreme Court's

16   ruling in *Jennings*. Under 8 U.S.C. § 1225(a), an "applicant for admission" is defined as an "alien

17   present in the United States who has not been admitted or who arrives in the United States."

18   Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those

19   covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287. Section 1225(b)(2)—the one relevant here—is

20   the "broader" of the two. *Id.* It "serves as a catchall provision that applies to all applicants for

21

22   _____

23   [7] There are many grounds for inadmissibility under the INA.  *See* 8 U.S.C. § 1182(a)(1)–(10). Only one of those is
     specifically limited to aliens "present without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A).

admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Id.* And § 1225(b)(2) mandates detention. *See* 8 U.S.C. § 1225(b)(2). Indeed, the Board recently held "that an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), and is ineligible for any subsequent release on bond under section 236(a) of the INA, 8 U.S.C. § 1226(a)." *Matter of Q. Li*, 29 I. & N. Dec. 66, 69 (BIA 2025); *see also Matter of Fransico-Martin*, (BIA May 22, 2025) (unpublished) ("All other aliens arriving in and seeking admission to the United States who are placed directly in full removal proceedings after failing to establish their admissibility pursuant to section 235(b)(2) of the INA, 8 U.S.C. § 1225(b)(2)(A), are likewise subject to detention 'until removal proceedings have concluded.'").

The Court should reject the BDC's argument that the phrase "alien seeking admission" limits the scope of § 1225(b)(2)(A). *See* PI Motion at 12. Statutory language "is known by the company it keeps." *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1202 (9th Cir. 2022) (quoting *McDonnell v. United States*, 579 U.S. 550, 569 (2016)). The phrase "seeking admission" in § 1225(b)(2)(A) should be read in the context of the definition of "applicant for admission" in § 1225(a)(1). Applicants for admission are both those individuals present without admission and those who arrive in the United States. *See* 8 U.S.C. § 1225(a)(1). Both are understood to be "seeking admission" under § 1225(a)(1). *See Matter of Q. Li*, 29 I. & N. 66, 68 n.3 (BIA 2025) (quoting *Matter of Lemus*, 25 I. & N. 734, 743 (BIA 2021) ("Applicants for admission 'who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws.'"). Congress made that clear in § 1225(a)(3), which requires all aliens "who are applicants for admission

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

28

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

or otherwise seeking admission" to be inspected by immigration officers. 8 U.S.C. § 1225(a)(3). The word "or" here "introduce[s] an appositive–a word or phrase that is synonymous with what precedes it ('Vienna or Wien,' 'Batman or the Caped Crusader')." *United States v. Woods*, 571 U.S. 31, 45 (2013).).

The BDC's interpretation also reads "applicant for admission" out of § 1225(b)(2)(A). As the Court has recognized, "one of the most basic interpretative canons" instructs that a "statute should be construed so that effect is given to all its provisions." PI Order at 26 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up)). The BDC's interpretation fails that test. *See id.* It renders the phase "applicant for admission" in § 1225(b)(2)(A) "inoperative or superfluous, void or insignificant." *See id.* (quoting *Corley*, 556 U.S. at 314). If Congress did not want § 1225(b)(2)(A) to apply to "applicants for admission," then it would not have included that phrase in the subsection. *See* 8 U.S.C. § 1225(b)(2)(A); *see also Corley*, 556 U.S. at 314.

Keep in mind that Congress passed IIRIRA to correct "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc). Legislative history[8] reveals that Congress "intended to replace certain aspects of the [then] current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present

---

[8] The Court previously assessed that legislative history supported Plaintiff's argument. *See* ECF No. 29 at 29–30. That assessment mistakenly conflates individuals who have not been admitted with those who are "not lawfully in the United States." *Id.* at 30. As noted above, admission and lawful status "are distinct concepts in immigration law: Establishing one does not necessarily establish the other." *Sanchez*, 593 U.S. at 415. An individual "can be admitted but not in lawful status—think of someone who legally entered the United States on a student visa, but stayed in the country long past graduation." *Id.*

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]                                    29

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1    themselves for inspection at a port of entry." *Id.* (quoting H.R. Rep. 104-469, pt. 1, at 225). The Court

2    should reject the BDC's interpretation because it would put individuals who "crossed the border

3    unlawfully" in a better position than those "who present themselves for inspection at a port of entry."

4    *Id.*  Individuals who presented at port of entry would be subject to mandatory detention under § 1225,

5    but those who crossed illegally would be eligible for a bond under § 1226(a).

