District Judge Tiffany M. Cartwright

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Ramon RODRIGUEZ VAZQUEZ, and those similarly situated,

        *Plaintiffs*,

     v.

Drew BOSTOCK, *et al*.,

        *Defendants*.

CASE NO. 3:25-cv-05240-TMC

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Oral Argument Requested

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 2

    I.      Statutory and Regulatory Background ................................................. 2

         A.    Detention under 8 U.S.C. § 1225 ............................................... 2

         B.    Detention under 8 U.S.C. § 1226(a) .......................................... 3

         C.    Review at the BIA ...................................................................... 4

    II.     Factual and Procedural History ............................................................ 4

         A.    Procedural History ..................................................................... 4

         B.    The Four Unnamed Class Members ........................................... 6

STANDARD OF REVIEW ...................................................................................... 6

ARGUMENT ............................................................................................................ 7

    I.      The Bond Denial Claims Fail and Should Be Dismissed for Lack of Jurisdiction Under Rule 12(b)(1). ............................................................ 7

    II.     Under the Plain Text of § 1225, Members of the Bond Denial Class Must Be Detained Pending the Outcome of Their Removal Proceedings. ............................ 8

         A.    The plain text of § 1225 applies to members of the Bond Denial Class because they are present in the country without being admitted. ................................ 8

         B.    Legal status and admission are distinct concepts in immigration law. .................... 10

         C.    Congress did not intend to treat individuals who unlawfully enter the country better than those who appear at a port of entry. .............................. 12

         D.    Prior agency practices are not entitled to deference under *Loper Bright*. .............. 13

    III.    The Four Unnamed Class Members' Request for Injunctive Relief is Improper and the Court Should Refuse to Grant It. ........................................ 14

         A.    Granting injunctive relief to unnamed class members is inappropriate and fails to comport with the nature of this class action and relief requested by the class. ....... 14

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

i

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

B.    The Court should further decline to grant the unnamed class members' impermissible request for injunctive relief because it was not requested in the Complaint.................................................................................................. 20

C.    Even if the unnamed class members' request for injunctive relief is proper, they fail to demonstrate that they are entitled to such relief. ................................. 21

i.    The unnamed class members are required to exhaust their administrative remedies before the BIA........................................................................................... 22

ii.    The unnamed class members have failed to demonstrate a likelihood of success on the merits................................................................................................... 23

iii.    The unnamed class members have failed to establish irreparable harm because they have an adequate remedy in appealing to the BIA. ................................. 24

iv.    The Government has a compelling interest in allowing the BIA to speak on the issue.................................................................................................................. 24

**CONCLUSION** ..................................................................................................... **25**

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.                                          ii
[CASE NO. 3:25-CV-05240-TMC]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1

**INTRODUCTION**

2       Plaintiffs contend that their mandatory detention and ineligibility for bond under 8 U.S.C.

3   § 1225(b)(2) is unlawful because the proper statutory authority for their detention arises under 8

4   U.S.C. § 1226(a), not § 1225(b)(2). Plaintiffs are wrong. The plain text of § 1225 demonstrates that

5   Plaintiffs—who are present in the United States without being admitted—are correctly considered

6   "applicants for admission" and therefore subject to detention under § 1225(b)(2). The Court should

7   deny Plaintiffs' Motion.

8       The unnamed class members' attempt to secure individual injunctive relief fares no better.

9   Plaintiffs inject a request for impermissible and procedurally improper injunctive relief for four

10  unnamed members of the Bond Denial Class ("BDC") (the "unnamed class members") in an attempt

11  to circumvent the parameters of the Rule 23(b)(2) class for which they chose to seek certification.

12  Putting aside the fact that the Court has already rejected a similar attempt to secure injunctive relief

13  for an unnamed class member, ECF No. 38, the unnamed class members here have failed to

14  demonstrate that the Court has power to grant injunctive relief to members of a Rule 23(b)(2) class

15  which was certified based on Plaintiffs' representations that a single declaratory judgment would

16  provide them their requested relief. If anything, Plaintiffs' repeated attempts to secure individual

17  injunctive relief demonstrates two things: (1) that the Rule 23(b)(2) class to which they belong is

18  improper and insufficient to vindicate their injuries and provide them with the relief they seek, and (2)

19  that their request for classwide "declaratory" relief is really a request for injunctive relief, which runs

20  afoul of 8 U.S.C. § 1252(f)(1), a statute that precludes classwide injunctive relief, or other relief, that

21  would restrain the operation of § 1225(b)(2). The Court should deny the unnamed class members'

22

23

24

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

1

1    request for injunctive relief. And even if injunctive relief were proper, the unnamed class members

2    have failed to demonstrate that they are entitled to it.

3        For the reasons outlined above and discussed below, the Court should deny Plaintiffs' Motion

4    and reject the unnamed class members' attempt to secure improper injunctive relief outside the

5    parameters of Rule 23(b)(2).

6                                    **BACKGROUND**

7    **I.    Statutory and Regulatory Background**

8        **A.    Detention under 8 U.S.C. § 1225**

9        Section 1225 applies to "applicants for admission," who are defined as "alien[s] present in the

10   United States who [have] not been admitted" or "who arrive[] in the United States." 8 U.S.C.

11   § 1225(a)(1). Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1)

12   and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

13       Section 1225(b)(1) applies to arriving aliens and "certain other" aliens "initially determined to

14   be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.*; 8 U.S.C.

15   § 1225(b)(1)(A)(i), (iii). These aliens are generally subject to expedited removal proceedings. *See* 8

16   U.S.C. § 1225(b)(1)(A)(i). But if the alien "indicates an intention to apply for asylum . . . or a fear of

17   persecution," immigration officers will refer the alien for a credible fear interview. *Id.*

18   § 1225(b)(1)(A)(ii), (B). An alien "with a credible fear of persecution" is "detained for further

19   consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii). If the alien does not indicate an

20   intent to apply for asylum, express a fear of prosecution, or is "found not to have such a fear," he is

21   detained until removed. *Id.* § 1225(b)(1)(A)(i), (B)(iii)(IV).

22

23

24
DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.                                  2
[CASE NO. 3:25-CV-05240-TMC]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

Section 1225(b)(2) is "broader" and "serves as a catchall provision." *Jennings*, 583 U.S. at 287. It "applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Under § 1225(b)(2), an alien "who is an applicant for admission" shall be detained for a removal proceeding "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see also Florida v. U.S.*, 660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023). Still, the Department of Homeland Security ("DHS") has the sole discretionary authority to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022).

