District Judge Tiffany M. Cartwright

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Ramon RODRIGUEZ VAZQUEZ, and those similarly situated,

    *Plaintiffs*,

v.

Drew BOSTOCK, *et al.*,

    *Defendants*.

CASE NO. 3:25-cv-05240-TMC

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Noting Date: July 7, 2025

Oral Argument Requested

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

1

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

    I.    The Court Lacks Jurisdiction to Review Both the Bond Denial and Bond Appeal Claims. 2

        A.    8 U.S.C. § 1252(g) bars review of the Bond Denial Claims. ........................................ 2

        B.    8 U.S.C. § 1252(b)(9) bars review of the Bond Denial and Bond Appeal Claims. ........ 4

        C.    Plaintiffs' Bond Denial Claims violate § 1252(f)(1) and fail under Rule 23(b)(2). ........ 6

    II.    Statutory Canons and Legislative History Cannot Re-write § 1225's Plain Command That Applicants for Admission Must Be Detained. ........................................................................ 9

        A.    Because the text of § 1225 is unambiguous, the Court need not resort to canons of construction. ...................................................................................................................... 9

        B.    The specific detention authority at § 1225 governs over the general authority at § 1226. ................................................................................................................................ 10

        C.    To the extent reliance on legislative history is appropriate, it favors the government. 11

    III.    The Court Should Dismiss the Bond Appeal Claims for Failure to State a Claim. ........... 12

CONCLUSION ................................................................................................................ 14

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

1

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

**INTRODUCTION**

Plaintiffs' Response to Defendants' Motion to Dismiss ("Response") fails to rescue their claims from dismissal under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) for a variety of reasons.[1] *See* Pls.' Resp. to Defs.' Mot. to Dismiss, ECF No. 54.

As a threshold matter, the Court lacks jurisdiction over Plaintiffs' claims because federal law forecloses review of these claims and granting the coercive relief sought. *See* 8 U.S.C. § 1252(g), (b)(9), (f)(1). Accordingly, Plaintiffs cannot comply with Federal Rule of Civil Procedure 23(b)(2) and fail to plead injuries that are redressable, a requirement for Article standing. The Court should dismiss on this basis alone.

Even if the Court reaches the merits of this action, Plaintiffs fail to state claims upon which relief can be granted. As to their Bond Denial Claims, statutory canons and legislative history cannot re-write 8 U.S.C. § 1225's plain command that applicants for admission must be detained. And as to their Bond Appeal Claims, Plaintiffs' reliance on inapplicable or distinguishable caselaw cannot rectify their failure to carry their burden under Rule 12(b)(6). Indeed, Plaintiffs fail to identify a protected interest in the pace of bond appeals and fail to state a plausible claim to a specific timeframe for adjudication of bond appeals.

Defendants respectfully request that the Court dismiss the Complaint in its entirety under either Rule 12(b)(1) or Rule 12(b)(6), or both.

---

[1] The Court should dismiss named Plaintiff's individual claims because Plaintiffs concede they are moot. *See, e.g., Pitts v. Terrible Herbst, Inc.*, 653 F. 3d 1081, 1086 (9th Cir. 2011); Response at 5.

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

1

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

# ARGUMENT

**I.    The Court Lacks Jurisdiction to Review Both the Bond Denial and Bond Appeal Claims.**

Federal law limits—and in this case, forecloses—federal district court review of decisions and actions taken by the Executive Branch that relate to the removal of aliens. *See, e.g.*, 8 U.S.C. § 1252(b)(9), (f)(1), (g). The Court should dismiss this case in its entirety for lack of subject matter jurisdiction.

**A.    8 U.S.C. § 1252(g) bars review of the Bond Denial Claims.**

Regardless of Plaintiffs' framing, § 1252(g) precludes review of Plaintiffs' Bond Denial Claims because the detention they challenge directly arises "from the [government's] decision [and] action" to "commence proceedings." *See* Mot. at 15–16; 8 U.S.C. § 1252(g).

Contrary to Plaintiffs' characterization, Defendants do not seek to broadly construe § 1252(g). *See* Response at 5–6. Rather, the statutory text itself and caselaw, including from this Circuit, make clear the preclusive effect of § 1252. *See* Mot. at 15–16. Nonetheless, Plaintiffs contend that the government's detention of class members pending their removal proceedings cannot fall under § 1252(g) because such detention does not constitute a discretionary decision to commence proceedings. Response at 7. Plaintiffs are wrong—detention pending removal proceedings is part and parcel of the government's commencement of proceedings against Plaintiffs.

