UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Ramon RODRIGUEZ VAZQUEZ, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>Drew BOSTOCK, et al.,<br><br>　　　　　Defendants. | Case No. 3:25-cv-05240-TMC<br><br>**REPLY MOTION FOR PARTIAL SUMMARY JUDGEMENT**<br><br>Noting Date: July 8, 2025 |

REPLY IN SUPP. OF MOT.
FOR PARTIAL SUMM. J.
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 957-8611

## INTRODUCTION

Defendants' response in this case amounts to little more than a "naked policy appeal" divorced from the text and structure of § 1226. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 680 (2020). But "policy preferences are not a source of . . . statutory authority." *ACA Connects v. Bonta*, 24 F.4th 1233, 1243 (9th Cir. 2022). Here, the statutory authority—its plain text, tools of interpretation, and longstanding application—demonstrates that Bond Denial Class members are entitled to bond hearings under § 1226(a). Moreover, unlike Defendants, Plaintiffs have presented the Court with a unified, coherent account of how § 1225(b) and § 1226(a) interact, without rendering any provision of those statutes meaningless. Accordingly, the Bond Denial Class is entitled to summary judgment as a matter of law.

The Individual Class Members in removal proceedings who have been denied bond pursuant to Defendants' unlawful policy are also entitled to injunctions. They have faced months of unlawful detention and will continue to do so absent this Court's intervention. While Defendants assert that individual injunctions would mean there is no indivisible remedy, that is not so: the class still seeks the same declaratory relief that will benefit all members, and the individual injunctions involve the same substance as that declaratory relief. Plaintiffs' request is the product of 8 U.S.C. § 1252(f)(1), which explicitly permits individual injunctions for class members. And while Defendants also claim that such a procedure is unworkable, that process is logical result of the statute Congress has drafted and the Supreme Court's interpretation of that statute.

Finally, Plaintiffs urge the Court to "direct entry of a final judgment" as to the Bond Denial Class claims immediately upon issuing a ruling. Fed. R. Civ. P. 54(b). This will allow the parties to either promptly appeal or accept the final judgment as to those claims, while the

REPLY IN SUPP. OF MOT.
FOR PARTIAL SUMM. J. - 1
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

separate Bond Appeal Class claims proceed to discovery.

## ARGUMENT

### I. Defendants Have Not Shown That § 1225(b)(2), Rather Than § 1226(a), Applies to Class Members.

#### A. Defendants Have No Response to 8 U.S.C. § 1226's Plain Text and Rely on Their Policy Preferences to Interpret that Section.[1]

Defendants mischaracterize § 1225(b)(2) as a "specific detention authority" that "governs over" § 1226(a)'s "general authority," emphasizing it covers only "applicants for admission." Dkt. 56 at 8. The correct analysis, however, begins with § 1226(a)'s "default rule." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). As that subsection provides, "[e]xcept as provided in subsection (c)," noncitizens in detention may be released on bond or conditional parole pending a decision in their removal proceedings. 8 U.S.C. § 1226(a). Subsection (c) exempts from this detention authority, inter alia, certain inadmissible noncitizens, including people who are "inadmissible under paragraph (6)(A) . . . of section 1182(a)"—i.e., those who entered the United States without inspection, and who have been arrested for, charged with, or convicted of certain crimes. *Compare id.* § 1226(c)(1)(E), *with id.* § 1182(a)(6)(A). Of course, these "statutory exceptions would be unnecessary" if Congress did not intend for § 1226(a) to cover Bond Denial Class members by default. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010).

Besides this "common sense" understanding of the text, *Abramski v. United States*, 573 U.S. 169, 179 (2014), other canons of statutory interpretation support this reading. As this Court previously explained, courts presume that Congress means textual amendments to "have real and

---

[1] Defendants incorporate by reference their arguments that the Court lacks jurisdiction over the Bond Denial Class claims. Dkt. 56 at 7 n.4. Plaintiffs likewise incorporate their arguments in response. *See* Dkt. 54 at 5–18.

REPLY IN SUPP. OF MOT.
FOR PARTIAL SUMM. J. - 2
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

1  substantial effect." Dkt. 29 at 28 (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)). Defendants'

2  interpretation does the *opposite*, rendering § 1226(c)(1)(E) "superfluous—without any operative

3  significance." *Pulsifer v. United States*, 601 U.S. 124, 141 (2024). That violates the well-

4  established rule that courts should avoid reading a statute to render a provision meaningless. *See,*

5  *e.g.*, *Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023). Finally, Plaintiffs' interpretation

6  "work[s] in harmony with" the "longstanding administrative construction" of the statute.

