UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Ramon RODRIGUEZ VAZQUEZ, et al.,<br><br>            Plaintiffs,<br><br>   v.<br><br>Laura HERMOSILLO, et al.,<br><br>            Defendants. | Case No. 3:25-cv-05240-TMC<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF FURTHER RELIEF PURSUANT TO 28 U.S.C. § 2202** |

SUPP. BR. IN SUPPPORT OF MOT. FOR FURTHER
RELIEF PURSUANT TO 28 U.S.C. § 2202
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 957-8611

# INTRODUCTION

The Bond Denial Class (Plaintiffs) submits this brief in response to the Court's request for supplemental briefing regarding the effect of the decisions issued in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.). Defendants are not complying with the nationwide declaratory judgment issued in that case. As a result, the pre-transfer notice relief that Plaintiffs request remains "necessary or proper" to afford full relief to Bond Denial Class members. 28 U.S.C. § 2202. Without such notice, class members will not receive bond hearings if they are transferred to other parts of the country where they lack legal representation to file habeas petitions. Notice is especially critical here because Defendants have flagrantly ignored this Court's judgment and have offered no defense of their noncompliance. Denying Plaintiffs' request for pre-notice transfer because of the alleged "burden" it would place on Defendants would simply reward their refusal to comply with the law. If Defendants are genuinely concerned about the burden pre-transfer notice would create, an obvious remedy exists: provide bond hearing under 8 U.S.C. § 1226(a) to class members in the first instance. Unless and until Defendants do so, pre-transfer notice is necessary to ensure class members receive the benefit of the Court's final declaratory judgment.

# STATEMENT OF FACTS

In May of this year, this Court certified a class action of noncitizens detained at the Northwest Immigration and Customs Enforcement (ICE) Processing Center who challenged a mandatory detention policy of the Tacoma Immigration Court. Dkt. 32. The Court has since declared that policy unlawful and issued a final declaratory judgment. Dkts. 65, 66. Following certification, Defendants expanded the challenged policy nationwide. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). A separate class of noncitizens then filed a class

SUPPL. BR. IN SUPPORT OF MOT. FOR FURTHER
RELIEF PURSUANT TO 28 U.S.C. § 2202 - 1
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

action complaint challenging that policy on a nationwide basis in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.). On November 20, 2025, the court in *Maldonado Bautista* granted partial summary judgment to the named petitioners in that case, declaring ICE's and the Executive Office for Immigration Review's (EOIR) policy unlawful. *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025). The district court subsequently granted class certification and "extend[ed] the same declaratory relief granted to Petitioners to the Bond Eligible Class as a whole." *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F.R.D. ----, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025).

Since the *Maldonado Bautista* court issued its classwide declaratory judgment, ICE and EOIR have refused to comply. Dozens of immigration judges have issued decisions reflecting that EOIR and the Office of Immigration Litigation at the Department of Justice (DOJ) have provided guidance instructing immigration judges not to comply with the court order. *See, e.g.*, Decl. of Sydney Maltese Ex. A (compilation of IJ decisions and ICE position statements received by class counsel in *Maldonado Bautista*). In federal court, DOJ has taken the same position, asserting that compliance with the declaratory judgment is not required. *Id.* Ex. B (compilation of DOJ filings received by class counsel in *Maldonado Bautista*); *see also* Mot. for Reconsideration & Clarification, *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM (C.D. Cal. Dec. 4, 2025), Dkt. 87 (declarations detailing ICE and EOIR noncompliance with declaratory judgment).

## ARGUMENT

**I. The *Maldonado Bautista* decision does not alter the need for pre-transfer notice.**

As detailed above, ICE and EOIR have so far refused to abide by the declaratory

SUPPL. BR. IN SUPPORT OF MOT. FOR FURTHER RELIEF PURSUANT TO 28 U.S.C. § 2202 - 2
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

judgment in *Maldonado Bautista*. As a result, those rulings have not altered the status quo. Defendants continue to apply *Matter of Yajure Hurtado* to persons across the country.

The consequences for transferred Bond Denial Class members are severe. Many class members have counsel in this district, who are prepared to represent them in bond hearings. *See generally* Dkts. 75–78; 88–94. In some cases, class members have already obtained alternative bond orders that entitle them to release by virtue of this Court's declaratory judgment. *See, e.g.*, Dkt. 77 ¶ 5; Dkt. 89 ¶ 10. "Transfer of [these] detainees . . . interferes with the attorney-client relationship." *Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1509 (C.D. Cal. 1988) (issuing injunction that, inter alia, placed restrictions on detainee transfers), *aff'd sub nom. Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 566–67 (9th Cir. 1990) (upholding injunction "designed to ensure access to counsel," and explaining that the lower court created "appropriate remedies for a pattern of practices which severely impeded class members from communicating with counsel."). Moreover, many, if not most, of these individuals also reside here in the Pacific Northwest, and have family, friends, and support networks here.[1] *Cf.* Dkt. 9 ¶¶ 3–5, Dkt. 35 ¶¶ 3–5, Dkt. 43 ¶¶ 3–5, Dkt. 45 ¶¶ 3–5. Transferring them elsewhere separates them from these sources of support (and evidence).

