UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RAMON RODRIGUEZ VAZQUEZ, on behalf of himself as an individual and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LAURA HERMOSILLO, et al, [1] <br><br> Defendants. | Case No. 3:25-cv-05240-TMC <br><br> ORDER ON MOTION FOR FURTHER RELIEF |

## I.    INTRODUCTION

In late 2022, the Tacoma Immigration Court instituted a practice of denying bond hearings to noncitizens detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") who had entered the United States without inspection. Over three months ago, this Court declared that this practice violates the Immigration and Nationality Act ("INA") when applied to a certified class of detainees: the "Bond Denial Class." This order had

---

[1] Laura Hermosillo, Seattle Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement, is substituted for Drew Bostock under Federal Rule of Civil Procedure 25(d). Daren K. Margolin, Director of the Executive Office for Immigration Review, is substituted for Sirce Owen under Federal Rule of Civil Procedure 25(d). The Clerk is directed to amend the caption to reflect these changes.

ORDER ON MOTION FOR FURTHER RELIEF - 1

"the full force and effect of a final judgment or decree." 28 U.S.C. § 2201. Still, ignoring decades of precedent, Defendants have chosen not to comply with the Court's ruling.

Since the Court entered judgment, more than 100 unlawfully detained noncitizens—left with no other recourse due to Defendants' noncompliance—have filed habeas corpus petitions seeking enforcement of their rights as class members. But many more class members, particularly those who cannot access legal counsel, may remain detained with no knowledge of their right to a bond hearing. Now, the Bond Denial Class seeks further relief to enforce the Court's ruling: weekly lists of class members; notice to class members, class counsel, and immigration counsel before transfer of a class member out of NWIPC; and notice to class members and Defendants of their rights and obligations under the Court's declaratory judgment.

Because a petition for habeas corpus is currently a class member's only avenue to achieve a bond hearing, it is necessary and proper that all class members receive notice of their rights so that they may petition the Court for relief. The Court GRANTS IN PART Plaintiffs' motion for further relief and ORDERS that Defendants must provide individual notice of the Court's declaratory judgment to all noncitizens charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) or (a)(7) who are detained at NWIPC. This notice must be (1) provided within five days of the noncitizen's arrival at NWIPC, (2) written in a language that the noncitizen can understand, and (3) accompanied by a copy of the noncitizen's I-213. The notice must conform to the document attached to this order as Appendix A. In addition, Defendants must provide a weekly list to class counsel of all detainees who received the notice that week, along with a copy of each listed detainee's I-213 and charges or Notice to Appear.

## II.    BACKGROUND

The INA contains several provisions governing the detention of noncitizens. Relevant here, 8 U.S.C. § 1226(a)—the "default rule" for detained noncitizens—permits the government

to release a detainee on bond during the pendency of the detainee's removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). But under 8 U.S.C. § 1225(b)(2), any detainee who is an "applicant for admission" that is "seeking admission" to the United States and is not "clearly and beyond a doubt entitled to be admitted" must remain in detention. Although the Court has ruled that Bond Denial Class members are entitled to consideration for release on bond under § 1226(a), Defendants continue to treat them as subject to mandatory detention under § 1225(b)(2).

### A.    Defendants' bond denial practices

Beginning in late 2022, the Tacoma Immigration Court determined that the INA requires detention of noncitizens who entered the United States without inspection and are not otherwise subject to expedited removal proceedings. Dkt. 5 ¶¶ 3–4; Dkt. 6 ¶ 3; *see* Dkt. 21 at 15–21. The Immigration Judges ("IJs") reasoned that these individuals are "seeking admission" to the United States—placing them within the ambit of § 1225(b)(2)—and thus are ineligible for release on bond under § 1226(a). Dkt. 21 at 20–21. Therefore, any noncitizen meeting this definition who was detained at NWIPC was unable to receive a bond hearing before an IJ. *See id.* at 4.

Initially, this interpretation of the INA was out of step with longstanding practice in the Executive Office of Immigration Review ("EOIR"), the agency that administers the immigration court system. *See Rodriguez Vazquez v. Bostock*, --- F. Supp. 3d ----, 2025 WL 2782499, at *24–26 (W.D. Wash. Sept. 30, 2025). In July 2025, however, the Department of Homeland Security ("DHS") issued a memorandum to Immigration and Customs Enforcement ("ICE") agents informing them that any noncitizen "present in the United States who has not been admitted" was now considered subject to mandatory detention and ineligible for a bond hearing. Dkt. 61-6. And in September 2025, the Board of Immigration Appeals ("BIA"), which is the appellate body of the EOIR, ruled that § 1225(b)(2) divests IJs of jurisdiction to entertain bond requests from

noncitizens "who are present in the United States without admission." *In re Yajure Hurtado*, 29 I. & N. Dec. 216, 216 (B.I.A. 2025). These developments effectively nationalized the Tacoma Immigration Court's practice of bond denials. Hundreds of federal district courts, and at least one circuit court of appeals, have since held that these policies violate the INA. *See, e.g.*, *Rodriguez Vazquez*, --- F. Supp. 3d ----, 2025 WL 2782499, at *1 n.3 (citing cases); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–62 (7th Cir. 2025) (concluding that the government was unlikely to succeed on the merits of its argument that § 1225(b)(2) applies to any noncitizen who is present in the United States without admission).

