**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

Ramon RODRIGUEZ VAZQUEZ, et al.,

Plaintiffs,

v.

Julio HERNANDEZ, et al.,

Defendants.

Case No. 3:25-cv-05240-TMC

**MOTION FOR FURTHER RELIEF PURSUANT TO 28 U.S.C. § 2202**

Noting Date: September 25, 2026

Oral Argument Requested



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

## INTRODUCTION

The Bond Denial Class members (Plaintiffs) seek relief requiring Defendants to provide five days' notice to class counsel prior to transferring any class member. Over the past week, Immigration and Customs Enforcement (ICE) has transferred dozens of class members from the Northwest ICE Processing Center (NWIPC) to detention centers in the Fifth and Eighth Circuits. Regardless of whether Defendants are engaged in "an intentional effort to evade relief," Dkt. 112 at 18, these transfers immediately deprive class members of their right to a bond hearing, which this Circuit requires, *see Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026), and the Fifth and Eighth Circuits do not, *see Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 499 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026). The harm for such people is immense. As the caselaw in this district reflects, class members are frequently people who have deep ties to this state and region through decades of residence, U.S. citizen family members, employment, and other connections. *See, e.g.*, *Lima Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080 (W.D. Wash. 2026); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1102 (W.D. Wash. 2026). Transfer strips class members of their rights as declared by this Court and eliminates any hope of physical liberty for these individuals, separating them from family, homes, and employment and constituting immediate, irreparable harm.

In previously granting in part class members' motion under 28 U.S.C. § 2202, this Court denied a similar request for notice prior to transfers, finding that it was not necessary or proper at that time. *See* Dkt. 112 at 17–18. In so holding, this Court relied on three rationales, at least two of which no longer apply. First, the Court pointed to the litigation in *Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1116 (C.D. Cal. 2025), where another district court had entered a nationwide declaratory judgment, *see* Dkt. 112 at 18–19. That judgment, however, has since



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

been stayed and limited to the Central District of California and therefore provides Bond Denial Class members with no protection. *See Maldonado Bautista v. Exec. Off. for Immigr. Review*, Nos. 25-7958, 26-1044 (9th Cir. Mar. 31, 2026), Dkt. 14 (Case No. 25-7958), Dkt. 17 (Case No. 26-1044). Meanwhile, two courts of appeals have held that persons similarly situated to class members are not entitled to bond hearings. *See Buenrostro-Mendez*, 166 F.4th at 499; *Avila*, 170 F.4th at 1138. Second, the Court pointed to the availability of individual habeas petitions, which require, *once filed*, require pre-transfer notice in this district. But as the parties recently agreed, class members no longer need to file habeas petitions to obtain a bond hearing, and thus petitions offer no protection absent notice of an impending transfer. *See* Dkt. 133. Third, the Court noted that transfers could occur for a "variety of reasons," such as capacity or health and safety. Dkt. 112 at 18. While that may be, those reasons do not weigh against requiring notice before stripping class members of the opportunity to seek release. Defendants also have other ways of addressing these concerns. Indeed, any notice requirement does not preclude Defendants from transferring class members. It only ensures that they have an opportunity to protect their right to seek a bond hearing by filing a habeas petition. Because the situation is now one where Bond Denial Class members only have this Court as a recourse to protect their right to a bond hearing, further relief is proper and necessary under 28 U.S.C. § 2202.

Plaintiffs also request that the Court impose additional reporting requirements on Defendants to make effective the previously ordered § 2202 relief. The Court's prior order requires Defendants to produce to class counsel weekly lists of potential class members, as well as each individual's Notice to Appear (NTA) and Form I-213 (I-213). For months, these productions have been incomplete, and despite Plaintiffs' repeated requests to remedy this issue, Defendants have failed to do so. These incomplete productions matter, as they deprive class



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

counsel of the ability to screen listed individuals for class membership and to act to protect their rights, where necessary. While sanctions may be warranted for such violations of a court order, Plaintiffs propose an intermediate step as a remedy: weekly status reports to the Court that list the number of individuals on the class list, the number of I-213s produced, and the number of NTAs produced, with an explanation as to why any I-213 or NTA is missing.