6         The asserted "longstanding" agency practice does not change the analysis. *See* PI Order at 30–

7    31. The weight given to agency interpretations "must always 'depend upon their thoroughness, the

8    validity of their reasoning, the consistency with earlier and later pronouncements, and all those factors

9    which give them power to persuade.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 432–33 (2024)

10   (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (cleaned up)). And here, the agency has

11   provided little, if any, analysis to support its reasoning.  *See* 62 Fed. Reg. at 10323; *Maldonado v.*

12   *Bostock*, No. 2:23-cv-00760-LK-BAT, 2023 WL 5804021, at *3, 4 (W.D. Wash. Aug. 8, 2023) (noting

13   the agency provided "no authority" to support its reading of the statute). The agency's practice

14   therefore carries little weight. *See Loper Bright*, 603 U.S. at 432–33.

15        To be sure, "when the best reading of the statute is that it delegates discretionary authority to

16   an agency," the Court must "independently interpret the statute and effectuate the will of Congress."

17   *Loper Bright*, 603 U.S at 395 (cleaned up). But "read most naturally, §§ 1225(b)(1) and (b)(2),

18   mandate detention for applicants for admission until certain proceedings have concluded." *Jennings*,

19   583 U.S. at 297 (cleaned up). The Bond Denial Claims should therefore be dismissed under Rule

20   12(b)(6).

21

22

23

24

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]                    30

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1

<u>**PART II: THE REMAINING BOND APPEAL CLAIM SHOULD BE DISMISSED**</u>

2

**I.     The Court Lacks Jurisdiction to Review the Bond Appeal Claim and Should Dismiss
         under Rule 12(b)(1).**

3

**A.     8 U.S.C. § 1252 precludes review of the Bond Appeal Claim.**

4

As stated above, § 1252(g) deprives courts of jurisdiction to review "any cause or claim by or

5

on behalf of an alien arising from the decision or action by the Attorney General to [1] commence

6

proceedings, [2] *adjudicate cases*, or [3] execute removal orders against any alien under this chapter."

7

8 U.S.C. § 1252(g) (emphasis added). The Bond Appeal Claims trigger § 1252(g)'s bar on review of

8

causes or claims arising from the Attorney General's decision or action to adjudicate cases—here, the

9

BIA's adjudication of appeals.

10

Members of the BIA possess delegated authority from the Attorney General. *See* 8 C.F.R.

11

§ 1003.1(a)(1). The BIA exercises this delegated authority by adjudicating cases on appeal from an IJ,

12

including a custody determination. *See* 8 C.F.R. §§ 1003.1(b); 236.1; 1236.1. Thus, appeals from

13

members of the BAC to the BIA implicate action by the Attorney General to "adjudicate cases." *Id.*; 8

14

U.S.C. § 1252(g); 85 Fed. Reg. 81588 (Dec. 16, 2020) (to be codified at 8 C.F.R. pts. 1003, 1240) ("In

15

turn, 'the term case means any proceeding arising under any immigration or naturalization law.'"

16

(quoting 8 C.F.R. § 1001.1(g)). The Court therefore lacks jurisdiction to review the Bond Appeal

17

Claims because they arise from the action by the Attorney General to adjudicate cases.

18

Section 1252(b)(9) similarly precludes review. As previously discussed, *supra*, § 1252(b)(9) is

19

an "unmistakable 'zipper' clause" that "channels judicial review of all [claims arising from deportation

20

proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483. The Bond Appeal

21

Claims arise from action taken by DHS to remove them, which forms the basis of their subsequent

22

appeals to the BIA. Thus, the Bond Appeal Claims necessarily constitute claims "arising from *any*

23

24

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

31

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1  action taken . . . to remove an alien from the United States" and are barred from review under
2  § 1252(b)(9). 8 U.S.C. § 1252(b)(9) (emphasis added). The BAC must present their Bond Appeal
3  Claims to the appropriate court of appeals, not this Court. The Court should dismiss for lack of
4  jurisdiction.

5  **II.    The Court Should Dismiss the Bond Appeal Claim under Rule 12(b)(6).**

6  **A.    The Complaint fails to state a claim for relief under the Due Process Clause to
   challenge the alleged delay of bond appeals.**
7

8  The Complaint fails to plead a protected interest in the pace of adjudication of immigration
9  bond appeals and cannot identify a constitutionally mandated timeframe for bond appeals or that the
10 current process is deficient. A court may dismiss a complaint for failure to state a claim under Fed. R.
11 Civ. P. 12(b)(6) if "it is clear that no relief could be granted under any set of facts that could be proved
12 consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). To state a claim,
13 a complaint must contain "sufficient facts alleged under a cognizable legal theory." *Balistreri v.
14 Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