**B.    Detention under 8 U.S.C. § 1226(a)**

Section 1226 provides for arrest and detention on a warrant "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under § 1226(a), the government may detain an alien during his removal proceedings, release him on bond, or release him on conditional parole.[1] By regulation, immigration officers can release an alien if the alien demonstrates that he "would not pose a danger to property or persons" and "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). An alien can also request a custody redetermination (i.e., a bond hearing) by an immigration judge ("IJ") at any time before a final order of removal is issued. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19.

---

[1] Being "conditionally paroled under the authority of § 1226(a)" is distinct from being "paroled into the United States under the authority of § 1182(d)(5)(A)." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007) (holding that because release on "conditional parole" under § 1226(a) is not a parole, the alien was not eligible for adjustment of status under § 1255(a)); *Matter of Cabrera-Fernandez*, 28 I&N Dec. 747, 749 (BIA 2023).

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

3

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1    At a custody redetermination, the IJ may continue detention or release the alien on bond . 8

2    U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). IJs have broad discretion in deciding whether to release an

3    alien on bond. *Matter of Guerra*, 24 I. & N. Dec. 37, 39–40 (BIA 2006) (listing nine factors for IJs to

4    consider). But regardless of the factors IJs consider, an alien "who presents a danger to persons or

5    property should not be released during the pendency of removal proceedings." *Id.* at 38.

6         **C.    Review at the BIA**

7         The Board of Immigration Appeals ("BIA") is an appellate body within the Executive Office

8    for Immigration Review ("EOIR"). *See* 8 C.F.R. § 1003.1(d)(1). The BIA is "charged with the review

9    of those administrative adjudications under the [INA] that the Attorney General may by regulation

10   assign to it," including IJ custody determinations. 8 C.F.R. §§ 1003.1(d)(1), 1236.1. The BIA not only

11   resolves particular disputes before it, but also "through precedent decisions, [it] shall provide clear

12   and uniform guidance to DHS, the immigration judges, and the general public on the proper

13   interpretation and administration of the [INA] and its implementing regulations." *Id*. § 1003.1(d)(1).

14   "The decision of the [BIA] shall be final except in those cases reviewed by the Attorney General." 8

15   C.F.R. § 1003.1(d)(7).

16   **II.    Factual and Procedural History**

17         **A.  Procedural History**

18         On March 20, 2025, Named Plaintiff Ramon Rodriguez Vazquez filed (1) this lawsuit, ECF

19   No. 1 ("Complaint"), (2) a motion for class certification, ECF No. 2, and (3) a motion for preliminary

20   injunction as to himself, ECF No. 3. On April 24, 2025, the Court granted the Named Plaintiff's motion

21   for preliminary injunction, ordering, among other things, that Defendants "provide Rodriguez with a

22   bond hearing under 8 U.S.C. § 1226(a) within fourteen days of this Order." *See* ECF No. 29 at 36 ("PI

23

24

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]                    4                    U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1  Order"). On May 5, 2025, pursuant to the Court's PI Order, Defendants provided Rodriguez with a

2  bond hearing. Harrold Decl., Ex. A, ECF No. 50. The IJ denied bond. *Id.*

3      On May 2, 2025, the Court granted in part and denied in part the Motion for Class Certification.

4  ECF No. 32. The Court certified, in relevant part, the following class:

5      <u>Bond Denial Class:</u> All noncitizens without lawful status detained at the Northwest ICE

6      Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to

7      detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

8  *Id.* at 43.

9      On May 8, 2025, an IJ conducted the Named Plaintiff's merits hearing in removal proceedings,

10  subsequently granted his request for voluntary departure to Mexico under 8 U.S.C. § 1229c(b) for a

11  period of 60 days, and ordered that he depart by July 7, 2025. On May 14, 2025, the Named Plaintiff

12  departed the United States; he is no longer in the custody of DHS. *See* Strzelczyk Decl., ¶ 3, ECF No.

13  51.

14      Defendants, on June 6, 2025, filed their Motion to Dismiss ("MTD"). ECF No. 49. Plaintiffs

15  filed their response to the MTD on June 27, 2025. ECF No. 54. Defendants will file their Reply in

16  Support of the MTD on or before July 7, 2025.[2]

17      Four days before Defendants filed their Motion to Dismiss, Plaintiffs filed the instant Motion

18  for Partial Summary Judgment,[3] seeking (1) summary judgment on the question of whether class

---

[2] The reply would have been due on July 4, 2025, but because that date is a legal holiday, the due date falls on the next business day. Fed. R. Civ. P. 6(a)(1)(C).
[3] On June 6, 2025, Defendants filed a Motion to Stay Briefing on Plaintiffs' Motion, arguing, among other things, that a stay was appropriate because Defendants' imminent Motion to Dismiss may resolve much of or all the claims in this litigation. *See* ECF No. 48. The Court, on June 10, 2025, denied the Motion to Stay but granted Defendants' alternative request for extending Defendants' deadline to respond to the Motion to July 1, 2025. *See* ECF No. 53.

DEFENDANTS' OPP'N TO PLS.' MOT. FOR PARTIAL SUMM. J.
[CASE No. 3:25-CV-05240-TMC]    5    U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1  members' detention under 8 U.S.C. § 1225(b)(2) is lawful and (2) individual injunctions for four

2  unnamed class members who have been detained subject to § 1225(b)(2). *See* ECF No. 41 ("Mot.").

3  **B.  The Four Unnamed Class Members**

4  On May 14, 2025, Named Plaintiff filed a Motion for Temporary Restraining Order ("TRO")

5  on behalf of class member Alfredo Juarez Zeferino, seeking Zeferino's release on bond. *See* ECF No.

6  33. Defendants timely submitted a response in opposition to the TRO. ECF No. 37. On May 19, 2025,

7  the Court denied the TRO, holding, among other things, that "Zeferino failed to satisfy the high bar

8  required for emergency relief." *See* ECF No. 38 at 9. The Court stated that Zeferino could seek a

9  preliminary injunction with full briefing addressing the Court's power to grant such relief, move to

10 intervene, or file an individual habeas petition. *Id.* at 9.

11 Plaintiffs' counsel uses this Motion as a vehicle to attach individual requests for injunctive

12 relief on behalf of four unnamed class members. *Id.* at 1, 20–21. As relevant to this Motion, those four

13 individuals—Alfredo Juarez Zeferino, David Nunez Hernandez, Yesica Contreras-Baca, and Jose

14 Mateo (the "unnamed class members")—allege that they:

15 - Are currently detained at Northwest ICE Processing Center, in Tacoma, WA;

16 - Were each given a bond redetermination hearing in which an IJ denied bond pursuant
17   to 8 U.S.C. § 1225(b)(2), the statute under which they are currently detained; and

18 - Received alternative findings by an IJ that if they are not ineligible for bond pursuant
     to 8 U.S.C. § 1225(b)(2), they could be released on bond (in differing amounts).