By its plain terms, § 1252(g) eliminates district court jurisdiction over claims attacking decisions or actions to commence removal proceedings. Congress was clear in providing that "no court" has jurisdiction over "any cause or claim" arising from the commencement of removal proceedings, "notwithstanding any other provision of law," whether "statutory or nonstatutory." 8 U.S.C. § 1252(g). As the Supreme Court explained in *Reno v. American-Arab Anti-Discrimination*

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

2

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

*Committee* ("*AADC*"), § 1252(g) was "designed to give some measure of protection" to immigration authorities' discretionary decisions regarding the commencement of removal proceedings. 525 U.S. 471, 485 (1999). Indeed, the "theme" of IIRIRA as a whole was to "protect[] the Executive's discretion from the courts," and consistent with that, § 1252(g) in particular was "directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 486–87. But this fragmentation is precisely what Plaintiffs seek. *See* Response at 7. The Court should decline this request, especially in light of the caselaw rejecting Plaintiffs' position. *See* Mot. at 15–16.

Indeed, Plaintiffs fail to meaningfully address the cases cited by Defendants establishing that an alien's detention during removal proceedings necessarily arises from the Secretary's decision and/or action to "commence proceedings." *See id.* Instead, they argue that the Supreme Court "has never held that [their] claims might be barred by § 1252(g)." *See* Response at 6. That argument misses the mark. Even if the Supreme Court has not directly foreclosed review of Plaintiffs' claims, it has indicated that Plaintiffs' detention claims likely fall within the purview of § 1252(g). *See AADC*, 525 U.S. at 483.

*AADC* demonstrates that Defendants' position on the applicability of § 1252(g) is correct. Section 1252(g) was enacted to preserve the executive's discretion to, among other things, initiate stages of the removal process. *See AADC*, 525 U.S. at 483. This correspondingly protects the executive's discretion to then "terminate proceedings." *See id.* at 484. But under Plaintiffs' view, Response at 5–7, if § 1252(g) were so narrow as to only apply to the government's decision to place aliens into removal proceedings—but not the mandatory detention that is necessarily attached to commencement of such proceedings—then under the same logic, the government's decision to

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

3

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

terminate proceedings against an alien would not encompass releasing that alien from detention pending removal proceedings absent another basis for detention.

This interpretation of § 1252(g) leads to an illogical result. It only makes sense that the government's decision to commence removal proceedings—as relevant to this case—would require detention pending removal proceedings under § 1225(b)(2). Indeed, the Supreme Court did not include detention pending removal proceedings as a decision or action tangential to the removal process but too attenuated to fall within the confines of § 1252(g).[2] *See id.* at 943.

The Court should dismiss Plaintiffs' Bond Denial Claims because review of these claims is precluded by § 1252(g).

**B.    8 U.S.C. § 1252(b)(9) bars review of the Bond Denial and Bond Appeal Claims.**

Like the § 1252(g) analysis above, the applicability of § 1252(b)(9) turns on a similar question: Whether Plaintiffs' claims challenging their detention pending removal proceedings arise "from any action taken . . . to remove [them] from the United States." *See* 8 U.S.C. § 1252(b)(9). The answer is, again, yes.

Both the Bond Denial and Bond Appeal Claims challenge the government's decision and action to detain Plaintiffs, which arises from an action or decision taken by the government to commence removal proceedings, which is an "action taken . . . to remove [them] from the United States." *See id.*; Mot. at 17–19. By its terms, an applicant for admission subject to detention under § 1225(b)(2)(A) is "detained for a proceeding under section [1229a]." 8 U.S.C. § 1225(b)(2)(A). This conclusion is supported by *Jennings*, where the Supreme Court determined that "§ 1252(b)(9) does

---

[2] These tangential decisions or actions include: "decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *AADC*, 525 U.S. at 943.

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

4

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

not present a jurisdictional bar" in situations where "respondents . . . [were] not challenging the decision to detain them in the first place." *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018). Despite what Plaintiffs contend, they *are* challenging the decision to detain them in the first place because their detention pending removal proceedings is mandatory under § 1225(b)(2). *See* Mot. at 27–30; *infra* § II.; *Florida v. U.S.*, 660 F.Supp.3d 1239, 1275 (N.D. Fla. 2023).[3] It is irrelevant whether DHS or an IJ "considers" a Bond Denial Class ("BDC") member detained under § 1225(b)(2) because—regardless of who makes the "consideration"—§ 1225(b)(2) is clear: the BDC is subject to mandatory detention. *See id.; see also Florida v. U.S.,* 660 F.Supp.3d. at 1275.