7  *Monsalvo Velazquez v. Bondi*, 145 S. Ct. 1232, 1242 (2025) (citation omitted).

8      Defendants have no response *whatsoever* to these points. Instead, as to § 1226, their sole

9  argument is that the Laken Riley Act (LRA) is a "[r]edundanc[y]" with § 1225(b)(2), making

10 "doubly sure" people subject to § 1226(c)(1)(E) detention are subject to mandatory detention.

11 Dkt. 56 at 12–13 (citation omitted). This argument is nonsensical; either § 1226 applies, as

12 Plaintiffs contend, or § 1225(b)(2) applies, as Defendants contend. Defendants' argument instead

13 seeks to set aside the statutory language for policy reasons. But courts "[can]not alter the text in

14 order to satisfy the policy preferences of the [agency]." *Barnhart v. Sigmon Coal Co.*, 534 U.S.

15 438, 462 (2002). In the end, Defendants' assertion that the LRA is redundant belies their

16 position. While redundancy in a statute sometimes occurs, it is also a "cardinal rule of statutory

17 interpretation that no provision should be construed to be *entirely* redundant." *United States v.*

18 *$133,420.00 in U.S. Currency*, 672 F.3d 629, 643 (9th Cir. 2012) (emphasis added) (citation

19 omitted). Yet Defendants' interpretation does exactly that: render § 1226(c)(1)(E) "entirely

20 redundant." *Id.* (citation omitted).[2]

21

22 ─────────────────

23 [2] Defendants' resort to the statements of individual legislators' views on the LRA and other detention provisions enacted three decades before, *see* Dkt. 56 at 12–13, provide them no support. *See, e.g.*, *Garcia v. United States*, 469 U.S. 70, 76 (1984); *United States v. Sw. Cable*

24 *Co.*, 392 U.S. 157, 170 (1968).

REPLY IN SUPP. OF MOT.  
FOR PARTIAL SUMM. J. - 3  
Case No. 3:25-cv-05240-TMC  

NORTHWEST IMMIGRANT RIGHTS PROJECT  
615 Second Ave., Ste. 400  
Seattle, WA 98104  
(206) 957-8611

In sum, Defendants ask this Court to ignore § 1226's plain text. The Court should reject that invitation and hold § 1226(a) applies to Bond Denial Class members.[3]

B.  **Section § 1225(b)(2) Does Not Provide Mandatory Detention Authority to Detain Bond Denial Class Members.**

As Plaintiffs explained in their motion, § 1226(a) and § 1225(b)(2) work together to cover different categories of noncitizens: § 1226(a) covers individuals "already in the country" who are detained "pending the outcome of removal proceedings," *Jennings*, 583 U.S. at 289, and § 1225(b)(2) applies to those "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible," *id.* at 287. This understanding of each detention authority's role views both provisions "in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 486 (2015) (citation omitted). The statute's text supports this view, as § 1225 is plainly focused on inspecting people who have arrived or have just entered the United States. *See generally* 8 U.S.C. § 1225(a)–(b), (d). Consistent with this understanding of the statutory structure, the Board of Immigration Appeals also recently explained that § 1225(b) is the applicable detention authority for individuals who are "detained shortly after unlawful entry" and "just inside the southern border, and not at a point of entry, *on the same day* they crossed into the United States." *Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025) (citation modified) (emphasis added).

Defendants' response that all Plaintiffs are "applicants for admission" under 8 U.S.C. § 1225(a)(1) because they are "all present in the United States without being admitted," Dkt. 56

---

[3]  Defendants also claim that longstanding agency practices should be entitled to no deference here. Dkt. 56 at 13. But in enacting § 1226(a), Congress carried forward the agency's prior detention authority as to noncitizens in the United States, while § 1225 enacted new authorities to address noncitizens at the border. Dkt. 41 at 17–18. That Congress explained this fact in the legislative history, Defendants understood the statute that way for years, and Congress recently *confirmed* this fact only underscores that § 1226(a) applies to class members.