Once transferred, most class members are unable to obtain relief. Class members in Tacoma have access to class counsel, who are available to file habeas petitions to enforce their rights as determined by this Court's declaratory judgment. However, when transferred to other parts of the country, most class members lose any possibility of seeking relief through habeas petitions. Unlike the Western District of Washington, where class counsel is able to file habeas

---

[1] The I-213s that class counsel has filed on behalf of the dozens of class members seeking individual habeas relief reflect this fact.

SUPPL. BR. IN SUPPORT OF MOT. FOR FURTHER RELIEF PURSUANT TO 28 U.S.C. § 2202 - 3
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

petitions to ensure class members' rights are respected, class counsel is not admitted to courts in other parts of the country and does not have the resources to travel across the country for individual or group habeas petitions. Thus, class counsel cannot file a habeas petition for those who are transferred from the NWIPC.

Most of the places to which class members are transferred are underserved by attorneys with the capacity to represent immigrants in bond proceedings, and, critically, to file habeas petitions. *See, e.g.*, Ingrid Eagly et al., *Access to Counsel in Immigration Court, Revisited*, 111 Iowa L. Rev. 1, 31 (2025) (reflecting representation rates of 10%, 12%, and 17% at major detention centers in Harlingen, Laredo, and El Paso, TX). They are also places with far more detainees than in this district, inevitably resulting in fewer detainees having access to habeas counsel. *See* ICE, Detention Facilities, https://www.ice.gov/detention-facilities (last updated June 25, 2025) (listing twenty-three detention facilities for Texas and only one for Washington).

The result is that many class members who have retained counsel—and, with legal representation, have either had bond hearings, were about to seek bond hearings, or were about to seek habeas relief—will find themselves unable to seek bond and obtain release because they now lack immigration or habeas counsel. These are significant harms: as this Court has recognized, "limiting access to counsel in immigration proceedings irreparably harms a detainee." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *8 (W.D. Wash. Nov. 26, 2025). Other courts have held the same. *See, e.g.*, *Ozturk v. Hyde*, 136 F.4th 382, 402 (2d Cir. 2025) (affirming lower court order requiring transportation of habeas petitioner back to Vermont, in part because of "access to legal and medical services"); *Doe v. McAleenan*, 415 F. Supp. 3d 971, 979 (S.D. Cal. 2019) (explaining how access to counsel is critical to ensuring meaningful participation in immigration proceedings). As detailed above this

SUPPL. BR. IN SUPPORT OF MOT. FOR FURTHER
RELIEF PURSUANT TO 28 U.S.C. § 2202 - 4
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA  98104
(206) 957-8611

"interfere[nce]," *Orantes-Hernandez,* 685 F. Supp. at 1509, and "irreparabl[e] harm," *Del Valle Castillo,* 2025 WL 3524932, at *8, are occurring here, making further relief necessary and proper. *See also* Dkt. 89 ¶¶ 2–3, 6–7, 16–17 (explaining why in person representation is so critical and how counsel was forced to cancel representation agreements following transfer).

**II.    The Court should not accord significant weight to Defendants' claims of burden in providing pre-transfer notice.**

At the hearing on November 20, the Court focused on the "practical realities around the various requests for relief." Att. A, Nov. 20, 2025, Hr'g Tr. 2:20–21. But any burden that providing pre-transfer notice to class members and their counsel creates must be viewed within the larger context of this case. Defendants are openly defying this Court's declaratory judgment. When asked about the basis for this wholesale disregard for the Court's authority, Defendants did not cite a single case or articulate any coherent reason for their refusal to comply with the declaratory judgment. Hr'g Tr. 22:4–23:7.

Not only have Defendants not articulated a legal theory, let alone a single case, to this Court, but the rationale they did provide is frivolous. At the hearing, they claimed that the Article II immigration judges "are in a position where they have to consider two legal opinions that are in contradiction." *Id.* at 23:6–7. That position is simply contrary to the rule of law. It is also contrary to a basic principle that law students learn on the first day of constitutional law: that it "is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Thus, "[w]hen the meaning of a statute [is] at issue, the judicial role [is] to 'interpret the act of Congress, in order to ascertain the rights of the parties.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (quoting *Decatur v. Paulding*, 39 U.S. (14 Pet.) 497, 515 (1840)); *see also SEC v. Jarkesy*, 603 U.S. 109, 132 (2024) ("Article III could neither serve its purpose in the system of checks and balances nor preserve the

SUPPL. BR. IN SUPPORT OF MOT. FOR FURTHER RELIEF PURSUANT TO 28 U.S.C. § 2202 - 5
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

integrity of judicial decisionmaking if the other branches of the Federal Government could confer the Government's 'judicial Power' on entities outside Article III." (citation omitted)). Defendants' explicit claims to the contrary—by stating that IJs must somehow choose between this Court and *Matter of Yajure Hurtdao*—have no basis in law. Indeed, Defendants' continued assertions, in flagrant defiance of this Court's judgment, warrant requiring Defendants to "clarify the nature of their argument . . . consistent with their obligations under Federal Rule of Civil Procedure 11(b)(2)." *Mejilla Bonilla v. Hermosillo*, No. 2:25-CV-02196, 2025 WL 3237854, at *2 (W.D. Wash. Nov. 19, 2025).