**B.    Declaratory judgment and Defendants' noncompliance**

On March 20, 2025, Plaintiff Ramon Rodriguez Vazquez filed suit seeking to represent a class of noncitizens in challenging the Tacoma Immigration Court's bond denial practice. Dkt. 1 ¶¶ 89–93, 99–102. On May 2, 2025, the Court certified a Bond Denial Class comprised of the following individuals:

> All noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

*Rodriguez Vazquez v. Bostock*, 349 F.R.D. 333, 365 (W.D. Wash. 2025).

In the months following class certification, DHS issued its memorandum to ICE agents, and the BIA decided *In re Yajure Hurtado*. Then, on September 30, 2025, the Court granted summary judgment to the Bond Denial Class and issued the following declaratory relief:

> Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration Court's practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

*Rodriguez Vazquez*, --- F. Supp. 3d ---, 2025 WL 2782499, at *27.

ORDER ON MOTION FOR FURTHER RELIEF - 4

The Court entered judgment in favor of the Bond Denial Class on their claims that their mandatory detention under § 1225(b)(2) was unlawful. Dkt. 66. On October 28, 2025, Defendants appealed the Court's order to the Ninth Circuit. Dkt. 71. Defendants did not seek a stay of the declaratory judgment pending appeal.

The Court's declaratory judgment is binding on the parties, including the certified class of plaintiffs and all named Defendants: Attorney General Pamela Bondi; DHS and its secretary, Kristi Noem; EOIR, its director Daren K. Margolin, and the Tacoma Immigration Court; Laura Hermosillo, the Seattle field office director of ICE; and Bruce Scott, the warden of the NWIPC. 28 U.S.C. § 2201(a); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ)*, 632 F.3d 1111, 1123 (9th Cir. 2011).

Yet Defendants have refused to comply with the Court's ruling and have continued to apply § 1225(b)(2)'s mandatory detention regime to members of the Bond Denial Class. *See* Dkt. 89 ¶ 13. Instead of following the Court's declaratory judgment, which they have characterized as an "advisory opinion," the IJs have cited *In re Yajure Hurtado* as binding precedent. *Id.*; Dkt. 75 ¶ 4. In many cases, the IJs have denied class members' bond requests based on a lack of jurisdiction but have also entered alternative bond amounts that would go into effect if those class members obtained habeas relief from a district court. *See, e.g.*, *Almonte Hernandez v. Hermosillo*, No. 2:25-CV-02464-TMC, 2025 WL 3554639, at *1 (W.D. Wash. Dec. 11, 2025); *Garcia Mendez v. Hermosillo*, No. 2:25-CV-02560-TMC, 2025 WL 3687519, at *1 (W.D. Wash. Dec. 19, 2025); *Estrella Zavala v. Hermosillo*, No. 2:25-CV-02627-TMC, 2025 WL 3721729, at *1 (W.D. Wash. Dec. 23, 2025); Dkt. 75 ¶ 4; Dkt. 76 ¶¶ 4–5; Dkt. 89 ¶ 13. As a result of Defendants' noncompliance, the only way for class members to obtain relief under a judgment they have already won is to file individual petitions for habeas corpus in this Court.

1

2

3

4

The high volume of habeas claims has placed a tremendous strain on the resources of both class

counsel and the Court.[2]