## STATEMENT OF FACTS

On September 30, 2025, this Court issued a final, classwide declaratory judgment as to the Bond Denial Class. Dkts. 65, 66. That judgment declares that:

> Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration Court's practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

Dkt. 66 at 2. In response, Defendants "ignored their legal obligations," Dkt. 112 at 15, despite the well-established rule that declaratory judgments bind the parties, *see generally id.* at 10–11. Over the past year, class counsel filed dozens of habeas petitions on behalf of hundreds of class members to secure their right to a bond hearing. *See, e.g.*, Dkt. 112 at 6 n.2. In order to help protect class members' rights, this Court also ordered that Defendants must provide notice to potential class members detained at NWIPC, along with a copy of their I-213. *Id.* at 2. The Court further ordered that "Defendants must provide a weekly list to class counsel of all detainees who received the notice that week, along with a copy of each listed detainee's I-213 and charges or Notice to Appear." *Id.* In doing so, the Court explained that the NTAs and I-213s were necessary "to reduce any information asymmetry impeding class counsel's ability to identify potential class members." *Id.* at 17; *see also* Dkt. 116 at 2 (reiterating the requirement that "Defendants must provide class counsel with each listed detainee's (1) I-213 *and* (2) either a list of the detainee's charges or their Notice to Appear.").



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

On July 30, 2026, the U.S. Court of Appeals for the Ninth Circuit affirmed this Court's declaratory judgment order. *See Rodriguez Vazquez*, 183 F.4th at 1165. As discussed at the August 18, 2026, status conference, the result of the Ninth Circuit's decision has been that class members no longer need to file habeas petitions to obtain a bond hearing. *See* Dkt. 133 at 3 (granting stipulated motion to alter class notice to inform class members that habeas petitions are no longer required); *see also* Dkt. 132-1 at 2.

However, in the past week and a half, Defendants have transferred class members out of this district and to locations in the Fifth and Eighth Circuits, and have thereby deprived those class members of their right to a hearing as declared by this Court and affirmed by the Ninth Circuit. The press has identified that "more than 200" individuals were flown to El Paso and Kansas City (in the Fifth and Eighth Circuits, respectively) out of Boeing Field. *See* Decl. of Aaron Korthuis Ex. A (PDF of Seattle Times article regarding transfers). In addition, using the documents produced pursuant to the Court's order at Dkts. 112 and 116, counsel has identified class members and cross-referenced that information with ICE's online detainee locator and information contained in noncitizens' commissary accounts to verify the transfer of those class members to detention centers in Texas, Louisiana, and Mississippi (all located in the Fifth Circuit). Decl. of Leila Kang ¶¶ 14–15; *see also* Decl. of Derek Potts ¶¶ 4–5. That analysis has identified the transfer of at least 44 likely class members, many of whom were detained in recent weeks and likely lacked the opportunity to seek a bond hearing before their transfer. Kang Decl. ¶ 17. Further, after learning of the transfers, class counsel reached out to Defendants to request information and learn whether class members were being transferred. Defendants' counsel initially stated that they relayed the request to their clients, and after several days, responded that their client had informed them that "most detainees were transferred to other facilities within the



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

9th Circuit." *See* Korthuis Decl. Ex. B (email correspondence). The data cited above directly undermines this statement.

The effects of these transfers are calamitous and life-shattering for class members. Just as with the IJ bond denials that necessitated habeas petitions, the transfers deny class members of their right to a bond hearing as declared by this Court. This is because, as noted above, there is no right to a bond hearing in the Fifth and Eighth Circuits. *See Buenrostro-Mendez*, 166 F.4th 494; *Avila*, 170 F.4th 1128. As recent habeas petitions before this Court reflect, affected individuals include those who have resided in the region for decades, have U.S. citizen spouses, children, and extended family, work and pay taxes, and have other deep ties to local communities. *See, e.g.*, *Lima Soriano*, 830 F. Supp. 3d 1071; *Vasquez Lopez*, 830 F. Supp. 3d 1097; *Garcia Miranda v. Hernandez*, No. 2:26-CV-00906-JNW, 2026 WL 1328227 (W.D. Wash. May 13, 2026); *Segura Serrano v. Scott*, No. 2:26-CV-01268-LK, 2026 WL 1674357 (W.D. Wash. May 26, 2026); *Zavala Sandoval v. Hernandez,* No. 2:26-CV-01198-JNW, 2026 WL 1661379 (W.D. Wash. June 9, 2026); *Montiel Moreno v. Hernandez*, No. C26-1714-MLP, 2026 WL 1906522 (W.D. Wash. June 18, 2026). They now have no chance for release and face the prospect of prolonged detention while separated from family and while enduring the abysmal conditions that characterize immigration detention centers.