15 The Complaint claims that "[b]y not adjudicating appeals within sixty days of the filing of a
16 notice of appeal, the BIA does not provide timely appellate review of detention decisions," thereby
17 violating the Due Process Clause of the Fifth Amendment. Compl. ¶¶ 109–10. However, in order to
18 survive a motion to dismiss, Plaintiff must offer more than mere conclusory statements. *Bell Atl. Corp.*,
19 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere
20 conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663. To articulate a sufficient due process
21 claim, the BAC must plead: (1) what liberty or property interest is implicated; (2) the process due; and
22 (3) whether the administrative process provided meet or exceed this threshold *See Ky. Dep't of
23 Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

24
DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]
32
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1        i.        **The BAC fails to identify a protected interest in the pace of immigration**

2                  **bond appeals.**

3        The Complaint fails to identify a protected liberty or property interest to which the BAC has a

4 legitimate claim of entitlement, which due process requires. *Ky. Dep't of Corrections*, 490 U.S. at 460.

5 The BAC avers that "the Due Process Clause guarantees persons in civil detention timely appellate

6 review of the decision to detain." Compl. ¶ 108. But clearly identifying the interest at stake is a

7 threshold requirement for any due process claim. "Once a petitioner has identified a liberty or property

8 interest protected by the Constitution, the Court must determine whether constitutionally sufficient

9 procedural protections have been provided." *Fatty v. Nielsen*, 2018 WL 2244713, *17 (W.D. Wash.

10 April 5, 2018) (citing *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1161 (9th Cir. 2004)). And while the

11 Complaint references liberty in its introduction, the BAC fails to identify either interest or so much as

12 outline its legal basis in the barest terms. Compl. ¶¶ 8, 108-10. The BAC's failure to do so is material

13 as a liberty interest and a property interest rely upon distinct legal theories. The Complaint is defective

14 and fails to articulate a cognizable legal theory required to survive a motion to dismiss. *Balistreri*, 901

15 F.2d at 699. As such, the BAC fails to identify a liberty or property interest in the pace of adjudications

16 of bond appeals to give rise to a due process claim. The claim should be dismissed.

17       ii.       **The BAC fails to plausibly state a claim to a specific timeframe for bond**

18                 **appeals.**

19       Even assuming a liberty or property interest here, the BAC cannot plausibly state a claim that

20 the Due Process Clause requires the adjudication of bond appeals within 60 days. Compl. ¶¶ 61-65,

21 109-10. As an initial matter, immigration detention, including pre-order detention, has survived Due

22 Process review and detention periods of 180 days or longer have been upheld as constitutional.

23

24 DEFENDANTS' MOT. TO DISMISS                              U.S. DEPARTMENT OF JUSTICE
   [CASE NO. 3:25-CV-05240-TMC]              33          CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
                                                             P.O. BOX 878, BEN FRANKLIN STATION
                                                                 WASHINGTON, D.C. 20044
                                                                     (202) 742-7118

1    *Jennings*, 583 U.S. at 323 ("This Court has never held that detention during removal proceedings is

2    unconstitutional. To the contrary, this Court has repeatedly recognized the constitutionality of that

3    practice. *See Demore*, 538 U. S. at 523 (explaining that detention is 'a constitutionally valid aspect of

4    the deportation process'); *accord*, *Reno* v. *Flores*, 507 U. S. 292, 305-306, (1993); *Shaughnessy* v.

5    *United States ex rel. Mezei*, 345 U. S. 206, 215, (1953); *Carlson*, 342 U. S., at 538, 542. And unlike

6    the criminal context, where speedy trial statutes flow from constitutional due process guarantees, there

7    is no such requirement in the context of immigration detention. The BAC would need to show

8    something more, but fails, to plausibly state a claim that any specific timeframe for a bond appeal is

9    constitutionally required, let alone an adjudication within 60 days or less. *Ky. Dep't of Corrections v.*

10    *Thompson*, 490 U.S. at 460.

11        Next, the INA sets forth no deadline for deciding an appeal; rather it's laid out by regulation.

12    *See* 8 C.F.R. §§ 1003.38(b), 1003.1(e)(8)(i). And there is no reason to conclude that Congress intended

13    to restrict the Board's pace of adjudication or that the length of time at issue here is inconsistent with

14    the statute. *Cf. Johnson v. Arteaga*, 596 U.S. 573, 580–81 (2022) (reversing decision by court of

15    appeals to impose six-month deadline for bond hearings where text of INA did not "address or even

16    hint" at such a requirement (cleaned up)). Specifically, EOIR's regulation aspires to adjudicate Board

17    appeals within 180 days. *See* 8 C.F.R. § 1003.1(e)(8)(i). EOIR's regulation reserves that "time limits

18    for the adjudication of appeals reflect an internal management directive . . . and shall not be interpreted

19    to, create any substantive or procedural rights enforceable before any [IJ] or the Board, or in any court

20    of law or equity." 8 C.F.R. § 1003.1(e)(8)(vi); *Smriko v. Ashcroft*, 387 F.3d 279, 295 (3d Cir. 2004)

21    ("Thus, [8 C.F.R. § 1003.1(e)(8)(vi)] contemplate[s] that the Board's compliance with provisions

22    establishing time limits for the adjudication of appeals will not be subject to judicial review.").