19 *See* Mot. at 6–10.

20 **STANDARD OF REVIEW**

21 The Court can only grant summary judgment if Plaintiffs "show[] that there is no genuine

22 dispute as to any material fact and [they] [are] entitled to judgment as a matter of law." Fed. R. Civ.

23

24 DEFENDANTS' OPP'N TO PLS.' MOT. FOR
   PARTIAL SUMM. J.                                    6
   [CASE NO. 3:25-CV-05240-TMC]

P. 56(a). An issue is "genuine" only if a sufficient evidentiary basis exists upon which a reasonable jury could find for the nonmoving party. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *See, e.g.*, *id.* at 248.

## ARGUMENT

### I.    The Bond Denial Claims Fail and Should Be Dismissed for Lack of Jurisdiction Under Rule 12(b)(1).[4]

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Subject matter jurisdiction is fundamental; [t]he defense of lack of subject matter jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction." *Billingsley v. C.I.R.*, 868 F.2d 1081, 1085 (9th Cir. 1989) (alteration in original) (quotations omitted); *see also* Fed. R. Civ. P. 12(h)(3).

As outlined in Defendants' MTD, the Court lacks subject matter jurisdiction over the Bond Denial Claims because federal law limits—and in this case, forecloses—district court review of decisions and actions taken by the Executive Branch that relate to the removal of aliens. *See, e.g.*, 8 U.S.C. § 1252(b)(9), (f)(1), (g); ECF No. 49 at 10–22. Thus, Plaintiffs' Motion fails at the outset; the Court should deny it and dismiss the Bond Denial Claims in their entirety for lack of subject matter jurisdiction. *See Billingsley*, 868 F.2d at 1085; Fed. R. Civ. P. 12(h)(3).

---

[4] Defendants reassert and incorporate the arguments in their MTD setting forth the multiple reasons why the Court lacks jurisdiction over the Bond Denial Claims. *See* ECF No. 49 at 10–22.

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

7

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

**II.    Under the Plain Text of § 1225, Members of the Bond Denial Class Must Be Detained Pending the Outcome of Their Removal Proceedings.**

The Court should reject Plaintiffs' argument that § 1226(a) governs their detention instead of § 1225. *See* Mot. at 12. When there is "an irreconcilable conflict in two legal provisions," then "the specific governs over the general." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1015 (9th Cir. 2017). As Plaintiffs point out, § 1226(a) "is the INA's default detention authority." Mot. at 12. It applies to aliens "arrested and detained pending a decision" on removal. 8 U.S.C. § 1226(a). In contrast, § 1225 is narrower. *See* 8 U.S.C. § 1225. It applies only to "applicants for admission"; that is, as relevant here, aliens present in the United States who have not be admitted. *See id.; see also Florida,* 660 F. Supp. 3d at 1275. Because Plaintiffs fall within that category, the specific detention authority under § 1225 governs over the general authority found at § 1226(a).

**A.    The plain text of § 1225 applies to members of the Bond Denial Class because they are present in the country without being admitted.**

Under 8 U.S.C. § 1225(a), an "applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States." Applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287. Section 1225(b)(2)—the provision relevant here—is the "broader" of the two. *Id.* It "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Id.* And § 1225(b)(2) mandates detention. *Id.* at 297; *see also* 8 U.S.C. § 1225(b)(2); *Matter of Q. Li,* 29 I & N. Dec. 66, 69 (BIA 2025) ("[A]n applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), and is ineligible for any subsequent release on

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

8

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1    bond under section 236(a) of the INA, 8 U.S.C. § 1226(a).”). The Tacoma IJs therefore correctly held

2    that § 1225(b) applied because Plaintiffs are all present in the United States without being admitted.

3    *See, e.g.*, ECF No. 42-2 (Memo. of the IJ, Matter of: Alfredo Juarez Ceferino). Indeed, the named

4    Plaintiff has admittedly “been residing in the United States for years and has not sought admission.”

5    ECF No. 3 at 9.

6         Plaintiffs’ argument that the phrase “alien seeking admission” limits the scope of

7    § 1225(b)(2)(A) is unpersuasive. *See* Mot. at 16. The BIA has long recognized that “many people who

8    are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless

9    deemed to be ‘seeking admission’ under the immigration laws.” *Matter of Lemus*, 25 I. & N. 734, 743

10   (BIA 2012). Statutory language “is known by the company it keeps.” *Marquez-Reyes v. Garland*, 36

11   F.4th 1195, 1202 (9th Cir. 2022) (quoting *McDonnell v. United States*, 579 U.S. 550, 569 (2016)). The

12   phrase “seeking admission” in § 1225(b)(2)(A) must be read in the context of the definition of

13   “applicant for admission” in § 1225(a)(1). Applicants for admission are both those individuals present

14   without admission and those who arrive in the United States. *See* 8 U.S.C. § 1225(a)(1). Both are

15   understood to be “seeking admission” under §1225(a)(1). *See Lemus*, 25 I. & N. at 743. Congress

16   made that clear in § 1225(a)(3), which requires all aliens “who are applicants for admission or

17   otherwise seeking admission” to be inspected by immigration officers. 8 U.S.C. § 1225(a)(3). The

18   word “or” here “introduce[s] an appositive–a word or phrase that is synonymous with what precedes

19   it (‘Vienna or Wien,’ ‘Batman or the Caped Crusader’).” *United States v. Woods*, 571 U.S. 31, 45

20   (2013).

21        Plaintiffs’ interpretation also reads “applicant for admission” out of § 1225(b)(2)(A). As the

22   Court has recognized, “one of the most basic interpretative canons” instructs that a “statute should be

23

24   DEFENDANTS’ OPP’N TO PLS.’ MOT. FOR
PARTIAL SUMM. J.                           9
[CASE NO. 3:25-CV-05240-TMC]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6639

construed so that effect is given to all its provisions." ECF No. 29 at 26 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up)). Plaintiffs' interpretation fails that test. *See id.* It renders the phase "applicant for admission" in § 1225(b)(2)(A) "inoperative or superfluous, void or insignificant." *See id.* (quoting *Corley*, 556 U.S. at 314). If Congress did not want § 1225(b)(2)(A) to apply to "applicants for admission," then it would not have included that phrase in the subsection. *See* 8 U.S.C. § 1225(b)(2)(A); *see also Corley*, 556 U.S. at 314.