      To evade this inevitable conclusion, Plaintiffs resort to misconstruing *Jennings. See* Response at 7–8. Plaintiffs erroneously claim that "*Jennings* squarely refutes [Defendants'] argument" and mischaracterize—according to their interpretation of *Jennings*—Defendants' position as "extreme" and "absurd." *See id.* at 8. The portion of *Jennings* from which Plaintiffs derive this characterization discusses a view of § 1252(b)(9) that Defendants have neither advocated for nor subscribed to. The Supreme Court used the word "absurd" while unpacking the logical flaws of a hypothetical, overly-expansive reading of § 1252(b)(9)—that is, where any action even marginally related to removal would fall under § 1252(b)(9) if, but for that action, "the aliens would not be in custody at all." *See Jennings*, 583 U.S. at 293. For example, under this expansive reading of § 1252(b)(9), "an alien [] injured when a truck hits the bus transporting aliens to a detention facility" could not sue because this incident could be said to "'aris[e] from' actions taken to remove the alien[]." *See id.* As is obvious from the Motion, this is not the argument that Defendants are making.

---

[3] *See* ECF No. 56 (explaining, in further detail, *Florida*).

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

5

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

Instead, by relying on what *Jennings* actually holds, Defendants reasonably assert that Plaintiffs' claims are barred by § 1252(b)(9) because they challenge their mandatory detention under § 1225(b)(2) in the first instance, which is a challenge arising from an action taken to remove them from the United States. *See Jennings*, 583 U.S. at 294; 8 U.S.C. § 1252(b)(9); Mot. at 17–19. And this same reasoning applies to Plaintiffs' Bond Appeal Claims because those claims similarly arise from action taken by the Secretary of Homeland Security to remove them, which forms the basis of their subsequent appeals to the BIA.

Dismissal of this case in its entirety is appropriate under § 1252(b)(9).

### C. Plaintiffs' Bond Denial Claims violate § 1252(f)(1) and fail under Rule 23(b)(2).

Section 1252(f)(1) bars the relief that Plaintiffs are requesting. *See* Mot. 21–23. While true that this Circuit has held that "§ 1252(f)(1) does not bar classwide declaratory relief," *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1123–24 (9th Cir. 2025) (internal quotations omitted), the Supreme Court has yet to decide the issue conclusively. *See Jennings*, 583 U.S. at 313; *Biden v. Texas,* 597 U.S. 785, 839 (2022) (Barrett, J., dissenting); *Garland v. Aleman Gonzalez*, 596 U.S. 543, 551 n.2 (2022). That this Circuit has determined declaratory relief is available under § 1252(f)(1) does not mean that such a decision cannot be revisited by this Circuit or overturned by the Supreme Court. And despite this Circuit's precedent, the plain text of § 1252(f)(1) nonetheless counsels against granting the relief that Plaintiffs seek here.

Section 1252(f)(1) provides that the Court does not have jurisdiction to "enjoin or restrain the operation" of § 1225(b)(2). *See* 8 U.S.C. § 1252(f)(1). Regardless of how Plaintiffs frame their relief, they are asking the Court to do just that. For example, they claim that typically, "compliance with declaratory judgments is expected." *See* Response at 15. Compliance with a declaratory judgment in

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

6

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

favor of Plaintiffs would certainly result in enjoining or restraining the operation of § 1225(b)(2). Critically, the Court may not impose coercive relief that "interfere[s] with the government's efforts to operate" the covered provisions in a particular way." *Aleman Gonzalez*, 596 U.S. at 551.

In further support of their request for coercive relief, Plaintiffs claim that "enjoin" and "restrain" are "legal terms of art" where "enjoin" is in reference to a permanent injunction, and "refrain" refers to temporary injunctive relief; that is, "enjoin" and "restrain" refer only to different types of injunctive relief. *See* Response at 11–12. Defendants disagree with this strained reading of § 1252(f)(1).