REPLY IN SUPP. OF MOT.  
FOR PARTIAL SUMM. J. - 4  
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT  
615 Second Ave., Ste. 400  
Seattle, WA 98104  
(206) 957-8611

at 8–9, rests on two fundamental errors. First, as Plaintiffs have explained, the term "applicant for admission" must be understood within the INA's larger structure. Section 1225(b) is a processing and inspection scheme for noncitizens attempting to enter the United States—it has nothing to do with those who have already entered and resided in the country, often for months, years, and even decades. Such people are not the recent arrivals and "arriving" noncitizens that § 1225 contemplates. *See generally* 8 U.S.C. § 1225; *see also* H.R. Rep. No. 104-469, pt. 1, at 157–58, 228–29 (1996); H.R. Rep. No. 104-828, at 209 (1996) (Conf. Rep.). Congress dealt with the detention of people like Plaintiffs separately in § 1226, which, as noted above, encompasses various classes of inadmissible persons already in the United States, including those who entered without inspection.

A second key flaw in Defendants' interpretation is that it renders the statutory phrase "a[] [noncitizen] *seeking admission*" meaningless. 8 U.S.C. § 1225(b)(2)(A) (emphasis added). This language reflects Congress's intent to mandatorily detain people who are apprehended at the border and are placed into proceedings where they may seek relief and admission. Such people can be said to be "seeking admission." Defendants attempt to stretch this much further, asserting that *anyone* in the United States present without admission can be "deemed to be seeking admission under the immigration laws" even if they are not "actually requesting permission to enter." Dkt. 56 at 9 (quoting *Matter of Lemus*, 25 I. & N. 734, 743 (BIA 2012)). But this is not actually a response to Plaintiffs' argument: Plaintiffs do not contest that individuals who have just entered the United States—without presenting themselves at a port of entry—and who are quickly apprehended may be deemed applicants for admission. Rather, Plaintiffs have explained that the statute also requires "seeking admission," thus specifying a distinct and additional requirement in § 1225(b)(2)(A). This language confirms that Congress limited that detention

REPLY IN SUPP. OF MOT.
FOR PARTIAL SUMM. J. - 5
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

authority to recent entrants—those apprehended upon arrival and affirmatively seeking to enter—not those who have long since entered and are residing in the United States.

Unlike Defendants' position, this interpretation gives effect to the phrase "seeking admission" by clarifying the statute applies when an individual takes steps upon their entry (or at a port of entry) to be admitted, and not at any point in time after entry. Nor does it render "applicant for admission" superfluous—that language underscores that people who *were* admitted are not covered.

Finally, Defendants observe that "[l]egal status and admission are distinct concepts," Dkt. 56 at 10, without explaining why this distinction matters. Defendants' point appears to be that people can be inadmissible, yet currently have lawful status, and that § 1226(a) refers to such people. But the statute here is concerned with *removal* proceedings, and for removal purposes, a person is either deportable (as someone who lawfully entered before) or inadmissible (as someone who has not previously entered lawfully). *See* 8 U.S.C. § 1229a(e)(2) (defining removability). It is true a person who was previously admitted and now applies for a new immigration benefit or relief from removal may have to show they are admissible. *See, e.g.*, *id.* U.S.C. § 1255(a) (requiring a person who seeks to adjust their status to be "admissible to the United States"). But removal proceedings are fundamentally concerned with "determining whether a [noncitizen] may be admitted to the United States or, if the [noncitizen] has been so admitted, removed from the United States." 8 U.S.C. § 1229a(a)(3). Accordingly, it is beside the point that persons who have already been paroled or admitted must demonstrate they are admissible when applying for certain immigration benefits. *See, e.g.*, 8 C.F.R. § 1240.11 (addressing such applications for relief as "ancillary matters" in removal proceedings).

REPLY IN SUPP. OF MOT.
FOR PARTIAL SUMM. J. - 6
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

Relatedly, Defendants' citation to § 1227(a)(1) undermines their own arguments. Persons subject to § 1227(a)(1) are deportable because they were inadmissible at the time of entry. But such persons are *not* inadmissible, underscoring that in the context of removal proceedings, deportability grounds and inadmissibility grounds apply to separate categories of persons based on whether a person was previously admitted. *See* 8 U.S.C. § 1227(a) (explaining that the deportability grounds apply to those "in and admitted to the United States").