Notably, by contrast, Plaintiffs have provided the Court with ample authority showing that the Court's declaratory judgment is "legally binding on the parties." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*, 632 F.3d 1111, 1123 (9th Cir. 2011). It is, after all, a "basic proposition that all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). "[G]overnment officials and departments" are expected to "comply with declaratory judgments." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1031 (9th Cir. 2023). Indeed, the very existence of § 2202 reflects that Congress intended for a party to comply with a declaratory judgment; if Congress had not intended that, then no enforcement mechanism would have been necessary. *See, e.g.*, Edwin Borchard, *Federal Declaratory Judgments Act*, 21 Va. L. Rev. 35, 47 (1934) ("The second paragraph of the new Act providing that 'Further relief based on a declaratory judgment . . . may be granted whenever necessary or proper' is intended to afford a successful petitioner for a declaration an opportunity to have the judgment carried into coercive effect in the event that a recalcitrant losing party declines to respect it.").

Viewed in this larger context, the Court should afford little weight to Defendants' claims

SUPPL. BR. IN SUPPORT OF MOT. FOR FURTHER RELIEF PURSUANT TO 28 U.S.C. § 2202 - 6
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

of burden.[2] While it may be that some class members would always have faced transfer, the Court should not afford Defendants the benefit of the doubt—they are the ones violating the court's declaratory judgment without any cognizable basis in the law. And to the extent Defendants claim pre-transfer notice imposes a burden, they must "show 'categorically and in detail' why [they are] unable to comply." *Coleman v. Newsom*, 131 F.4th 948, 959–60 (9th Cir. 2025) (quoting *FTC v. Affordable Media*, 179 F.3d 1228, 1241 (9th Cir. 1999)) (stating, in context of contempt proceeding, that burden is on the party who did not comply with court order to show why compliance was not possible); *see also United States v. Rylander*, 460 U.S. 752, 757 (1983) (similar). They have no basis to invoke claims of burden when they could simply comply with the Court's final declaratory judgment. *See, e.g.*, *Armstrong v. Brown*, 857 F. Supp. 2d 919, 936 (N.D. Cal. 2012) (explaining that order enforcing prior injunction would "not be unduly burdensome" if Defendants simply provided the underlying relief), *aff'd*, 732 F.3d 955 (9th Cir. 2013). *FTC v. Digital Altitude*, LLC, No. LACV1800729JAKMRWX, 2019 WL 1976453, at *2 (C.D. Cal. Mar. 6, 2019) (relief of "deterrence and monitoring" was "adequately tailored to address the risk of future violations" and not "unduly burdensome"). Ultimately, "[t]o award [Plaintiffs] less would reward defendants for their deliberate failure to comply with the law and send[s] the wrong message:" that no consequences exist for Defendants' failure to follow the law. *Odnil Music Ltd. v. Katharsis LLC*, No. CIV S-05-0545 WBSJFM, 2006 WL 2545869, at *8 (E.D. Cal. July 21, 2006); *see also EMI Apr. Music, Inc. v. Lanes, Inc.*, No. CV-08-162-EFS, 2009 WL 10670398, at *5 (E.D. Wash. Mar. 20, 2009) (similar).

---

[2] In addition, as Plaintiffs have previously explained, any claim of burden must also account for the immense burden that Defendants' noncompliance has placed on class counsel and the Court, including the need to file and adjudicate individual habeas petitions necessary to ensure compliance.

SUPPL. BR. IN SUPPORT OF MOT. FOR FURTHER RELIEF PURSUANT TO 28 U.S.C. § 2202 - 7
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

# CONCLUSION

For all the foregoing reasons, the Court should grant the necessary and proper further relief requested in Plaintiffs' motion.

Respectfully submitted this 12th of December, 2025.

s/ Matt Adams
Matt Adams, WSBA No. 28287
matt@nwirp.org

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974
aaron@nwirp.org

s/ Glenda M. Aldana Madrid
Glenda M. Aldana Madrid, WSBA No. 46987
glenda@nwirp.org

s/ Leila Kang
Leila Kang, WSBA No. 48048
leila@nwirp.org

s/ Amanda Ng
Amanda Ng, WSBA No. 57181
amanda@nwirp.org

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Suite 400
Seattle, WA 98104
(206) 957-8611

*Counsel for Bond Denial Class*

# WORD COUNT CERTIFICATION

I certify that this memorandum is ten pages or less, as required by the Court's order for supplemental briefing.

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Suite 400
Seattle, WA 98104
(206) 816-3872
aaron@nwirp.org

SUPPL. BR. IN SUPPORT OF MOT. FOR FURTHER RELIEF PURSUANT TO 28 U.S.C. § 2202 - 8
Case No. 3:25-cv-05240-TMC

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611