---

[2] The Court has adjudicated the following individual and group habeas petitions brought by members of the Bond Denial Class to enforce their rights under the Court's declaratory judgment: *Guzman Alfaro v. Wamsley*, No. 2:25-CV-01706-TMC, 2025 WL 2822113 (W.D. Wash. Oct. 2, 2025); *Ortiz Martinez v. Wamsley*, No. 2:25-CV-01822-TMC, 2025 WL 2899116 (W.D. Wash. Oct. 10, 2025); *Garcia v. Wamsley*, No. 2:25-CV-01980-TMC, 2025 WL 3208777 (W.D. Wash. Oct. 21, 2025); *Lopez Rojop v. Wamsley*, No. 2:25-CV-02058, 2025 WL 3436811 (W.D. Wash. Oct. 28, 2025); *M.M. v. Wamsley*, No. 2:25-CV-02074-TMC, 2025 WL 3053023 (W.D. Wash. Oct. 31, 2025); *Cruz-Gamez v. Bondi*, No. 2:25-CV-02154-TMC, 2025 WL 3130820 (W.D. Wash. Nov. 7, 2025); *Cantero Garcia v. Wamsley*, No. 2:25-CV-02092-TMC, 2025 WL 3123996 (W.D. Wash. Nov. 7, 2025); *Marcial Navarette v. Wamsley*, No. 2:25-CV-02150-TMC, 2025 WL 3134712 (W.D. Wash. Nov. 10, 2025); *Alonso Sanchez v. Hermosillo*, No. 2:25-CV-02152-TMC, 2025 WL 3171362 (W.D. Wash. Nov. 13, 2025); *Corrales Castillo v. Wamsley*, No. 2:25-CV-02172-TMC, 2025 WL 3204370 (W.D. Wash. Nov. 17, 2025); *Leon Figueroa v. Hermosillo*, No. 2:25-CV-02228-TMC, 2025 WL 3230466 (W.D. Wash. Nov. 19, 2025); *Hernandez Ramos v. Hermosillo*, No. 2:25-CV-02273-TMC, 2025 WL 3251159 (W.D. Wash. Nov. 21, 2025); *Garcia Calletano v. Hermosillo*, No. 2:25-CV-02283-TMC (W.D. Wash. Nov. 25, 2025); *Martinez Vasquez v. Hermosillo*, No. 2:25-CV-02282-TMC, 2025 WL 3280373 (W.D. Wash. Nov. 25, 2025); *Picazo Sanchez v. Hermosillo*, No. 2:25-CV-02288-TMC, 2025 WL 3294993 (W.D. Wash. Nov. 26, 2025); *M.S.G. v. Hermosillo*, No. 2:25-CV-02308-TMC, 2025 WL 3294997 (W.D. Wash. Nov. 26, 2025); *Jara Dominguez v. Hermosillo*, No. 2:25-CV-02351-TMC, 2025 WL 3484770 (W.D. Wash. Dec. 4, 2025); *Galvan v. Hermosillo*, No. 2:25-CV-02349-TMC, 2025 WL 3484755 (W.D. Wash. Dec. 4, 2025); *Arenas Zambrano v. Hermosillo*, No. 2:25-CV-02357-TMC, 2025 WL 3492859 (W.D. Wash. Dec. 4, 2025); *Medina Ocampo v. Hermosillo*, No. 2:25-CV-02408-TMC, 2025 WL 3537593 (W.D. Wash. Dec. 10, 2025); *Mendez Dominguez v. Hermosillo*, No. 2:25-CV-02337-TMC, 2025 WL 3537627 (W.D. Wash. Dec. 10, 2025); *Lopez-Lugo v. Bondi*, No. 2:25-CV-02380-TMC, 2025 WL 3551435 (W.D. Wash. Dec. 11, 2025); *Almonte Hernandez*, 2025 WL 3554639; *Vargas Medina v. Noem*, No. 2:25-CV-02503-TMC, 2025 WL 3677159 (W.D. Wash. Dec. 18, 2025); *Angel Luna v. Noem*, No. 2:25-CV-02504-TMC, 2025 WL 3679724 (W.D. Wash. Dec. 18, 2025); *Garcia Mendez*, 2025 WL 3687519; *Estrella Zavala*, 2025 WL 3721729; *Cruz Santiago v. Hermosillo*, No. 2:25-CV-02700-TMC (W.D. Wash. Dec. 31, 2025); *Avendano Toribio v. Scott*, No. 2:25-CV-02540-TMC, 2025 WL 3906472 (W.D. Wash. Dec. 31, 2025); *Vazquez Dominguez v. Hermosillo*, No. 2:25-CV-02553-TMC, 2026 WL 30106 (W.D. Wash. Jan. 5, 2026); *Ibarra Preciado v. Hermosillo*, No. 2:25-CV-02561-TMC, 2026 WL 25254 (W.D. Wash. Jan. 5, 2026); *Garcia Lopez v. Noem*, No. 2:25-CV-02613-TMC, 2026 WL 30018 (W.D. Wash. Jan. 5, 2026); *Hernandez-Trinidad v. Noem*, No. 2:25-CV-02610-TMC, 2026 WL 25727 (W.D. Wash. Jan. 5, 2026); *Castro Hernandez v. Hermosillo*, No. 2:25-CV-02645-TMC, 2026 WL 25735 (W.D. Wash. Jan. 5, 2026); *Acevedo Gomez v. Hermosillo*, No. 2:26-CV-00006-TMC, 2026 WL 77338 (W.D. Wash. Jan. 9. 2026); *Tzintzun-Hernandez v. Noem*, 2:25-CV-02752-TMC (W.D. Wash. Jan. 12, 2026).