Notably, these transfers also threaten to eliminate a person's right to chosen counsel. In recent weeks, the Executive Office for Immigration Review (EOIR) has suspended its previous practice of allowing virtual appearances by WebEx, including in detained cases. *See* Decl. of Nicolas Olano ¶¶ 4–7. Instead, EOIR is now requiring motions to appear via WebEx, and then denying them for lack of good cause. *Id.* ¶¶ 5–7. The result is that in many instances, unless the attorney is within driving distance of the detention center, a noncitizen's chosen counsel cannot



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

represent them. *Id.* ¶ 8. That is important here, because (in addition to losing the ability to seek release) transfer of class members may also eliminate their ability to continue with their chosen counsel, including in cases where the person may have already obtained local counsel for an upcoming bond hearing or merits hearing.

Finally, class counsel is unable to adequately protect the rights of class members due to Defendants' lackluster compliance with this Court's previous § 2202 order requiring weekly lists of prospective class members and those individuals' NTAs and I-213s. Notably, the Court's order sought to alleviate burden on Defendants, requiring production of documents in order to equip class counsel with information needed to identify class members, rather than requiring Defendants to verify class membership. Dkt. 112 at 16–17. While Defendants have produced the weekly lists, their production of the NTAs and I-213s has been far from complete. *See* Kang Decl. ¶¶ 6–10. Many weeks, one third or even up to a half of the NTAs or I-213s are missing. *Id.* ¶ 6. This prohibits class counsel's ability to identify class members, as only the NTAs and I-213s can provide the information necessary to identify them. Class counsel has repeatedly attempted to remedy this issue, but the weekly documents productions remain incomplete and Defendants regularly fail to supplement their productions. *Id.* ¶¶ 8–10. As relevant here, this also means that the data regarding transfers of class members detailed above is incomplete and represents an undercount. *Id.* ¶¶ 12–14.

## ARGUMENT

### I. Pre-Transfer Notice is Necessary and Proper under 28 U.S.C. § 2202.

#### A. <u>The Court has jurisdiction to issue the requested relief</u>.

As this Court previously recognized, it has jurisdiction to issue further relief pursuant to 28 U.S.C. § 2202. Section 2202 provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

adverse party whose rights have been determined by [a declaratory] judgment [under § 2201].” 28 U.S.C. § 2202. *See* Dkt. 112 at 10–11. However, in the course of Plaintiffs’ prior motion for similar relief, Defendants asserted that 8 U.S.C. § 1252(f)(1) and § 1252(a)(2)(B)(ii) would bar a pre-transfer notice requirement, pointing to § 1231(g). That subsection provides that “the Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal.” 8 U.S.C. § 1252(g)(1).

Section 1252’s jurisdiction-stripping channeling provisions do not apply to the relief requested here. First, the authority of § 1231(g) does not specify transfers to be “in the discretion of the Attorney General.” 8 U.S.C. § 1252(a)(2)(B)(ii). As both the Second and Fourth Circuits have explained, “the language of § 1231(g) does not address transfers at all, nor does it explicitly grant the Attorney General or the Secretary of Homeland Security discretion with respect to transfers.” *Reyna ex. rel. J.F.G. v. Hott*, 921 F.3d 204, 209 (4th Cir. 2019); *see also Ozturk v. Hyde*, 136 F.4th 382, 396 (2d Cir. 2025) (same); *Mahdawi v. Trump*, 136 F.4th 443, 453–54 & n.4 (2d Cir. 2025) (similar). Instead, § 1231(g) “relate[s] more centrally to the government’s brick and mortar obligations for obtaining facilities in which to detain aliens.” *Reyna*, 921 F.3d at 209. The context of the statute supports this observation, as it simply provides that DHS “shall arrange for appropriate places of detention” for noncitizens in removal proceedings. 8 U.S.C. § 1231(g)(1). It then further explains this authority, stating that “[w]hen United States Government facilities are unavailable or facilities . . . are unavailable for rental,” DHS may “acquire, build, remodel, repair, and operate facilities . . . necessary for detention.” *Id.* Read in full, § 1231(g) authorizes DHS to build and contract for detention facilities; it does not grant unreviewable discretion over transfers. Thus, § 1252(a)(2)(B)(ii) is not implicated here.

Similar reasons demonstrate why § 1252(f)(1) is also not implicated here. Section



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

1252(f)(1) bars injunctive relief regarding the operation of the referenced statutory provisions, other than in individual actions. But because § 1231(g) does not discuss transfers, a court order touching on transfers does not enjoin the statute's operation. Moreover, Plaintiffs' requested relief does not enjoin transfers; instead, it requires only that Defendants provide notice prior to exercising any transfer authority that § 1231(g) impliedly might provide.

In sum, this Court has jurisdiction to issue the requested relief under 28 U.S.C. § 2202.