23

24    DEFENDANTS' MOT. TO DISMISS
     [CASE NO. 3:25-CV-05240-TMC]

34

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

While the BAC points a right to a "timely adjudication" in the criminal context, it does not even attempt to define what that timeframe would be or how it applies in the civil immigration context. Compl. ¶ 64. The Complaint concedes that its line of speedy trial cases address criminal pre-trial protections while the BAC has folded in *all* bond appeals, which necessarily includes those pre- and post-final-removal-order bond requests. Compl. ¶ 63; Class Certification Order 43. Moreover, each of speedy trial cases first rely upon the federal statutes which guarantee pre-conviction protections are inapplicable to the instant case. *See, e.g.*, *Stack v. Boyle*, 342 U.S. 1, 4 (1951) (Judiciary Act of 1789, 1 Stat. 73, 91 and Fed. R. Cr. P. 46 (a)(1)); *United States v. Salerno*, 481 U.S. 739, 747 (1987) (Speedy Trial Act, 8 U.S.C. § 3161 *et seq*.); *United States v. Fernandez-Alfonso*, 813 F.2d 1571, 1572 (1987) (18 U.S.C. § 3145(b)). None of these speedy trial statutes apply to in the context of immigration detention, and their standards for what constitutes "timely review" are unpersuasive here. Without any further support, the Complaint baldly implies that Due Process requires 60 days for an adjudication of a bond appeal. Compl. ¶ 109. The BAC fails to provide more than mere conclusory statements. *Iqbal*, 556 U.S. at 663.

Finally, the BAC failed to raise a cognizable claim not only that the current regulatory guidelines in § 1003.1(e)(8)(i) are constitutionally insufficient, but also that the Board is failing to comply with them. Generally, the Board strives to decide appeals within 180 days. *Id.* Rodriguez's bond appeal was filed on March 13, 2025 and decided on May 23, 2025, a fraction of the regulatory period of time. *See* Harrold Decl., Ex. B. The BAC relies on EOIR average bond appeal processing times as represented in an attorney declaration, which references, but fails to attach, the full data set as provided by EOIR. Compl. ¶ 57; Decl. of Aaron Korthuis ("Korthuis Decl."), ECF No. 7 at ¶¶ 5-8. In particular, the declaration highlights that the average bond appeal processing time for 2024 was 204

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]                    35                    U.S. DEPARTMENT OF JUSTICE
                                                                      CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
                                                                      P.O. BOX 878, BEN FRANKLIN STATION
                                                                      WASHINGTON, D.C. 20044
                                                                      (202) 742-7118

days. *Id.* at ¶ 6. But this data point, without context, is unpersuasive because it necessarily includes the processing times for those individuals who have been released from detention while their bond appeals are still pending and are therefore excluded from the BAC. *See* Stanislowski Decl., ¶¶ 5.d., 5.h., 5.i.-5.k; Class Certification Order 43. Accordingly, the BAC cannot show that the agency is failing to comply with its obligations.

Because the BAC has failed to state a cognizable claim that the current immigration appeal procedures are constitutionally insufficient, the Court must dismiss the claims.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint under Rule 12(b)(1), 12(b)(6), or both.

Dated: June 6, 2025                     Respectfully submitted,

                                        YAAKOV M. ROTH
                                        Acting Assistant Attorney General

                                        SAMUEL P. GO
                                        Assistant Director

                                        VICTOR M. MERCADO-SANTANA
                                        Senior Litigation Counsel

                                        IAN S. LAM
                                        Trial Attorney

                                        */s/ Michael D. Ross*
                                        MICHAEL D. ROSS (SC Bar No. 73986)
                                        Trial Attorney
                                        U.S. Department of Justice
                                        Civil Division, Office of Immigration Litigation
                                        Washington, DC 20005
                                        Phone: 202-742-7118
                                        Email: michael.d.ross@usdoj.gov

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

36

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118

1

*Attorneys for Defendants*

2

***I certify that this memorandum contains 10,361 words, in compliance with the Local Civil Rules and this Court's order on June 5, 2025.***

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DEFENDANTS' MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

37

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 742-7118