### B. Legal status and admission are distinct concepts in immigration law.

In granting preliminary relief, the Court erred in treating the statutory terms "not been admitted" as synonymous with "inadmissible." ECF No. 29 at 23–29. Under the INA, "admitted" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). In contrast, "inadmissibility" considerations are referenced throughout the INA and are often applicable even to aliens previously admitted by an immigration officer. *See, e.g.*, 8 U.S.C. § 1227(a), (a)(1)(A) (providing for the removal of aliens "admitted to the United States if they were inadmissible at time of entry); *Barton v. Barr*, 590 U.S. 222, 236–37 (2020) (noting that adjustment of status for admitted aliens requires a determination the applicant is otherwise "admissible" despite their prior admission by immigration officers). "Lawful status and admission . . . are distinct concepts in immigration law: Establishing one does not necessarily establish the other." *Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021). *See also Q. Li*, 29 I&N Dec. at 68 n.4 ("Applicants for admission who are not actually requesting permission to enter the United States . . . [are] deemed to be seeking admission under the immigration laws." (internal quotations omitted)). The "grounds for inadmissibility are assessed not only when a person is

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

10

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1  physically entering the country, but at multiple points in the immigration process." *New York v. DHS*,

2  969 F.3d 42, 51 (2d Cir. 2020).

3        The court's decision in *Florida v. United States* is instructive here. The district court held that

4  8 U.S.C. § 1225(b) mandates detention of applicants for admission throughout removal proceedings,

5  rejecting the assertion that DHS has discretion to choose to detain an applicant for admission under

6  either section 1225(b) or 1226(a). 660 F. Supp. 3d at 1275. The court held that such discretion "would

7  render mandatory detention under § 1225(b) meaningless. Indeed, the 1996 expansion of § 1225(b) to

8  include illegal border crossers would make little sense if DHS retained discretion to apply § 1225(a)

9  and release illegal border crossers whenever the agency saw fit." *Id.*  The court pointed to *Demore v.*

10  *Kim,* 538 U.S. 510, 518 (2003), in which the Supreme Court explained that "wholesale failure" by the

11  federal government motivated the 1996 amendments to the INA. *Florida*, 660 F. Supp. 3d at 1275.

12  The court also relied on, *Matter of M-S-,* 27 I&N Dec. 509, 516 (A.G. 2019), in which the Attorney

13  General explained "section [1225] (under which detention is mandatory) and section [1226(a)] (under

14  which detention is permissive) can be reconciled only if they apply to different classes of aliens."

15  *Florida*, 660 F. Supp. 3d at 1275.

16        The Tacoma IJ's reasoning therefore does not "render superfluous provisions of Section 1226,"

17  ECF No. 29 at 26, because aliens "can be admitted but not in lawful status." *Sanchez*, 593 U.S. at 415.

18  For example, "think of someone who legally entered the United States on a student visa, but stayed in

19  the country long past graduation." *Id.* Section 1226 applies to them, not those who have never been

20  admitted at all. *See id.*

21

22

23

24

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

11

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

**C. Congress did not intend to treat individuals who unlawfully enter the country better than those who appear at a port of entry.**

When the plain text of a statute is clear, "that meaning is controlling" and courts "need not examine legislative history." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848 (9th Cir. 2011). But to the extent legislative history is relevant here, nothing "refutes the plain language" of § 1225. *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011). Congress passed IIRIRA to correct "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc), *declined to extend by, United States v. Gambino-Ruiz*, 91 F.4th 981 (9th Cir. 2024). It "intended to replace certain aspects of the [then] current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry." *Id.* (quoting H.R. Rep. 104-469, pt. 1, at 225). The Court should reject the Plaintiffs' interpretation because it would put aliens who "crossed the border unlawfully" in a better position than those "who present themselves for inspection at a port of entry." *Id.* Aliens who presented at port of entry would be subject to mandatory detention under § 1225, but those who crossed illegally would be eligible for a bond under § 1226(a).

Nothing in the Laken Riley Act ("LRA") changes the analysis. Redundancies in statutory drafting are "common . . . sometimes in a congressional effort to be doubly sure." *Barton*, 590 U.S. at 239. The LRA arose after an inadmissible alien "was paroled into this country through a shocking abuse of that power." 171 Cong. Rec. H278 (daily ed. Jan 22, 2025) (statement of Rep. McClintock). Congress passed it out of concern that the executive branch "ignore[d] its fundamental duty under the

DEFENDANTS' OPP'N TO PLS.' MOT. FOR PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

12

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1    Constitution to defend its citizens." *Id.* at H269 (statement of Rep. Roy). One member even expressed

2    frustration that "every illegal alien is currently required to be detained by current law throughout the

3    pendency of their asylum claims." *Id.* at H278 (statement of Rep. McClintock). The LRA reflects a

4    "congressional effort to be doubly sure" that such unlawful aliens are detained. *Barton*, 590 U.S. at

5    239.

6                    **D.  Prior agency practices are not entitled to deference under *Loper Bright*.**

7            The asserted longstanding agency practice carries little, if any, weight under *Loper Bright*. *See*

8    ECF No. 29 at 30–31. The weight given to agency interpretations "must always 'depend upon their

9    thoroughness, the validity of their reasoning, the consistency with earlier and later pronouncements,

10   and all those factors which give them power to persuade.'" *Loper Bright Enters. v. Raimondo*, 603

11   U.S. 369, 432–33 (2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (cleaned up)).

12   And here, the agency provided no analysis to support its reasoning. *See* 62 Fed. Reg. at 10323; *see*

13   *also Maldonado v. Bostock*, No. 2:23-cv-00760-LK-BAT, 2023 WL 5804021, at *3, 4 (W.D. Wash.

14   Aug. 8, 2023) (noting the agency provided "no authority" to support its reading of the statute).

15          To be sure, "when the best reading of the statute is that it delegates discretionary authority to

16   an agency," the Court must "independently interpret the statute and effectuate the will of Congress."

17   *Loper Bright*, 603 U.S. at 395 (cleaned up). But "read most naturally, §§ 1225(b)(1) and (b)(2)

18   mandate detention for applicants for admission until certain proceedings have concluded." *Jennings*,

19   583 U.S. at 297 (cleaned up). The Bond Denial Claims should therefore be dismissed under Rule

20   12(b)(6).