Section 1252(f)(1) uses the terms "enjoin" and "restrain" rather than referencing discrete forms of prohibited relief, as found in like other sections like § 1252(e)(1), because those two words have "a broad meaning that would encompass declaratory judgments . . . [§] 1252 (f)(1) seeks to limit a remedy that applies to entire classes and, to achieve that aim, uses broad verbs—'enjoin or restrain'— that encompass a range of court actions." *Alli v. Decker*, 650 F.3d 1007, 1020 (3d Cir. 2011) (Fuentes, J., dissenting). Thus, Plaintiffs' arguments comparing and contrasting § 1252(f)(1) to other sections of § 1252 are unpersuasive. *See* Response at 11–13. Section 1252(f)(1) is designed to broadly preclude any relief that would "enjoin or restrain" operation of § 1225. Section 1252(f)(1) is designed to preclude exactly the relief Plaintiffs seek here.

And as stated in the Motion, even if declaratory relief were appropriate here, it would not be satisfactory under Rule 23(b)(2). Mot. at 23–26. Lending further support to dismissal here, Plaintiffs concede that a declaratory judgment may indeed "serve as a basis for issuance of a later injunction to give effect to the declaratory judgment." But any declaratory relief would be an improper advisory opinion because it would not "affect the behavior of the defendant towards the plaintiff." *Onosamba-*

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

7

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

*Ohindo v. Searls*, 678 F. Supp. 3d 364, 372 (W.D.N.Y. 2023). It would therefore "be silly to allow class-wide injunctions as long as plaintiffs use two steps—a class action for declaratory relief followed by individual injunction actions—instead of one." *Alli*, 650 F.3d at 1020 (Fuentes J., dissenting).[4]

      Realizing that *Onosamba-Ohindo* directly undercuts their attempt to circumvent § 1252(f)(1) and/or Rule 23(b)(2), Plaintiffs try to distinguish it. But *Onosamba-Ohindo* is precisely on point. First, Plaintiffs' claim that *Onosamba-Ohindo's* reasoning would "render virtually *any* declaratory judgment an impermissible 'advisory opinion.'" Response at 16. This result should not be shocking because § 1252(f)(1) prohibits coercive relief, which, in this case, includes the "declaratory" relief Plaintiffs seek. Next, Plaintiffs criticize *Onosamba-Ohindo'*s conclusion that an improper advisory opinion results when a declaratory judgment would not affect the behavior of the defendant towards a plaintiff, because—as Plaintiffs contend—"declaratory judgments *are* in fact expected to alter a defendant's behavior." *See id.* at 17. So again, Plaintiffs claim that declaratory relief should affect Defendants' behavior. This confirms that the "declaratory" relief Plaintiffs' seek is injunctive in nature—which is impermissible under § 1252(f)(1). *See, e.g., Lag Shot LLC v. Facebook, Inc.*, No. 21-CV-01495-JST, 2021 WL 2660433 (N.D. Cal. June 25, 2021) (citing *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)) (an injunction requires that a party either take action, or refrain from taking action). At the very least, Plaintiffs now admit that they seek relief that "interfere[s] with the government's efforts to operate" § 1225(b)(2), which violates § 1252(f)(1). *See Aleman Gonzalez*, 596 U.S. at 551.

---

[4] In citing this same dissent to support their claim that class members are permitted to "pursue individual injunctions after issuance of a classwide declaration," Plaintiffs fail to provide context. Response at 15 (citing *Alli*, 650 F.3d at 1015). Judge Fuentes said this in the context of noting that "[a] class-wide declaratory judgment, followed by individual injunctions from every member of the class is, in every consequence that matters, the same as a class-wide injunction. This is precisely the restraint that § 1252(f)(1) purports to prevent." *See id.* at 1020 n.2. *See also Brito v. Garland,* 22 F. 4th 240 (1st Cir. 2021) *("*The Supreme Court has on three occasions stated in dicta that section 1252(f)(1) 'prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221–1231.'").

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

8

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

Plaintiffs cannot have it both ways. On one hand, they argue that declaratory relief is separate from injunctive relief, un-coercive, and permissible under § 1252(f)(1). *See, e.g.*, Response at 12–13 ("declaratory relief does *not* 'interdict[] . . . the operation at large of the statute'"). On the other hand, Plaintiffs assert that "declaratory judgments *are* in fact expected to alter a defendant's behavior." *Id.* at 17. So no matter how Plaintiffs frame their request for relief, the relief requested is either the functional equivalent of injunctive relief or would result in an improper advisory opinion. *See* Mot. at 20–26. The Court cannot, therefore, grant the relief Plaintiffs request, which further indicates that their injuries are not redressable and warrant dismissal for lack of standing. *See id.* at 26–27. Thus, the Court should dismiss the Bond Denial Claims.