In addition, Defendants' argument renders key parts of § 1226 meaningless. Subsection (c) refers to a variety of inadmissibility grounds, and paragraph (c)(1)(E) refers to a person who "*is* inadmissible" under 8 U.S.C. § 1182(a)(6)(A)(i) (emphasis added)—that is, someone currently "present in the United States without being admitted or paroled." A person who "is" inadmissible for this reason cannot have lawful status until they are admitted or paroled, underscoring again that § 1226(a) covers Bond Denial Class members.[4]

## II. The Court Has the Authority to Issue Individual Injunctions.

### A. Individual Injunctive Relief Is Consistent with Rule 23 and § 1252(f)(1).

Defendants err in asserting that the Court lacks authority to issue injunctions for Individual Class Members. Dkt. 56 at 14–20.[5] They contend that the individual members request the type of "different injunction[s]" that Rule 23(b)(2) forecloses. Dkt. 56 at 15 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (emphasis omitted)). But Defendants misread *Dukes*. *See* Dkt. 41 at 19–20. *Dukes* was concerned with injunctions that differ in

---

[4] Defendants' citation to *Florida v. United States*, 660 F. Supp. 3d 1239 (N.D. Fla. 2023), provides no support. *See* Dkt. 56 at 11. The court there reasoned that "§ 1226(a) does not apply to applicants for admission apprehended at the Southwest Border." 660 F. Supp. 3d at 1275. Plaintiffs here do not contend differently: they do not assert that individuals "apprehended upon arrival" fall under § 1226(a).

[5] Individual Plaintiff David Nunez Hernandez, *see* Dkt. 41 at 8, no longer seeks an injunction. On July 7, 2025, he was granted relief from removal and released from detention.

REPLY IN SUPP. OF MOT.  
FOR PARTIAL SUMM. J. - 7  
Case No. 3:25-cv-05240-TMC  

NORTHWEST IMMIGRANT RIGHTS PROJECT  
615 Second Ave., Ste. 400  
Seattle, WA 98104  
(206) 957-8611

*substance*—i.e., those requiring individualized factual determinations that would necessitate "additional proceedings . . . to determine the scope of individual relief." 564 U.S. at 366 (citation omitted). Here, by contrast, all Bond Denial Class members seek the same declaratory relief. The injunctions sought by Individual Class Members are consistent with—and virtually identical to—that broader declaratory relief. They are not substantively different, and they do not require "additional proceedings" involving differing "individual relief." *Id.* Nor do such requests create intra-class conflicts. All class members still seek the same ultimate relief clarifying their rights.

Defendants liken Plaintiffs' request to a motion to intervene, warning it "could unduly complicate this class action" by inviting "an unending line of unnamed class members" to seek individual injunctive relief. Dkt. 56 at 17. But 8 U.S.C. § 1252(f)(1) compels this result. As Plaintiffs have explained, the statute bars classwide injunctive relief but expressly protects the rights of individuals in removal proceedings to seek such relief. Dkt. 54 at 10–16. Thus, class members have no recourse but to individually seek such injunctive relief. Several courts have recognized that where classwide relief is limited to declaratory relief, individual injunctions must remain available. *See* Dkt. 54 at 15–16 (citing cases).[6]

Defendants also dispute that class members are parties. But class members are indisputably parties "in the sense of being bound by [a] settlement," *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002), and accordingly should be treated as parties for other relief purposes, such as obtaining an injunction. That does not mean that all class members are parties for *all* purposes. *See* Dkt. 56 at 18 n.6 (noting that class members are not parties for certain purposes, and in

---

[6] Defendants again assert that this combination of classwide declaratory relief and individual injunctive relief constitutes an advisory opinion, but as Plaintiffs explained before, this argument exhibits a misunderstanding of how declaratory relief functions. *See* Dkt. 41 at 17–18.

REPLY IN SUPP. OF MOT.
FOR PARTIAL SUMM. J. - 8
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

particular, discovery). But for purposes of being bound by this litigation and for obtaining relief, they are parties, as Defendants effectively concede. *See* Dkt. 56 at 18.

Because class members are parties to this litigation for purposes of relief, intervention is neither required nor appropriate. Defendants nevertheless suggest at various intervals that intervention might be necessary, even while signaling they would oppose such intervention. *See* Dkt. 56 at 16 ("[U]nnamed class members have failed to follow procedures to intervene . . . ."); *id.* at 17 (intervention of additional class members would be unmanageable). Intervention makes little sense here. The class representative is already vigorously protecting all class members' interests, including those currently suffering profound harm. *See* Fed. R. Civ. P. 24(a)(2) (stating the bases required for intervention, including that the intervenor is currently inadequately represented). If anything, it is Defendants' own approach that will result in an unwieldy litigation, forcing the parties and the Court to engage in serial motions practice rather than simply issuing identical individual injunctions for class members subjected to ongoing unlawful detention.