On October 31, 2025, the Bond Denial Class moved for further relief under 28 U.S.C. § 2202, arguing that Defendants' noncompliance with the declaratory judgment and their pattern of moving class members from NWIPC to other facilities necessitates additional action from the Court. Dkt. 74. Defendants responded (Dkt. 85), and the Class replied (Dkt. 87). On November 20, the Court held a hearing on the motion and ordered the parties to provide a joint status report outlining their proposals for notice to potential class members by December 12. Dkt. 95; Dkt. 98 at 36–40. The parties did so (Dkt. 107), and Defendants filed a supplement to the joint status report one week later (Dkt. 110). The Court further ordered the Class to provide a proposal for notice to Defendants' employees. Dkt. 98 at 39. The Class filed that proposal as well (Dkt. 103), and Defendants filed objections (Dkt. 108), to which the Class replied (Dkt. 109).

### C.    *Maldonado Bautista v. Santacruz*

While this Court has been adjudicating the class action arising from Tacoma, a similar case challenging the national application of Defendants' mass detention policy has been playing out in the Central District of California. On November 20, 2025, in *Maldonado Bautista v. Santacruz*, U.S. District Judge Sunshine S. Sykes granted summary judgment in favor of a group of noncitizen detainees who had been denied bond in immigration court. No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *1–2, *11 (C.D. Cal. Nov. 20, 2025). The court ruled that the DHS policy requiring ICE agents to treat every person who entered the United States without inspection as subject to mandatory detention under § 1225(b)(2) was unlawful. *Id.* Five days later, the court certified a Bond Eligible Class, defined similarly to the Bond Denial Class but with a nationwide scope:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Maldonado Bautista v. Santacruz*, --- F.R.D. ----, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025).

On December 1, this Court ordered the parties to this case to file supplemental briefing addressing the impact of the summary judgment and class certification orders in *Maldonado Bautista* on the motion for further relief in this matter. Dkt. 102. On December 12, the parties filed supplemental briefs on this question. Dkts. 105, 106.

On December 18, the *Maldonado Bautista* court declared that members of the Bond Eligible Class were detained under § 1226(a), and it vacated the challenged DHS policy. *Maldonado Bautista*, 2025 WL 3713987, at *1, *32 (C.D. Cal. Dec. 18, 2025). The court entered judgment in favor of the Bond Eligible Class that same day. *Maldonado Bautista*, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025).

### III.     JURISDICTION

Under the Declaratory Judgment Act, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. A request for relief under § 2202 is "not the functional equivalent of a motion to alter or to amend the judgment," *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 621 (7th Cir. 1995), and the fact that the relief requested may be coercive or injunctive does not divest a court of jurisdiction to consider it. *Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 548 (D.C. Cir. 1988) (concluding that § 2202 "clearly anticipate[s] ancillary or subsequent coercion to make an original declaratory judgment effective"). The "purpose of a motion under this section of the judicial code is not to change the declaratory judgment but to enforce it." *GNB Battery*, 65 F.3d at 621.

A district court retains jurisdiction to grant relief under this section even after a party has appealed a declaratory judgment order. *See Liberty Mut. Fire Ins. Co. v. Bosa Dev. California II, Inc.*, No. 317CV00945AJBBGS, 2020 WL 4285003, at *2 (S.D. Cal. July 27, 2020); *Horn & Hardart Co.*, 843 F.2d at 548; *United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 572 (5th Cir. 2005) ("[N]either the filing of an appeal nor a lengthy delay after the trial court's initial ruling terminates the court's authority to grant further relief pursuant to § 2202."); *Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 834 (6th Cir. 2019) ("In fact, the district court can grant further relief even after a *completed* appeal.").

## IV.    LEGAL STANDARD

Section 2202 "provid[es] for 'supplemental' relief which may be granted in a proceeding subsequent to the original." *Cent. Freight Lines, Inc. v. Amazon Fulfillment Servs.*, No. C17-0814JLR, 2019 WL 5227400, at *5 (W.D. Wash. Oct. 16, 2019) (quoting *Horn & Hardart Co. v. Nat'l R.R. Passenger Corp.*, 659 F. Supp. 1258, 1261 (D.D.C. 1987), *aff'd sub nom. Horn & Hardart Co.*, 843 F.2d 546). For example, if a government defendant does not comply with a declaratory judgment, a district court may order injunctive relief to give effect to that judgment. *See Rincon Band of Mission Indians v. Harris*, 618 F.2d 569, 575 (9th Cir. 1980) (citing *Powell v. McCormack*, 395 U.S. 486, 499 (1969)); *Doe v. Gallinot*, 657 F.2d 1017, 1025 (9th Cir. 1981). Per "the plain language of the Declaratory Judgment Act," a request under this section need not be "'necessary' to effectuate" a declaratory judgment; it "need only be proper." *Horn & Hardart Co.*, 843 F.2d at 548.