B. Pre-transfer notice is necessary and proper.

The requested notice of five days is necessary and proper because it secures the class members' rights to a bond hearing, as affirmed by this Court in its order granting summary judgment. Once transferred to the Fifth Circuit (or Eighth Circuit), class members will lose the right to a hearing that this Court has declared them to have, and which the Ninth Circuit has most recently affirmed that they have. Without notice, class members will have no way to secure a bond hearing before they are transferred to a location where they will be stripped of their rights. And once transferred, a habeas petition offers them no protection, as this Court would lack jurisdiction over any such petition and the transferred persons will be in a circuit where there is no right to a bond hearing. *See Doe v. Garland*, 109 F.4th 1188, 1199 (9th Cir. 2024) (holding that immigration habeas petitioner must sue warden in district of confinement). By contrast, pre-transfer notice protects class members' right to a bond hearing, as in that case the individual can file a habeas petition before their transfer to secure their right to a bond hearing.

This Court previously denied a similar request for relief because it "lack[ed] a sufficient nexus to the Court's enforcement of the terms of the declaratory judgment." Dkt. 112 at 18. The Court reached that conclusion for three reasons, at least two of which no longer apply. First, the Court relied on the nationwide declaratory judgment in *Maldonado Bautista*, 813 F. Supp. 3d



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

1084 (C.D. Cal. 2025), reasoning that it would protect the rights of transferred class members. According to the Court, these transferred individuals would still be able to secure bond hearings in the different detention centers. Dkt. 112 at 18. However, that protection no longer exists. Defendants in *Maldonado Bautista* appealed that order and sought a stay, which was granted in part. *See* Order, *Maldonado Bautista v. Exec. Off. for Immigr. Review*, Nos. 25-7958, 26-1044 (9th Cir. Mar. 31, 2026), Dkt. 14 (Case No. 25-7958), Dkt. 17 (Case No. 26-1044). As relevant here, the stay (which remains in effect) limited the *Maldonado Bautista* declaratory judgment to the Central District of California. *See id.* The judgment in that case therefore provides no protection to an individual transferred to the Fifth or Eighth Circuits, which have ruled that persons similarly situated to class members are not entitled to a bond hearing.

Second, in its decision, the Court also observed that this Court's general order on habeas petitions would protect class members, since that order requires pre-transfer notice once a class member files a petition seeking relief pursuant to the declaratory judgment. Dkt. 112 at 18. At that time, any class member who sought to secure their right to a bond hearing was forced to file a habeas petition. *See id.* at 5–6 & n.2. But class members no longer need to file habeas petitions to obtain the benefit of the declaratory judgment. And without those habeas petitions, an individual will generally not learn of their transfer until it is happening. *See, e.g.*, *Leon Figueroa v. Wamsley*, No. 2:25-CV-02228, 2025 WL 3129177, at *1 (W.D. Wash. Nov. 7, 2025) (recounting last-minute knowledge of individuals being transferred). By then, it is generally too late to file a habeas petition for most individuals.

This is significant. Transfer of class members to detention centers in the Fifth and Eight Circuits effectively deprives them of their right to a hearing to determine whether detention is warranted. This is despite the fact that this Court has already declared class members' rights to



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

obtain such a hearing. Eliminating such a basic right requires notice. And not only that, but such notice also must occur within a timeframe that would permit the person to seek relief via habeas. *See A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025) (per curiam) ("AEA detainees must receive notice . . . that they are subject to removal under the Act . . . within a reasonable time and in such a manner as will allow them to actually seek habeas relief" before removal." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam)); *see also Cantero Garcia v. Wamsley*, No. 2:25-CV-02092-TMC, 2025 WL 3022252, at *2 (W.D. Wash. Oct. 29, 2025) (providing for pre-transfer notice to allow class members to seek emergency relief). Here, of course, no such notice is occurring *at all*, underscoring the deprivation to class members' due process rights.

Third, the Court also previously observed that in some instances, transfers are necessary to address overcrowding, staffing, or health and safety. Dkt. 112 at 18. The Bond Denial Class does not dispute this. But pre-transfer notice does not eliminate the government's ability to address these concerns. All it does is require notice; it does not prohibit transfer. Class members would still need to file habeas petitions if a transfer was about to occur. Moreover, this motion is situated in the context of Defendants' recent actions, where they flagrantly ignored this Court's declaratory judgment for a year, emboldened by the fact that § 1252(f)(1) apparently shields them from contempt and sanctions. Now, just weeks after the Ninth Circuit issued it decision, Defendants have suddenly begun to make mass transfers from NWIPC once more, which at least suggests that one motive for these transfers is to avoid the Court's now-effective declaratory judgment. *Cf. United States v. Oregon*, 828 F. Supp. 3d 1092, 1107 (D. Or. 2026) (government's conduct in case can defeat presumption of regularity); *Temahagari v. Bondi*, No. 25-CV-02484-