21

22

23

24
DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.                                         13
[CASE NO. 3:25-CV-05240-TMC]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

**III.    The Four Unnamed Class Members' Request for Injunctive Relief is Improper and the Court Should Refuse to Grant It.**

This is a class action with a partially certified class, class-claims, and class-requested relief. *See, e.g.*, ECF No. 1 (styled as a "Class Action Complaint"); ECF No. 32 (Order partially certifying the two proposed classes). And in this action, the Class seeks only declaratory relief. *See, e.g.*, ECF No. 1 at 21; ECF No. 24 at 12 ("Plaintiff seeks *only classwide declaratory relief* for each class."(emphasis added)). Yet the request from the unnamed class members suggests that the relief sought by the class to which they belong is seemingly insufficient to vindicate their alleged injuries and provide them with the relief they desire. Contrary to Plaintiffs' previous briefing, the unnamed class members now seek individual injunctive relief because they need an "additional remedy to ensure they do not needlessly suffer additional unlawful detention." Mot. at 20. Thus, they attempt to use this Motion as a backdoor to (1) amend their Complaint and request never-pled-before (improper) injunctive relief and (2) circumvent the representations they have made as to the relief they have requested throughout the entirety of this litigation. *See, e.g.*, ECF Nos. 1, 24. The Court should reject this procedurally deficient method of injecting into this litigation an additional request for relief not found in the pleadings.

**A.  Granting injunctive relief to unnamed class members is inappropriate and fails to comport with the nature of this class action and relief requested by the class.**

The Court need not reinvent the wheel in deciding whether to grant the unnamed class members the injunctive relief they seek—the Court can deny their request for the same reasons it denied class member Zeferino's Motion for TRO.[5] ECF No. 38. Indeed, in denying the TRO, the Court held that

---

[5] The fact that four unnamed class members have now brought individual claims seeking injunctive relief only emphasizes that this Court is becoming (1) increasingly burdened with individual motions by other class members and (2) the *de facto* appellate body of the Tacoma immigration court. *See* ECF No. 37 at 10.

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.                                                    14
[CASE NO. 3:25-CV-05240-TMC]

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1    Zeferino had failed to demonstrate that it "has the power to grant an injunction to an unnamed member

2    of a class certified on the basis that a single declaratory judgment would provide its members their

3    requested relief." *See id.* at 9. Plaintiffs' request fares no better here.

4        Plaintiffs have failed to show that the Court has the power to grant injunctive relief to unnamed

5    members of a Rule 23(b)(2) class certified on the basis that a single declaration from the Court would

6    provide them with the relief they request. If anything, Plaintiffs' request for injunctive relief only

7    undermines their earlier arguments that class certification is appropriate here.

8        As the Court noted in its Order denying the TRO, seeking "a remedy for a single unnamed

9    class member . . . appears to exceed the scope of Rule 23(b)(2)." ECF No. 38 at 7 (citing *Wal-Mart*

10   *Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)). Indeed it does. The Supreme Court made clear that

11   "Rule 23(b)(2) . . . does not authorize class certification when each individual class member would be

12   entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at

13   360 (emphasis in original); ECF No. 38 at 7–8. But that is exactly what Plaintiffs contend, and

14   precisely why the Court should deny their request. *See* Mot. at 21 ("The individual class members

15   seek the same relief as the class" but "also simply ask for an *additional* remedy" of an injunction

16   (emphasis added)).

17       The unnamed class members claim that the injunction they request is not a "different injunction

18   or declaratory judgment than what the rest of the class seeks." *See id.* (internal quotations omitted).

19   Yet, unlike the unnamed class members, the BDC seeks only "declaratory" relief. *See, e.g.*, ECF No.

20   1 at 21; ECF No. 24 at 12. Seeking injunctive relief while the rest of the class only seeks declaratory

21   certainly is a "request" for a different relief not sought by the class. Indeed, the Court has already

22   expressed some concern with the unnamed class members' request framework.

23

24

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

15

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1    In denying class member Zeferino's TRO, the Court reiterated that:

2        Rule 23(b)(2) permits class actions for declaratory *or* injunctive relief" and the named Plaintiff
3        "sought only declaratory relief under Rule 23(b)(2) for the two proposed classes . . . arguing
         that a single 'declaratory judgment [for the Bond Denial Class] . . . would provide relief to
         each member of the class," which the "Court held [] was a proper basis for certifying the classes
4        under Rule 23(b)(2).

5    ECF No. 38 at 7 (emphasis in original). Plaintiffs chose to proceed as a class action, they chose to seek

6    declaratory relief, and they chose to seek certification under Rule 23(b)(2). Thus, the unnamed class

7    member's request for injunctive relief runs afoul of Rule 23(b)(2) and should be denied.

8        The unnamed class members' attempts to secure individualized relief beyond that which was

9    requested by the class is improper as pled. As both the Court and Defendants have noted, they may

10   attempt to seek relief "through other procedural mechanisms, such as by moving to intervene . . . or

11   by filing an individual habeas petition." *See* ECF No. 38 at 9; ECF No. 37 at 8–10.

12       But the unnamed class members have failed to follow procedures to intervene in this litigation

13   in a manner consistent with the Federal Rules of Civil Procedure. Unnamed class members may pursue

14   intervention in a class action under Rule 24. *See United Airlines v. McDonald*, 432 U.S. 385, 394

15   (1977) (explaining intervention was appropriate by an unnamed class member when her interests were

16   no longer protected by named class representative), 7B Fed. Prac. & Proc. Civ. § 1799 (3d ed.).

17       A party who seeks intervention as of right under Federal Rule of Civil Procedure 24(a)(2) must

18   establish four elements:

19       (1) that the prospective intervenor's motion is "timely"; (2) that the would-be intervenor has
         "a 'significantly protectable' interest relating to . . . the subject of the action"; (3) that the
20       intervenor is "so situated that the disposition of the action may as a practical matter impair or
         impede [the intervenor's] ability to protect that interest"; and (4) that such interest is
21       "inadequately represented by the parties to the action."

22

23

24

*Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (quoting *Freedom From Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011)). Failure to satisfy any one of the requirements is fatal to an application for intervention. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

The unnamed class members here have failed to adequately explain why they should be permitted to intervene in this litigation to seek individualized relief beyond the scope of the request in the Complaint. *See* Mot. at 20 (claiming that "intervention or a separate habeas . . . typically does not make sense"). Their attempt to secure individualized relief appears to be an effort to circumvent both the Rule 23(b)(2) rule that a single judgment may provide relief to the class and § 1252(f)'s bar on classwide injunctive relief. Requiring that unnamed class members present a proper motion to intervene that complies with Rule 24 would, at minimum, require them to explain why their intervention would not unduly impair the litigation. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974) (encouraging premature and unnecessary intervention into class action "deprive[s] Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure."). This is significant in this case where the possibility exists that individual motions for injunctive relief brought by an unending line of unnamed class members could unduly complicate this class action with numerous and consecutive motions for intervention seeking relief, and where there has been no allegation regarding inadequate class representation.