## II. Statutory Canons and Legislative History Cannot Re-write § 1225's Plain Command That Applicants for Admission Must Be Detained.

### A. Because the text of § 1225 is unambiguous, the Court need not resort to canons of construction.

The Court should reject Plaintiffs' claim that § 1225 does not apply to them. Instead of "textual indicators," the government points to the text itself. Response at 22. Mandatory detention under § 1225 applies to any alien "present in the United States who has not been admitted." 8 U.S.C. § 1225(a), (b)(2). Plaintiffs fall within that category. Because the plain text of § 1225 "provide[s] a clear answer, we do not need to look to other canons of statutory construction." *Metro One Telecomm., Inc. v. C.I.R.*, 704 F.3d 1057, 1063 (9th Cir. 2012). Such canons are "inapplicable" where "the statutory language is clear." *Kawashima v. Holder*, 615 F.3d 1043, 1053 n.6 (9th Cir. 2010). Although the process of deciding who may enter and stay in the country "generally begins at the Nation's borders and ports of entry," the text of § 1225 makes clear that it does not end there. *See Jennings*, 583 U.S. at 287. And

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

9

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

"when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 669 (2020).

Plaintiffs' reliance on the canon against surplusage is unconvincing. Although "the avoidance of surplusage in statutory text is an important goal, Congress harbors other important goals as well when adopting legislation." *Kawashima*, 615 F.3d at 1054. Redundancies "are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton v. Barr*, 590 U.S. 222, 239 (2020). The "better overall reading of the statute contains some redundancy." *Id.*

The Laken Riley Act (LRA), codified at § 1226(c)(1)(E), reflects a "congressional effort to be doubly sure" that certain unlawful aliens are detained. *Barton*, 590 U.S. at 239. After all, it arose after an inadmissible alien "was paroled into this country through a shocking abuse of that power." 171 Cong. Rec. H278 (daily ed. Jan 22, 2025) (statement of Rep. McClintock). Congress passed it out of concern that the executive branch "ignore[d] its fundamental duty under the Constitution to defend its citizens." *Id.* at H269 (statement of Rep. Roy). One member even expressed frustration that "every illegal alien is currently required to be detained by current law throughout the pendency of their asylum claims." *Id.* at H278 (statement of Rep. McClintock).

**B.  The specific detention authority at § 1225 governs over the general authority at § 1226.**

Neither can § 1226(a) rescue Plaintiffs' Bond Denial Claims. *See* Response at 21. When there is "an irreconcilable conflict in two legal provisions," then "the specific governs over the general." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1015 (9th Cir. 2017). As Plaintiffs point out, § 1226(a) "is the INA's default detention authority." ECF 41 at 13. It applies to anyone "arrested and

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

10

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

detained pending a decision" on removal. 8 U.S.C. § 1226(a). In contrast, § 1225 is much narrower. *See* 8 U.S.C. § 1225. It applies only to "applicants for admission." *See id.* Because Plaintiffs fall within the latter category, the specific detention authority under § 1225 governs over the general authority found at § 1226(a).

### C. To the extent reliance on legislative history is appropriate, it favors the government.

The "starting point" in statutory interpretation "is the existing statutory text, and not the predecessor statute." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (internal citations omitted). And if the plain text of a statute is clear, "that meaning is controlling" and courts "need not examine legislative history." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848 (9th Cir. 2011). But to the extent legislative history is appropriate here, nothing "refutes the plain language" of § 1225. *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011). Congress passed IIRIRA to correct "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc). It "intended to replace certain aspects of the [then] current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry." *Id.* (quoting H.R. Rep. 104-469, pt. 1, at 225). The Court should reject Plaintiffs' interpretation because it would put individuals who "crossed the border unlawfully" in a better position than those "who present themselves for inspection at a port of entry." *Id.* Individuals who presented at port of entry would be subject to mandatory detention under § 1225, but those who crossed illegally would be eligible for a bond under § 1226(a).