The Court should also reject Defendants' argument that class members can simply file "individual habeas petition[s]" to obtain relief. Dkt. 56 at 19 n.8. Across the country, Defendants have taken the opposite position—that where a class action challenges a policy, even if that policy falls within § 1252(f)(1), individual actions should be dismissed or stayed. *See, e.g.*, Mot. to Dismiss, *Umanor-Chavez v. Noem*, No 8:25-cv-01634-SAG (D. Md. June 6, 2025), Dkt. 7 at 6–10 (arguing that member of certified class challenging removals to third country should not be permitted to bring individual challenge as to same issue); *see also, e.g.*, *Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979) (affirming district court's dismissal of individual's allegations, which were duplicative of those being litigated by certified (b)(2) class action). Here, Defendants

REPLY IN SUPP. OF MOT.  
FOR PARTIAL SUMM. J. - 9  
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT  
615 Second Ave., Ste. 400  
Seattle, WA  98104  
(206) 957-8611

pull a bait and switch, arguing instead that the proper course for class members is to move forward with individual habeas actions.

Finally, Defendants assert that individual injunctions are not appropriate because they are not listed in the complaint's prayer for relief. Dkt. 56 at 20–21. But this is exactly what Rule 54 rejects. The rule provides that "[e]very . . . final judgment should grant the relief to which each party is entitled, *even if the party has not demanded that relief in its pleadings*." Fed. R. Civ. P. 54(c) (emphasis added). Thus, "a meritorious claim will not be rejected for want of a prayer for appropriate relief." *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 66 (1978). The Ninth Circuit's application of this rule in *Z Channel Ltd. P'ship v. Home Box Off., Inc.*, 931 F.2d 1338 (9th Cir. 1991), is instructive. There, the plaintiff "never requested damages" in its complaint and sought only "declaratory and injunctive relief." 931 F.2d at 1340–41. Despite that fact, and citing Rule 54(c), the court held that the relevant count in the complaint sufficiently "allege[d] restraints that could have resulted in financial damages to Z Channel," and thus it could be appropriate to order relief in the form of damages. *Id.* at 1341. The same principle applies here: Plaintiffs have stated a "meritorious claim," and thus relief should not be "rejected for want of a prayer for appropriate relief" as to individual injunctions. *Holt Civic Club*, 439 U.S. at 66.[7]

**B. Nothing Precludes the Court from Issuing Individual Injunctions in This Case.**

Defendants' remaining arguments against individual injunctions are equally unavailing. First, exhaustion is not required here. Defendants merely "reassert and incorporate" their prior arguments as to exhaustion. Dkt. 56 at 22 n.10. But those reasons fall short. This case presents a

---

[7] Defendants assert they might be prejudiced by individual injunctions, pointing to the need for the BIA to act. Dkt. 56 at 21 n.9. This argument is similar to Defendants' exhaustion argument, and the Court should reject it. *See infra* Sec. II.B.

REPLY IN SUPP. OF MOT.
FOR PARTIAL SUMM. J. - 10
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

pure question of law—not one that implicates agency expertise.[8] "When the meaning of a statute [is] at issue, the judicial role [is] to 'interpret the act of Congress, in order to ascertain the rights of the parties.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (citation omitted); *see also* Dkt. 29 at 14. Next, this case does not encourage circumvention of any administrative scheme. As this Court previously recognized, resolving the legal issue through the parties' pending dispositive motions will ensure that "the issue here will not arise again (at least in this District)." *Rivera v. Holder*, 307 F.R.D. 539, 551 (W.D. Wash. 2015); *see also* Dkt. 29 at 15. Finally, Defendants claim that administrative review is "likely to allow the agency to correct its own mistakes." Dkt. 56 at 23 (citation omitted). But the agency *is* a named Defendant here and has repeatedly defended the Tacoma IJs' policy, suggesting there is no mistake it intends to correct. Lastly, even if some rationale favored exhaustion, it would still be excused here, where both irreparable harm and agency delay are present. *See* Dkt. 41 at 22–23, 25–26; Dkt. 29 at 17–21.