## V.    DISCUSSION

The Bond Denial Class requests an order requiring Defendants to do the following:

(1) produce weekly lists of class members, (2) provide five business days' notice to class members, class counsel, and class members' immigration counsel prior to transfer of a class member, and (3) provide written notice to all class members and

to all Defendants employed in this district of their rights and obligations as declared by this Court's September 30 final judgment.

Dkt. 74 at 2. The Class argues that this relief is necessary and proper for two reasons. First, the Class submits declarations of immigration lawyers showing that class members have been transferred out of NWIPC before they can obtain habeas relief. Dkts. 75–78, 88–94. According to the Class, this pattern of transfers "suggest[s] a deliberate effort to avoid the individual habeas petitions that class members are filing." Dkt. 74 at 2, 4–5. Second, the Class contends that Defendants have defied the Court's declaratory judgment by treating it as an "advisory opinion." *Id.* at 2–4, 9; *see also* Dkt. 75 ¶ 4.

### A. Defendants' noncompliance with the Court's declaratory judgment has necessitated further relief.

The Court agrees with the Class that some form of further relief is necessary due to Defendants' continued noncompliance with the Court's declaratory judgment. Not only have Defendants consistently defied the judgment in this case; they have obliquely expressed an intent to also ignore the nationwide ruling in *Maldonado Bautista*. *See* Dkt. 105 at 2 ("The government will comply with any orders issued in *Bautista* as enforced through separate individual habeas action, just as it has done so with orders of this Court.").

Defendants' assertions that the Court's ruling is an "advisory opinion" are wrong. A federal court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). This statement is "as true of declaratory judgments as any other field." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947)).

What separates a declaratory judgment from an advisory opinion is "the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *City & County of San Francisco v. Garland*, 42 F.4th 1078, 1087 (9th Cir. 2022) (quoting *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017)). To that end, a declaratory judgment is "legally binding on the parties" to a case, *Owner-Operator Indep. Drivers Ass'n*, 632 F.3d at 1123, and carries "the force and effect of a final judgment." 28 U.S.C. § 2201. In other words, "a declaratory judgment is a real judgment, not just a bit of friendly advice." *Badger Cath., Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010). A contrary decision by the BIA—which is part of the executive branch—does not override the binding judgment of an Article III Court adjudicating an actual case or controversy between the parties. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024) (describing historical understandings of the federal judicial function and explaining that "[t]he views of the Executive Branch could inform the judgment of the Judiciary, but did not supersede it"). Although a declaratory judgment "is not backed by the power of contempt," courts "generally assume" that government officials will comply with one. *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1031 (9th Cir. 2023). A court may issue further relief when they fail to do so. *See Harris*, 618 F.2d at 575 (9th Cir. 1980); *Doe*, 657 F.2d at 1025.

Defendants' suggestion that their appeal of the Court's declaratory judgment should weigh against granting further relief is unpersuasive. Dkt. 85 at 4. Because Defendants have not sought a stay of the Court's order pending appeal, the order remains in effect until the appeal is resolved. *See Coleman v. Tollefson*, 575 U.S. 532, 539 (2015). Having failed to seek a stay, Defendants may not now argue that the Court cannot exercise its discretion to grant relief that is necessary and proper to effectuate its unstayed order. The Court will address each of the Class's requests for further relief in turn.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**B.      The Bond Denial Class's proposal to give notice of the judgment to potential class members is necessary and proper.**

The Class argues that Defendants' noncompliance with the Court's declaratory judgment has left many class members unaware of their rights and thus without any means of relief. Dkt. 74 at 7. Class counsel points out that this problem is particularly acute for class members without legal representation, who "have virtually no means to know that their cases are subject to a declaratory judgment which entitles them to consideration for release on bond, particularly when ICE or an Immigration Judge tells them otherwise." *Id.* The Class proposes notice with the following parameters:

- Defendants must provide notice in a language that the person understands to all individuals charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) or (a)(7).

- Notice must be provided within five days of entry to the [NWIPC].

- The notice must include (1) the notice of potential class membership, and (2) a copy of an individual's I-213.

- Defendants must produce a weekly list to class counsel of all people who received the notice that week, a copy of each person's I-213, and a list of each person's charges or their Notice to Appear (NTA).

Dkt. 107 at 2.

Alongside its proposal, the Class submits a DHS document describing an existing database of detainee records (Dkt. 107-2), a sample record showing a detainee's charging information (Dkt. 107-3), and filings from separate matters showing that Defendants are capable of providing detainee information to class counsel (Dkts. 107-4, 107-5).