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

LK, 2026 WL 353264, at *7 (W.D. Wash. Feb. 9, 2026) (similar).[1]

Finally, while not required to issue relief pursuant to § 2202, the harm that would befall class members absent notice also underscores why such notice is necessary and proper to secure their rights. As detailed above, many class members have deep ties to this country, and in particular, to the Pacific Northwest. They have lived here for decades, have U.S. citizen family members here, contribute to the local economy, and pay taxes. Despite the obvious equities in many such cases favoring release, they will now have no opportunity to receive an individualized custody determination. The result will be separated families, lost jobs, and employers without workers, among other harms. Notice is necessary and proper, as only through notice can class members exercise their right to obtain a bond hearing (which class members will lose if transferred prior to seeking relief) and protect themselves against these significant harms.[2]

In sum, pre-transfer notice is necessary and proper to effectuate the declaratory judgment under 28 U.S.C. § 2202.

## II. The Court should require weekly status reports regarding the relief ordered at Dkt. 112 and Dkt. 116.

Plaintiffs also seek further relief to make effective this Court's prior order under § 2202. Defendants are required to produce corresponding I-213s and NTAs for listed prospective class members each week. Yet for months, they have fallen far short of doing so, and class counsel's

---

[1] Even though depriving people of bond hearings may be *a* motive for transfers, no such finding is needed for the Court to provide relief. Defendants need not have acted in bad faith; instead, the requested relief need only be necessary and proper. *See* 28 U.S.C. § 2202.

[2] Similarly, in addition to these harms, in some instances, class members will lose their counsel. That is because, as detailed above, EOIR has moved to severely limit remote appearances, even for detained individuals. Stripping people of their counsel further underscores the significant harm Defendants cause by transferring people without notice. *Cf. Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1509 (C.D. Cal. 1988) (issuing injunction that, inter alia, placed restrictions on detainee transfers because "[t]ransfer of detainees who are represented by counsel interferes with the attorney-client relationship"), *aff'd sub nom. Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990).



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

attempts to remedy this noncompliance have not fixed the issue. As noted, this is no small matter: class counsel regularly reviews these documents to screen for class members, *see* Kang Decl. ¶ 5, and to assist in protecting their rights, either through habeas petitions or motions like this one. Notably, Defendants are under a court order to produce these documents, and thus this incomplete production amounts to "willful disobedience of a court order." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980). Nevertheless, Plaintiffs do not seek sanctions, but instead propose an intermediate step to encourage compliance with this Court's order.

Specifically, to ensure Defendants' accountability, Plaintiffs request that the Court order Defendants to provide weekly status reports to the Court that provide the following information: (1) the number of individuals listed on the weekly list of prospective class members, (2) the number of I-213s produced for individuals on that list, (3) the number of NTAs produced for individuals on that list, (4) an explanation for why any I-213s or NTAs were not produced as required, and (5) an update as to any I-213s or NTAs not previously produced, including how many additional such documents have been produced and to which prior weekly production those supplemental productions correspond. *See, e.g.*, *Thomas v. Cnty. of Los Angeles*, 978 F.2d 504, 510 (9th Cir. 1992) (explaining that a "district court is authorized to direct the submission of . . . reports to ensure compliance with an injunction"); *cf. Pacito v. Trump*, No. 2:25-CV-255-JNW, 2025 WL 1295660, at *5 (W.D. Wash. May 5, 2025) (ordering reports to the court to monitor compliance). Plaintiffs respectfully submit that requiring such reporting to the Court will help to ensure Defendants' compliance with the Court's order. And if it does not, then such reporting will provide a robust basis for the Court to order sanctions, if necessary.



NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
(206) 957-8611

**CONCLUSION**

For all the foregoing reasons, the Court should require Defendants to provide class counsel and any immigration counsel of record with five days' notice prior to transferring individuals listed as potential class members. In addition, the Court should order Defendants to provide weekly status reports regarding their compliance with the Court's prior § 2202 order.

Respectfully submitted this 4th of September, 2026.

s/ Aaron Korthuis
Aaron Korthuis*, WSBA No. 53974
aaron@nwirp.org

** I certify that this memorandum contains 4,136 words, in compliance with the Local Civil Rules.*

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Suite 400
Seattle, WA 98104
(206) 957-8611

*Counsel for Bond Denial Class*

s/ Matt Adams
Matt Adams, WSBA No. 28287
matt@nwirp.org

s/ Leila Kang
Leila Kang, WSBA No. 48048
leila@nwirp.org