Even more, following proper procedure via intervention would also provide the Court with the ability to manage the class action. Rule 23(d)(1)(B) contemplates that unnamed class members may intervene because the rule explains that the Court may issue orders related to class members' notice informing them of their right to intervene. And Rule 23(d)(1)(C) grants this Court authority to "impose

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE No. 3:25-CV-05240-TMC]

17

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1    conditions on the representative parties or intervenors." The unnamed class members fail to provide

2    the Court with the opportunity to review and regulate their right to intervene.

3          The unnamed class members attempt to circumvent the need to intervene by asserting that they

4    are "parties" to the litigation. Mot. at 20. Their assertion ignores that the Supreme Court has

5    specifically held that unnamed class members are not parties for all purposes of the litigation. In *Devlin*

6    *v. Scardeletti*, the Supreme Court explained that unnamed class members could be considered "parties"

7    for some purposes, such as for being bound to an appeal, tolling the statute of limitations, or for taking

8    an appeal in a class action. 536 U.S. 1, 10–11 (2002). But in contrast, an unnamed class member would

9    not be a party for the purpose of determining diversity because if the unnamed class members were

10    "parties" then diversity would be defeated in almost every case, thus defeating the economies of class

11    action litigation. *Id.* at 10. And in a later case, the Supreme Court explained that unnamed class

12    members are bound to a class action proceeding "even though *they are not parties* to the suit." *Smith*

13    *v. Bayer Corp.*, 564 U.S. 299, 314 (2011) (emphasis added).[6] This Court should therefore reject any

14    attempt by the unnamed class members to seek separate relief when they fail to even attempt to

15    intervene in this litigation in a manner consistent with Rule 24. Plaintiffs' citation to § 1252(f)(1) fails

16    to salvage their improper attempt to amend their Complaint and seek extraordinary injunctive relief.

17          Despite what the unnamed class members would have this Court believe, § 1252(f)(1) does not

18    lend support to their backdoor attempt to secure impermissible injunctive relief through this Motion.

19    _____

20    [6] To find that unnamed class members are "parties" to the suit so as to permit them to file motions for individualized relief
would necessarily imply that they would be considered parties for other aspects of the litigation, such as discovery and

21    motions practice. *See, e.g.*, Fed. R. Civ. P. 30(a), 31(a) (permitting parties to take oral and written depositions), 33(a)
(permitting parties to request interrogatories), 45(a) (granting subpoena power to parties); 56 (permitting parties to file

22    motions for summary judgment to parties). "It is undisputed that the class representatives are the only members of the class
who have such rights." *Devlin*, 536 U.S. at 16 (Scalia, J., dissenting). A contrary and expansive understanding of parties
to include unnamed class members necessarily undermines the efficiencies of the class action process. *See Am. Pipe &*

23    *Const. Co.*, 414 U.S. 553 (noting principal purpose of Rule 23 class actions are efficiency and economic litigation).

24    DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

18

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

As stated in previous briefing, § 1252(f)(1) prohibits classwide injunctive relief. *See, e.g., Garland v. Aleman Gonzalez*, 596 U.S. 543, 548–52 (2022). Plaintiffs admit as much. *See* ECF No. 24 at 11. Yet the unnamed class members request a declaratory judgment (which itself violates § 1252(f)(1)[7]) from this Court, which they will ostensibly present to this Court in support of countless individual requests for injunctive relief; all brought within the context of this very class action.[8] *See* Mot. at 21. Class members should not be allowed to thwart § 1252(f)(1) by simply parading themselves before this Court to obtain classwide injunctive relief applied in a piecemeal fashion.

To rationalize their extraordinary request, the unnamed class members claim that "the individual injunctions sought simply require compliance with the same classwide declaratory judgment." *See* Mot. at 20. But that is exactly why the Bond Denial Claims are unreviewable and improper under § 1252(f)(1) and Rule 23(b)(2). As stated in Defendants' MTD, even if declaratory relief is not precluded by § 1252(f)(1), it would nonetheless constitute an improper advisory opinion because—as the unnamed class members admit—it would not "affect the behavior of the defendant towards the plaintiff." *Onosamba-Ohindo v. Searls*, 678 F. Supp. 3d 364, 372 (W.D.N.Y. 2023) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original)); Mot. at 20 (the unnamed class members seek an injunction to ensure "compliance" with any declaratory judgment the Court may issue). Put differently, because the declaratory relief the unnamed class members request does

---

[7] *See supra* § III. A.; Defs.' MTD at 20–27.

[8] To be sure, the Supreme Court has determined that § 1252(f)(1) precludes classwide injunctive relief "but specifies that this ban does not extend to individual *cases*." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999) ("*AADC*") (emphasis added). As noted above and by the Court, Plaintiffs are not precluded from attempting—but have not yet opted—to "seek relief through other procedural mechanisms," like filing an individual habeas petition or attempting to intervene in this case. *See* ECF No. 38 at 9. So rather than filing individual cases, as contemplated by *AADC*, the unnamed class members attempt to inappropriately secure injunctive relief through this class action. *See AADC*, 525 U.S. at 481–82. This is impermissible under § 1252(f)(1) and the Court should deny the unnamed members' request for injunctive relief. *See, e.g., supra* § III. A.; Defs.' MTD at 20–27; ECF No. 38 at 7, 9.

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

19

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

not, and cannot, correspond to injunctive relief, any declaration by this Court would fail to "compel the government to operate the relevant statute in any particular way" and fail to satisfy the requires of Rule 23(b)(2). *Onosamba-Ohindo*, 678 F. Supp. 3d at 372; *see* Fed. R. Civ. P. 23(b)(2); Mot. at 20; MTD at 19–22. Indeed, "it would be silly to allow class-wide injunctions as long as plaintiffs use two steps—a class action for declaratory relief followed by individual injunction actions—instead of one." *Alli v. Decker*, 650 F.3d 1007, 1020 (3d Cir. 2011) (Fuentes J., dissenting). Thus, even if the Court were to find declaratory relief appropriate here, the unnamed class members have essentially conceded that granting such relief would not satisfy Rule 23(b)(2).