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

11

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

**III.    The Court Should Dismiss the Bond Appeal Claims for Failure to State a Claim.**

In attempting to manufacture a 60-day timeframe as a constitutionally mandated timeframe to adjudicate the appeal of a bond decision, Plaintiffs rely on distinguishable and inapplicable caselaw that fails to establish such a right. For example, Plaintiffs cite to a series of cases to assert that "meaningful appellate review" is necessary. Response at 25. But ultimately, the cases, read together, merely stand for proposition that the availability of appellate review addresses concerns with challenged provisions permitting detention. *Schall v. Martin*, 467 U.S. 253, (1984) (finding no constitutional concern with state statute authorizing detention of juveniles); *United States v. Salerno*, 481 U.S. 739, 751–52 (1987) (finding no constitutional concern with Bail Reform Act pretrial detention when appeal was available as part of robust procedures available to defendants). And *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), the single case Plaintiff cited related to immigration detention, has been largely abrogated or overruled. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (noting *Singh* made representations regarding required procedures in relation to implied statutory right that was overruled by the Supreme Court and putting into question the validity of such holding). Later in their brief, Plaintiffs rely on additional cases that, by their admission, relate to the "timely initial hearings" and not determination of appeals. Response at 27–28. Here, Plaintiffs do not challenge provisions relating to the detention scheme pending removal proceedings.[5] These cases are thus inapposite.

---

[5] Plaintiffs' attempts to argue for fast adjudication of appeals in 60 days or less does not appear to account for issues related to appellate procedure. For instance, they do not explain how imposing a 60-day period would affect the production of a record for review on appeal, account for reasonable time for the parties to prepare their briefs, and provide the adjudicative body with reasonable time to render a decision.

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

12

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

Plaintiffs then attempt to rely on *United States v. Fernandez-Alonso*, 813 F.2d 1571 (9th Cir. 1987), but that case involves a different procedural posture and context. The issue in *Fernandez-Alonso* was the interpretation of a "promptness" requirement in the Bail Reform Act. 813 F.2d at 1572. The court did not apply a constitutional measure relating to the length of time for a district court to review a magistrate denial of release but a statutory standard. Plaintiffs here do not rely on a statute that imposes a similar standard. Plaintiffs' reliance on a statutory analysis pursuant to the Bail Reform Act does not aid the constitutional claim. *See also* Mot. at 35 (arguing Plaintiffs cannot rely on inapplicable cases relying on statutory and not constitutional provisions).

Plaintiffs also fail to establish that the statistics indicating an average 204-day period to adjudicate appeals constitutes a sufficiently pleaded case of delay because those statistics fail to establish a delay as to *detained* members of the class. As Defendants explained, the 204-day number lacks context and is unpersuasive, Mot. 35–36, and Plaintiffs' actual submission of that number underscores the point. The data behind the pleaded delay submitted by Plaintiffs fails to distinguish between bond appeals filed by detained aliens and those who have been released, removed, or received final decisions in their removal proceedings during the period the appeal was pending. *See* Korthuis Decl. Ex. A. This is a fatal pleading deficiency given that reliance on general numbers, and not numbers specific to delays alleged by Plaintiffs, demonstrate that Plaintiffs fail to plausibly allege that the Bond Appeal Class is subject to an unreasonable delay. *See Demarco v. Deptech Corp.*, 149 F.2d 1212, 1225 (S.D. Cal. 2001) (stating party failed to state a securities fraud claim when there was a difference of opinion as to proper statistical analysis to be employed).

Ultimately, it is Plaintiffs' burden to adequately allege that the time to adjudicate the Bond Appeal Class's appeal of bond redeterminations violates the Constitution. Plaintiffs, however, rely on

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

13

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329

inapplicable caselaw or on facts specific to the Bond Appeal Class. The Court should therefore dismiss the Complaint for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion and dismiss the Complaint in its entirety.

Dated: July 7, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

SAMUEL P. GO
Assistant Director

VICTOR M. MERCADO-SANTANA
Senior Litigation Counsel

MICHAEL D. ROSS
Trial Attorney

*/s/ Ian S. Lam*
IAN S. LAM (D.C. Bar No. 90017495)
Trial Attorney
U.S. Department of Justice
Civil Division, Office of Immigration Litigation
Washington, DC 20005
Phone: 202-307-6329
Email: Ian.S.Lam@usdoj.gov

*Attorneys for Defendants*

***I certify that this memorandum contains 4,188 words, in compliance with the Local Civil Rules.***

DEFENDANTS' REPLY ISO MOT. TO DISMISS
[CASE NO. 3:25-CV-05240-TMC]

14

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, OFFICE OF IMMIGRATION LITIGATION
P.O. BOX 878, BEN FRANKLIN STATION
WASHINGTON, D.C. 20044
(202) 307-6329