Second, the Individual Class Members have demonstrated success on the merits. Defendants again focus on whether the Court has the power to issue individual injunctions. Dkt. 56 at 23. For the reasons stated above, the Court has such authority. *Supra* Sec. II.A. In addition, the Individual Class Members have demonstrated—just like the rest of the class—that Defendants' bond denial policy is unlawful. *Supra* Sec. I.

Third, the Individual Class Members have demonstrated irreparable harm. Defendants argue that no such harm exists because the BIA can provide relief. Dkt. 56 at 24. But that overlooks two critical facts: first, the Defendant agency is now arguing the Tacoma IJs are

---

[8] This argument is also particularly odd for Defendants to make when they simultaneously ask the Court to ignore the agency's three decades of expertise applying § 1226(a) to class members. Dkt. 56 at 13.

REPLY IN SUPP. OF MOT.
FOR PARTIAL SUMM. J. - 11
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

correct; and second, the BIA often takes months to resolve bond appeals. During this time, as has already happened and continues to happen, the Individual Class Members are unlawfully detained. As this Court previously recognized, such unlawful detention is irreparable. Dkt. 29 at 18, 20. And while Defendants suggest the BIA might intervene, they ignore that the BIA has repeatedly been asked to fix this problem and has failed to do so. *See* Dkt. 41 at 5. Moreover, the Board recently affirmed an IJ decision holding § 1225(b)(2)(A) applies to a person who entered the United States unlawfully in 2015, suggesting it sees nothing to correct here. *See* Maltese Decl. Ex. A.

Finally, Defendants assert that the government has a compelling interest in offering uniform guidance on this issue. Dkt. 56 at 24–25. But that claim rings hollow when the Board has declined *for years* to do precisely that, particularly when the agency now claims the Tacoma IJs are correct. As noted above, this case presents a question of statutory interpretation that is squarely within the Court's authority to decide. Lastly, Defendants have no response to the compelling public interest and equities that favor Plaintiffs. *See* Dkt. 41 at 23–24.

### III. The Court Should Issue Final Judgment as to the Bond Denial Class Claims and Certify the Claims Pursuant to Federal Rule of Civil Procedure 54(b).

Plaintiffs respectfully request that the Court enter final judgment on the Bond Denial Class claims. Under Federal Rule of Civil Procedure 54(b), "[w]hen an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." "[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments in setting such as this, a district court must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). Where the claims at issue "were separable from the others remaining to be adjudicated,"

REPLY IN SUPP. OF MOT.  
FOR PARTIAL SUMM. J. - 12  
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT  
615 Second Ave., Ste. 400  
Seattle, WA 98104  
(206) 957-8611

and where "no appellate court would have to decide the same issues more than once," issuing separate final judgments is appropriate under Rule 54(b). *Id.*

Here, the Bond Denial Class claims are easily separable from the Bond Appeal Class claims. Judicial efficiency and fairness thus both support entering final judgment. As Plaintiffs have explained, *see* Dkt. 54 at 12–13, the nature of the declaratory relief sought here means that binding final relief will not take effect until the appeals process concludes. In the meantime, the consequences of the challenged policy are profound. The examples of the Individual Class Members demonstrate the havoc and trauma that this policy is wreaking on families, U.S. citizen children, and communities. Accordingly, final and immediate resolution of this claim is imperative.

## CONCLUSION

For all the foregoing reasons and those stated in Plaintiffs' motion, the Court should grant the motion for summary judgment.

Respectfully submitted this 8th of July, 2025.

s/ Matt Adams
Matt Adams, WSBA No. 28287
matt@nwirp.org

s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid, WSBA No. 46987
glenda@nwirp.org

s/ Leila Kang
Leila Kang, WSBA No. 48048
leila@nwirp.org

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974
aaron@nwirp.org

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Suite 400
Seattle, WA 98104
(206) 957-8611

*Counsel for Bond Denial Class*

REPLY IN SUPP. OF MOT.
FOR PARTIAL SUMM. J. - 13
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

**WORD COUNT CERTIFICATION**

I certify that this memorandum contains 4,102 words, in compliance with the Local Civil Rules.

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Suite 400
Seattle, WA 98104
(206) 816-3872
aaron@nwirp.org

REPLY IN SUPP. OF MOT.
FOR PARTIAL SUMM. J. - 14
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611