Defendants concede that it is feasible for them to provide some form of notice to class members. Dkt. 85 at 13–14. They argue that the primary form of notice should be furnished by an IJ at the conclusion of a detainee's bond hearing because "the IJs, as neutral decisionmakers, are best positioned to review a potential class member's case and determine whether notice to

that potential class member is appropriate." Dkt. 107 at 6–7. Therefore, they propose notice with the following parameters:

- [IJs] will provide notice to every respondent in immigration court proceedings whom the IJs determine are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The notice will be in writing at the conclusion of the hearing.

- Additionally, DHS proposes that: (1) a copy of the notice be posted at a public place at the [NWIPC] for review and inspection by detainees or (2) a copy of the notice be provided to each new detainee within five days of intake at NWIPC.

*Id.* at 6.

The Court adopts the Bond Denial Class's notice proposal, which is both necessary and proper. Such relief is necessary because so long as Defendants continue their noncompliance, individual habeas petitions are the only realistic way for class members to exercise their rights under the declaratory judgment. It is proper because, as the Class has shown, Defendants have the capacity to provide notice in the way that the Class proposes. *See* Dkts. 107-2, 107-3, 107-4, 107-5. Specifically, Defendants acknowledge that they can provide notice to each new NWIPC detainee within five days of intake. Dkt. 107 at 6–8. But giving notice to every NWIPC detainee, regardless of the basis for their detention, would be so overinclusive as to be counterproductive to enforcing the declaratory judgment.

In comparison, the Class's proposal is less likely to be overinclusive because it narrows the range of detainees required to receive notice to those who are charged as present without admission or parole or lacking a valid entry document. *Id.* at 2. These are the detainees most likely to be class members. And as the Class points out, the current lack of notice places a particular burden on detainees without legal representation, many of whom may not know to request a bond hearing in the first place and therefore would have no opportunity to receive notice of their rights from an IJ. In contrast, any burden on Defendants in furnishing notice is a

self-inflicted result of their noncompliance with the Court's order. Because many detainees are limited in their ability to access information regarding their rights under the Court's declaratory judgment, the Court finds that the Class's notice proposal is appropriate. Fed. R. Civ. P. 23(c)(2)(A), (d)(1)(B); *see also Guerrero Orellana v. Moniz*, No. 25-CV-12664-PBS, 2025 WL 3687757, at *9 (D. Mass. Dec. 19, 2025) (requiring, in a case with a similarly defined class, that the government must provide individualized notice "to all noncitizens whom the government reasonably believes may be members of the class").

The Court has reviewed the proposed notice form attached to the parties' joint status report (Dkt. 107-7) and the edited notice form supplied by Defendants in their supplement to the joint status report (Dkt. 110-1). Defendants argue that language in the form attached to the joint status report improperly characterizes the Court's order and should be replaced with verbatim language from the order itself. Dkt. 110 at 3–4. However, as a case cited by Defendants makes clear, the ideal notice should "be understood by the average absentee class member." *F.G. v. Coopersurgical, Inc.*, No. 24-CV-01261-JST, 2024 WL 2274448, at *3 (N.D. Cal. May 20, 2024) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977)). The technical language of the Court's order could be confusing to the average class member, and the language in the proposed notice attached to the joint status report is sufficiently objective, neutral, and consistent with the Court's ruling on summary judgment. *See id.*; *compare* Dkt. 107-7 ("The federal district judge in *Rodriguez Vazquez* has ruled that people in this class . . . have the right to a bond hearing in immigration court. . . . The federal judge has ruled that this policy is unlawful. Under the court's order, class members must be considered for release on bond and must receive a bond hearing if they request one."), *with Rodriguez Vazquez*, --- F. Supp. 3d ----, 2025 WL 2782499, at *16 (explaining that § 1226(a) provides "the right to a bond hearing before an immigration judge"), *27 ("The Court further declares that the Tacoma Immigration Court's

practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.").

The Court adopts the proposed notice form supplied alongside the joint status report, with the addition of a disclaimer that the notice should not be construed as legal advice. The required notice form is attached to this order as Appendix A. The Court directs the parties to update the form to include contact information for class counsel and to file the final version on the docket no later than January 16, 2026, so that the court record contains the notice as it will be provided to potential class members.

**C.      The request for notice to Defendants' employees of the Court's declaratory judgment is neither necessary nor proper.**

The Class proposes that Defendants must provide notice of the Court's declaratory judgment to all named Defendants and all EOIR employees connected to the Tacoma Immigration Court, including IJs, law clerks, BIA members adjudicating appeals from the Tacoma court, and supervisors. Dkt. 103-1 at 2. Per the Class's proposal, any employee receiving the notice would be required to sign and return it to the Court and class counsel by a certain date. *Id.* The Class argues that this notice is necessary because Defendants have not complied with the Court's ruling and therefore must be informed of the binding nature of the Court's judgment. Dkt. 87 at 7; *see also* Dkt. 109 at 3–4. Defendants counter that requiring notice to their employees would infringe upon privileged communications between Defendants and their counsel. Dkt. 85 at 8; Dkt. 108 at 3. They also note that the IJs, who have issued alternative bond orders to class members in anticipation of habeas relief, are clearly aware of the Court's declaratory judgment. Dkt. 108 at 3.