**B. The Court should further decline to grant the unnamed class members' impermissible request for injunctive relief because it was not requested in the Complaint.**

Under Rule 8(a), a complaint "must contain" "a demand for the relief sought." *See* Fed. R. Civ. P. 8(a)(3). But Plaintiffs' Complaint contains no demand for injunctive relief as to individual class members. *See* generally Compl. The unnamed class members have failed to identify a single procedural rule or case that would authorize them to request a form of relief in a motion for summary judgment different from that requested in their Complaint. "If the [P]laintiffs' complaint does not pray for a certain form of relief, they are not entitled to an order granting same." *Davis v. Sun Oil Co.*, 953 F. Supp. 890, 890 (S.D. Ohio 1996); *see also Villegas v. United States*, 926 F. Supp. 2d 1185, 1196 n.8 (E.D. Wash. 2013) (citing *Jachetta v. United States*, 653 F.3d 898, 906 (9th Cir. 2011) (holding that a party cannot request alternative relief in opposition to a motion to dismiss to assert relief they should have pled in the complaint)).

Even in limited circumstances where courts, relying on Rule 54, have deemed it appropriate to grant relief not requested in the pleadings, such relief was only granted where it would not prejudice

DEFENDANTS' OPP'N TO PLS.' MOT. FOR
PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

20

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1  the party against whom it was granted. *See*, *e.g.*, *Sillas v. City of Los Angeles*, No. CV 17-8691 FMO

2  (AFMx), 2022 WL 17219073, at *4 (C.D. Cal. Feb. 1, 2022) (collecting cases); Fed. R. Civ. P. 54.

3  Indeed, a court cannot grant relief that was not specifically requested if doing so will prejudice the

4  opposing party. *See Rental Dev. Corp. of Am. v. Lavery*, 304 F.2d 839, 842 (9th Cir. 1962) ("If,

5  however, it is made to appear that the failure to ask for particular relief substantially prejudiced the

6  opposing party, Rule 54(c) does not sanction the granting of relief not prayed for in the pleadings.").

7  Granting individual injunctive relief in this class action would prejudice Defendants[9]. The Court

8  should decline to grant relief not pled to individuals belonging to the BDC.

**C. Even if the unnamed class members' request for injunctive relief is proper, they fail to demonstrate that they are entitled to such relief.**

11  The unnamed class members are precluded from bringing individual claims for separate,

12  injunctive relief. Nonetheless, even if the Court determines otherwise, the unnamed class members

13  have failed to demonstrate that they are entitled to individual injunctions.

14  The standard for a permanent injunction is "essentially the same" as that of a preliminary

15  injunction, with the exception that the movant must show actual success on the merits. *Amoco Prod.*

16  *Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Aubin v. Bonta*, 665 F. Supp. 3d 1097, 1106

17  (N.D. Cal. 2023). That is, to obtain a permanent injunction, the unnamed class members must

18  demonstrate (1) actual success on the merits (*i.e.*, that they have suffered an irreparable injury), (2)

19  irreparable harm, (3) that the balance of equities tips in their favor, and (4) that an injunction serves

20  the public interest. *See id.*; *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). When the

---

[9] For example, prejudice would result from the failure to permit the administrative process to play out, precluding the agency from exercising its expertise to generate a proper record and decision. *See infra*, § III. C. i.

1   nonmovant is the government, the last two factors "merge." *See, e.g.*, *Aubin*, 665 F. Supp. 3d at 1106.

2   The unnamed class members fail to meet these requirements.

3           i.      **The unnamed class members are required to exhaust their administrative**
4                   **remedies before the BIA.[10]**

5           "Exhaustion is generally required as a matter of preventing premature interference with agency

6   processes, so that the agency may function efficiently and so that it may have an opportunity to correct

7   its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to

8   compile a record which is adequate for judicial review." *Global Rescue Jets, LLC v. Kaiser Foundation*

9   *Health Plan, Inc.*, 30 F.4th 905, 913 (9th Cir. 2022) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765

10  (1975)).  Indeed,  the  rationale  behind  requiring  exhaustion  of  administrative  remedies  prior  to

11  entertaining a habeas petition is applicable here. When an alien fails to exhaust appellate review at the

12  BIA, courts should "ordinarily" dismiss the habeas petition without prejudice or stay proceedings until

13  he exhausts his appeals. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). As stated in past

14  briefing, bypassing review at the BIA is "improper." *Id.* The Ninth Circuit identifies three reasons to

15  require exhaustion before entertaining a habeas petition. *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th

16  Cir. 2007). First, the agency's "expertise" makes its "consideration necessary to generate a proper

17  record and reach a proper decision." *Id.* (quoting *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th

18  Cir. 2003)).  Second, excusing exhaustion encourages "the deliberate bypass of the administrative

19  scheme." *Id.* (quoting *Noriega–Lopez*, 335 F.3d at 881). And third, "administrative review is likely to

20

21  _____

22  [10] Defendants reassert and incorporate the arguments set forth in their Opposition to Named Plaintiff's Motion for
    Preliminary Injunction, ECF No. 21 at 13–22, and Opposition to Class Member Zeferino's Motion for TRO, ECF No. 37
23  at 4–9, establishing why individual class members must exhaust administrative remedies before seeking injunctive relief
    before the Court.

24  DEFENDANTS' OPP'N TO PLS.' MOT. FOR                          U.S. DEPARTMENT OF JUSTICE
    PARTIAL SUMM. J.                        22          CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
    [CASE NO. 3:25-CV-05240-TMC]                                P.O. BOX 878, BEN FRANKLIN STATION
                                                                   WASHINGTON, D.C. 20044
                                                                       (202) 307-6329

1    allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting

2    *Noriega–Lopez*, 335 F.3d at 881). Each reason applies here. *See Puga*, 488 F.3d at 815.

3                    ii.    **The unnamed class members have failed to demonstrate a likelihood of**
                           **success on the merits**

4            As noted by the Court in denying class member Zeferino's Motion for TRO, "[a] likelihood of

5    success on the merits is the most important *Winter* factor and, where a party fails to satisfy this

6    threshold showing, the Court need not consider the remaining factors." *Doe v. Bostock*, No. C24-0326-

7    JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), report and recommendation

8    adopted, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing *Garcia v.*

9    *Google*, 786 F.3d 733, 740 (9th Cir. 2015)); ECF No. 38 at 8. And as the Court has recognized, because

10   the unnamed class members seek a mandatory injunction, ECF No. 41-1, they "'must establish that

11   the law and facts *clearly favor* [their] position, not simply that [they] are likely to succeed.'" *See id.*

12   at 4 (citing *Garcia*, 786 F.3d at 720) (emphasis in original); ECF No. 38 at 8. They are unable to do

13   so.