While the Court agrees with the Class that Defendants have ignored their legal obligations, requiring notice to Defendants' employees will not aid enforcement of the judgment.

As evidenced by IJ orders issuing alternative bond amounts to class members, Defendants are aware of the ruling and have made an intentional choice not to follow it. *See, e.g.*, *Almonte Hernandez*, 2025 WL 3554639, at *1; *Garcia Mendez*, 2025 WL 3687519, at *1; *Estrella Zavala*, 2025 WL 3721729, at *1; Dkt. 75 ¶ 4; Dkt. 76 ¶¶ 4–5; Dkt. 89 ¶ 13. The Court has already explained its ruling on the law both in the underlying summary judgment order and in this Order. While the Court shares the Class's frustration about Defendants' lack of compliance, the proposed notice to Defendants and their employees would be more performative than useful. The Court's focus in enforcing its judgment is to ensure that class members have notice of their individual rights under the declaratory judgment and an opportunity to seek relief.

### D. Defendants need not identify class members but must provide weekly lists of detainees who receive notice of the judgment.

The Class asks the Court to require that Defendants provide a weekly list of class members to class counsel, including each class member's name, A-file number, and bond proceedings, if any. Dkt. 74 at 2; Dkt. 74-1 at 1. Defendants argue that ordering a weekly list of class members is overly burdensome and prejudicial because it would entail rapid review of a high volume of detainee records and would essentially require the government to concede class membership in future habeas cases brought by identified detainees. Dkt. 85 at 5–6, 11–12; *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978) (describing the "general rule" that the representative plaintiff in a class action must "perform particular tasks necessary to send the class notice"). The Class contends that Defendants, who maintain detainees' immigration records, are better positioned than class counsel to identify class members, and that Defendants have created any burden on themselves by failing to comply with the declaratory judgment. Dkt. 87 at 3–6.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Court agrees with Defendants that requiring them to identify class members on a weekly basis would be overly burdensome. Defendants have submitted a declaration explaining that creating such a list would require "394 hours for a cursory review of 1575 detainee records." Dkt. 86 ¶ 4. Moreover, determination of class membership requires reaching the legal conclusion that a detainee "[is] not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231." *See* Dkt. 85 at 6–7, 11–12. It is unreasonable and perhaps unwise to assign to Defendants in the first instance the role of determining which detainees are members of the certified class.

Instead, as part of requiring notice to potential class members, the Court will require that Defendants "produce a weekly list to class counsel of all people who received the notice that week, a copy of each person's I-213, and a list of each person's charges or their Notice to Appear (NTA)." *See infra* Section V.A; Dkt. 107 at 2. Receiving these records each week will reduce any information asymmetry impeding class counsel's ability to identify potential class members.

### E.    The request for notice before transfer is neither necessary nor proper.

The Class argues that notice before transfer of a detainee to another facility is necessary to ensure that class members can file habeas petitions in this district to enforce their rights under the declaratory judgment. Dkt. 74 at 8–9; *see Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) (noting that habeas jurisdiction attaches where a petition is filed and is not destroyed upon transfer of the petitioner). The Class asserts that requiring five business days' notice is appropriate because preparing a habeas petition requires "time and significant effort." Dkt. 74 at 9. Defendants respond that requiring five-day notice could lead to overcrowding at NWIPC and affect the government's ability to maintain conditions of confinement. Dkt. 85 at 13; *see* Dkt. 86 ¶¶ 8–9.

The parties dispute the impact of *Maldonado Bautista* on this request. Defendants argue that the nationwide *Maldonado Bautista* Bond Eligible Class "necessarily envelops the Bond Denial Class here," ensuring that class members can enforce their rights in other judicial districts and obviating the need for pre-transfer notice. Dkt. 105 at 5. The Class asserts that transfer would nonetheless impede class members' ability to obtain habeas relief because it would limit their access to class counsel and previously obtained immigration counsel. Dkt. 106 at 3–6.