14           For the same reasons that class member Zeferino was unsuccessful in his attempts to obtain a

15   TRO, ECF No. 38, the unnamed class members are similarly unable to secure injunctive relief here.

16   Specifically, they have failed to demonstrate that the "Court has the power to grant an injunction to []

17   unnamed member[s] of a class certified on the basis that a single declaratory judgment would provide

18   its members their requested relief," *see id.* at 8–9, and have thus failed to establish that the law and

19   facts clearly favor their position. *See Garcia*, 786 F.3d at 720; *see supra* §§ II, III A. & B.; *id.* Thus,

20   the Court should deny the unnamed class members' request for individual injunctive relief and "need

21   not consider the remaining factors." *Doe*, 2024 WL 3291033, at *5. Nonetheless, Defendants will

22   briefly address these factors.

23

24   DEFENDANTS' OPP'N TO PLS.' MOT. FOR        23        U.S. DEPARTMENT OF JUSTICE
     PARTIAL SUMM. J.                                    CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
     [CASE NO. 3:25-CV-05240-TMC]                        P.O. BOX 878, BEN FRANKLIN STATION
                                                         WASHINGTON, D.C. 20044
                                                         (202) 307-6329

### iii. The unnamed class members have failed to establish irreparable harm because they have an adequate remedy in appealing to the BIA.

Irreparable harm in the context of injunctive relief "is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Az. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). To be sure, deprivation of constitutional rights can constitute irreparable harm. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). But the unnamed class members seek injunctive relief based on alleged statutory—*not* constitutional—violations. *See* ECF No. 3 at 9–16, 17. And even assuming the unnamed class members are correct on the merits, they have an adequate remedy. *See Az. Dream Act Coal.*, 757 F.3d at 1068. The unnamed class members can obtain relief at the BIA. *See Holland v. Rosen*, 277 F. Supp. 3d 707, 748 (D.N.J. 2017) ("A federal court injunction is not a necessary remedy where the prospect of a state remedy is available.").

The unnamed class members' detention therefore fails to constitute an irreparable harm. *See Hernandez*, 872 F.3d at 994. Their generalized complaints of family separation and inadequate living conditions are not enough to warrant injunctive relief. ECF No. 35. Because the alleged harm "is essentially inherent in detention, the Court cannot weigh this strongly in favor of" the unnamed class members. *Lopez Reyes v. Bonnar*, No 18-cv-07429-SK, 2018 WL 747861 at *10 (N.D. Cal. Dec. 24, 2018). The Court should deny the unnamed class members' request for injunctive relief.

### iv. The Government has a compelling interest in allowing the BIA to speak on the issue.

The government has a compelling interest in the steady enforcement of its immigration laws. *See Miranda v. Garland*, 34 F.4th 338, 365–66 (4th Cir. 2022) (vacating an injunction that required a "broad change" in immigration bond procedure); *Ubiquity Press Inc. v. Baran*, No 8:20-cv-01809-JLS-DFM, 2020 WL 8172983, at *4 (C.D. Cal. Dec. 20, 2020) ("the public interest in the United States' enforcement of its immigration laws is high"); *United States v. Arango*, CV 09-178 TUC DCB,

DEFENDANTS' OPP'N TO PLS.' MOT. FOR PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

24

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

2015 WL 11120855, at 2 (D. Ariz. Jan. 7, 2015) ("the Government's interest in enforcing immigration laws is enormous."). Judicial intervention would only disrupt the status quo. *See, e.g.*, *Slaughter v. White*, No. C16-1067-RSM-JPD, 2017 WL 7360411, at *2 (W.D. Wash. Nov. 2, 2017) ("[T]he purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits."). The Court should avoid a path that "inject[s] a degree of uncertainty" in the process. *USA Farm Labor, Inc. v. Su*, 694 F. Supp. 3d 693, 714 (W.D.N.C. 2023). The BIA exists to resolve disputes like this. *See* 8 C.F.R. § 1003.1(d)(1). By regulation it must "provide clear and uniform guidance" "through precedent decisions" to "DHS [and] immigration judges." *Id.* Defendants ask that the Court allow the established process to continue without disruption.

The BIA also has an "institutional interest" to protect its "administrative agency authority." *See McCarthy v. Madigan*, 503 U.S. 140, 145, 146 (1992) *superseded by statute as recognized in Porter v. Nussle*, 534 U.S. 516 (2002); *see also Global Rescue Jets, LLC.*, 30 F.4th at 913 ("[e]xhaustion is generally required as a matter of preventing premature interference with agency processes). Indeed, "agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *McCarthy*, 503 U.S. at 145. The Court should allow the BIA the opportunity to weigh in on the issues raised in this action.[11] *See id.* The Court should deny the preliminary injunction.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion for Partial Summary Judgment and further deny the unnamed class members' request for individual injunctive relief.

---

[11] As discussed in Defendants MTD, Named Plaintiff's individual claims are moot, and, given his departure from the United States, his appeal is considered withdrawn. *See* 8 C.F.R. § 1003.4; MTD at 14.

DEFENDANTS' OPP'N TO PLS.' MOT. FOR PARTIAL SUMM. J.
[CASE NO. 3:25-CV-05240-TMC]

25

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

1    Dated: July 1, 2025                          Respectfully submitted,

2                                                 BRETT A. SHUMATE
                                                  Assistant Attorney General
3                                                 Civil Division

4                                                 SAMUEL P. GO
                                                  Assistant Director
5
                                                  VICTOR M. MERCADO-SANTANA
6                                                 Senior Litigation Counsel

7                                                 MICHAEL D. ROSS
                                                  Trial Attorney
8
                                                  */s/ Ian S. Lam*
9                                                 IAN S. LAM (DC Bar No. 90017495)
                                                  Trial Attorney
10                                                U.S. Department of Justice
                                                  Civil Division, Office of Immigration Litigation
11                                                Washington, DC 20044
                                                  Phone: (202) 307-6329
12                                                Email: Ian.S.Lam@usdoj.gov

13                                                *Attorneys for Defendants*

14                                                ***I certify that this memorandum contains 8,372 words, in compliance with the Local Civil Rules.***

15

16

17

18

19

20

21

22

23

24    DEFENDANTS' OPP'N TO PLS.' MOT. FOR             26         U.S. DEPARTMENT OF JUSTICE
      PARTIAL SUMM. J.                                          CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
      [CASE NO. 3:25-CV-05240-TMC]                              P.O. BOX 878, BEN FRANKLIN STATION
                                                                WASHINGTON, D.C. 20044
                                                                (202) 307-6329