This request is neither necessary nor proper because it lacks a sufficient nexus to the Court's enforcement of the terms of the declaratory judgment. Even if Defendants were complying with the Court's order, class members could be transferred out of NWIPC for a variety of reasons—such as capacity concerns, staffing limitations, and health and safety needs—before receiving bond hearings. *See* Dkt. 86 ¶ 9. While the Class has submitted evidence of class members being transferred, there is insufficient evidence in the record for the Court to conclude that these transfers are part of an intentional effort to evade relief, particularly following the nationwide declaratory judgment entered in *Maldonado Bautista*.[3]

Many of the concerns raised by the Class are also addressed by this District's practice of requiring notice before transfer once a habeas petition has been filed. *See* General Order 10-25 Ex. 1 (Dec. 18, 2025). This enables individual habeas petitioners to seek a restraining order preventing their transfer if it would interfere with their ability to seek relief from the Court. And prompt notice to potential class members, as the Court will require through this order, will help ensure that class members can quickly seek habeas relief. Finally, while the Court acknowledges the Class's concerns that transfer will limit access to counsel, the nationwide ruling in *Maldonado Bautista* ensures that class members will not be left without recourse to enforce their

---

[3] Because the Court so concludes, the Court does not address Defendants' arguments that notice before transfer is barred by 8 U.S.C. § 1252. *See* Dkt. 85 at 8–11.

ORDER ON MOTION FOR FURTHER RELIEF - 18

rights in other districts. *See Vargas Medina v. Noem*, No. 2:25-CV-02503-TMC, 2025 WL 3677159, at *2 (W.D. Wash. Dec. 18, 2025) ("[G]iven the substantial similarity between the two class definitions, any noncitizen detained at NWIPC who is eligible for membership in the *Maldonado Bautista* Bond Eligible Class will likely be a member of the *Rodriguez Vazquez* Bond Denial Class.").

## VI.    CONCLUSION

For the foregoing reasons, the motion for further relief (Dkt. 74) is GRANTED IN PART and DENIED IN PART. The Court ORDERS that:

1.    Defendants must provide individual notice of the *Rodriguez Vazquez* declaratory judgment, using the form attached to this Order as Appendix A, to all noncitizens charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) or (a)(7) who are detained at NWIPC.

2.    This notice must be (1) provided within five days of the noncitizen's arrival at NWIPC, (2) written in a language that the noncitizen can understand, and (3) accompanied by a copy of the noncitizen's I-213.

3.    Defendants must provide a weekly list to class counsel of all detainees who received the notice that week, along with a copy of each listed detainee's I-213 and charges or Notice to Appear.

4.    Defendants must begin providing the notices no later than Tuesday, January 20, 2026.

5.    The first weekly list to class counsel must be provided the following Monday, January 26, 2026, and continue every Monday thereafter until further order of this Court.

ORDER ON MOTION FOR FURTHER RELIEF - 19

Dated this 14th day of January, 2026.

Tiffany M. Cartwright
United States District Judge

# APPENDIX A

### NOTICE TO POTENTIAL *RODRIGUEZ VAZQUEZ* CLASS MEMBER
### United States District Court for the Western District of Washington
### Case No. 2:25-cv-05240-TMC

**Purpose of Notice**

You may be a class member in a case called *Rodriguez Vazquez v. Hermosillo*, Case No. 2:25-cv-05240-TMC, filed in the federal district court for the Western District of Washington. The federal district judge in *Rodriguez Vazquez* has ruled that people in this class (called the "Bond Denial Class") have the right to a bond hearing in immigration court. The government is currently appealing that decision. You are receiving this notice because the federal district judge ordered that people who may be class members must be told about the federal district court decision.

**What is *the Rodriguez Vazquez* case about?**

This case challenges the Department of Homeland Security's (DHS) and Tacoma Immigration Court's legal position interpreting the statutes on detention authority resulting in a finding of no jurisdiction to consider release on bond certain individuals in detention because they entered the United States without being admitted or inspected. The federal judge has ruled that this policy is unlawful. Under the court's order, class members must be considered for release on bond and must receive a bond hearing if they request one.

**You may be a class member if:**
1. You do not have lawful status in the United States;
2. You are detained at the Northwest ICE Processing Center in Tacoma, Washington;
3. You entered the United States without inspection;
4. You were **not** apprehended upon arrival;
5. You are **not** in expedited removal proceedings;
6. You are **not** in mandatory detention due to certain criminal charges or convictions; and
7. You do **not** have a final order of removal or a reinstated order of removal.

Receiving this notice **does not mean** you are a class member. It means that you might be a class member.

**Who can I contact for more information?**
- **If you already have an attorney**, talk to your attorney to check if you are a class member.
- **If you do not have an attorney**, you may contact counsel of choice or class counsel directly using the information at the end of this notice.

**What must class members do to receive a bond hearing?**

Because DHS and the Tacoma Immigration Court are not following the federal judge's ruling, class members will likely need to file a habeas petition in federal court. Class counsel may be able to help you file a habeas petition. You can contact class counsel at **[class counsel contact information].**

Please make sure to provide your name and A number when contacting class counsel.

**DISCLAIMER:** This notice is furnished pursuant to a federal court order and not for any other reason. This notice is not an should not be construed as legal advice on the part of the Defendants and the United States government.