# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| THE UNIVERSITY OF WASHINGTON, THE CENTER FOR HUMAN RIGHTS AT THE UNIVERSITY OF WASHINGTON, and ANGELINA GODOY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, and UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | Civil Action No. 1:18-cv-01396-BJR |

**DECLARATION OF TONI FUENTES**

I, Toni Fuentes, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

**1.** I am the Deputy FOIA Officer of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since September 30, 2018 and am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C. § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I have held numerous FOIA positions over the past 20 years to include: FOIA Director for the National Protection and Programs Directorate ("NPPD") at the U.S. Department of Homeland Security ("DHS"); Government Information Specialist for Department of Justice, U.S. Marshal's Service, Office of General Counsel; Government Information Specialist

for the Department of Defense, Office of the Inspector General's FOIA Office; FOIA Officer, Paralegal Specialist for Department of the Navy, NAVAIR/NAWCAD's Office of Counsel; Management and Program Analyst for Department of Homeland Security, Customs and Border Protection's FOIA Office; and FOIA Paralegal Specialist for the National Aeronautics and Space Administration's Office of Chief Counsel.

**2.** My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office, which is responsible for the receipt, processing, and response to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In that capacity, I manage and supervise a staff of Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act. In that respect, I am familiar with ICE’s processing of the FOIA request dated October 18, 2017, that Plaintiff, Dr. Angelina Godoy, submitted to ICE, which is the subject of this litigation (“Plaintiffs’ FOIA Request”).

**3.** I make this declaration in my official capacity in support of Defendant’s response to Plaintiffs’ motion for summary judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties. The documents attached hereto are kept by ICE in the ordinary course of its business activities.

**4.** This declaration provides a description of how ICE received Plaintiffs’ FOIA Request, how the ICE FOIA Office processed Plaintiffs’ FOIA Request, and how the ICE FOIA

Office responded to Plaintiffs' FOIA Request. Moreover, this declaration further explains ICE's position regarding the practicalities of Plaintiffs' FOIA Request.

## I. PROCEDURAL HISTORY OF THE PLAINTIFFS' FOIA REQUEST AND THE PRESENT LITIGATION

**5.** This suit stems from eight (8) FOIA Requests submitted by Plaintiffs to the ICE FOIA Office between September 17, 2017 and April 27, 2018.

**6.** The FOIA Request that is the subject of the present motion and corresponding declaration is dated October 18, 2017. A true and complete copy of Plaintiffs' FOIA Request is attached hereto as Exhibit 1. The FOIA Request sought copies of I-213 Forms (hereinafter I-213 or I-213s) created on or after January 1, 2012 for (a) each individual detained or taken into custody by staff from ICE's Seattle Field Office, and/or (b) each individual transferred to the custody of staff from ICE's Seattle Field Office by U.S. Customs and Border Protect (CBP), or state or local law enforcement officials.

**7.** By e-mail dated January 8, 2018, the ICE FOIA Office acknowledged receipt of Plaintiffs' FOIA Request and assigned it tracking number 2018-ICFO-14208. A true and complete copy of the January 8, 2018 e-mail is attached hereto as Exhibit 2.

**8.** Based on the nature of the records sought by Plaintiffs, ICE FOIA's January 8, 2018 acknowledgement e-mail also requested third-party authorization. ICE FOIA further attached the requisite authorization form to the acknowledgement e-mail for Plaintiffs to complete, sign, and return. A true and complete copy of the authorization form is attached hereto as Exhibit 3.

**9.** By e-mail dated January 16, 2018, Plaintiffs appealed ICE FOIA's determination that third-party authorization was required prior to the processing of the request based on two grounds: (1) an alleged high level of public interest, and (2) that Courts have allegedly compelled the release of similar information in related cases. Plaintiffs also stated in their January 16, 2018

email that they did not object to the redaction of certain PII, including addresses, social security numbers, or other PII; however, the Plaintiffs unambiguously stated that they would object to the redaction of an individual's name. A true and complete copy of Plaintiffs' January 16, 2018 e-mail is attached hereto as Exhibit 4.

**10.** Following Plaintiffs' appeal e-mail, ICE FOIA tasked ICE's Enforcement and Removal Operations (ERO) to conduct a search for responsive records. Based on ICE ERO's response, ICE FOIA provided a final response letter, dated March 26, 2018, to Plaintiffs' request, stating that no responsive records were located. A true and complete copy of ICE FOIA's final response letter, dated March 26, 2018, is attached hereto as Exhibit 5.

**11.** By letter dated May 14, 2018, Plaintiffs appealed ICE FOIA's response to their request. A true and complete copy of the appeal letter, dated May 14, 2018, is attached hereto as Exhibit 6.

**12.** By letter dated June 25, 2018, the ICE Office of the Principal Legal Advisor (OPLA), Government Information Law Division (GILD), provided a final adjudication of Plaintiffs' appeal, affirming the ICE FOIA Office's response. A true and complete copy of ICE's adjudication letter, dated June 25, 2018, is attached hereto as Exhibit 7.

**13.** On September 21, 2018, Plaintiffs filed the present Complaint.

## II. ICE FOIA'S STANDARD PROCEDURE IN RESPONDING TO A FOIA REQUEST

**14.** When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.

**15.** If a FOIA request does not reasonably describe the records sought, the ICE FOIA Office will seek clarification from the requester. If the requested information is under the purview of a DHS component other than ICE, the ICE FOIA Office will refer the request to the appropriate DHS component for processing and direct response to the requester. If the FOIA request seeks records under the purview of a government agency other than DHS, ICE FOIA informs the requester to contact the other government agency directly and ICE FOIA administratively closes the FOIA request.

**16.** Proper FOIA requests are entered into a database known as FOIAXpress and assigned a case tracking number. Based upon the requester's description of the records being sought, and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

**17.** ICE records are maintained by leadership offices and/or within ICE directorates, namely, ERO, Homeland Security Investigations (HSI), and Management and Administration (M&A). Program offices within the leadership office and the ICE directorates are staffed with a designated point of contact (POC) who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of his/her particular program office.

**18.** When the ICE FOIA Office receives a proper FOIA request, its first step is to determine which program offices within ICE are reasonably likely to possess records responsive to that request, if any, and to initiate searches within those program offices. This determination is based on the description of the records requested and requires a familiarity with the holdings of

ICE's records systems, and the substantive and functional mandates of numerous ICE offices. Factors such as the nature, scope, and complexity of the request itself are also relevant.

**19.** Once the ICE FOIA Office determines the appropriate program office(s) for a given request, it provides the POC(s) in each of those program office(s) with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POC(s) then review the FOIA request, along with any case-specific instructions provided by the ICE FOIA Office, and based on their experience and knowledge of their program office(s)'s practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any.

**20.** Per the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of the file systems (including both paper and electronic files) that in their judgment, based on their knowledge of the manner in which they routinely keep records, would be the most likely systems to contain responsive documents. After those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and application of appropriate FOIA Exemptions.

**21.** ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records, among others. Similarly, ICE employees maintain records in several ways, including storing electronic records on their individual computer hard drives, on their program office's shared drive (if the office uses one) or, less commonly, on DVDs, CDs, or USB storage devices. The determination of which locations need to be searched in response to a particular FOIA tasking, as well as how to conduct

any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

**22.** Additionally, all ICE employees have access to email. ICE uses the Microsoft Outlook email system. ICE employees use various methods to store their Microsoft Outlook email files. Some archive their files monthly, without separating by subject; others archive their email by topic or by program; and still others create PST files of their emails and store them on their hard drive or shared drive. Like other searches of emails, an employee will complete a search of his email archive when he determines that the archive may contain potentially responsive records. This determination is based on his knowledge of the substance of the FOIA request, the FOIA tasking and instructions provided to him by ICE FOIA and/or the program office POC, and his knowledge of the method in which he stores his emails.

**23.** Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who makes a determination regarding the responsiveness of the records to the FOIA request. If the records are responsive, the FOIA processor will redact information pursuant to FOIA or the Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

**24.** Frequently the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated. Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requester.

## III. DESCRIPTION OF ICE FOIA'S ADJUDICATION OF PLAINTIFFS' FOIA REQUEST

**25.** As stated in Paragraph 6 above, Plaintiffs submitted a FOIA Request to ICE FOIA, dated October 18, 2017.

**26.** Upon receipt and subsequent review of Plaintiffs' initial FOIA Request, ICE FOIA acknowledged receipt via e-mail, assigned the request tracking number 2018-ICFO-14208, and explained to Plaintiffs that pursuant to DHS regulations, in the case of third-party information requests, a statement from the individual verifying his or her identity and certifying that individual's agreement that records concerning him or her may be accessed, analyzed, and released to a third-party is required. *See* 6 C.F.R. § 5.21(f). *See also* Exhibit 2.

**27.** Following Plaintiffs' appeal of ICE FOIA's determination that third-party authorization was required, *see* Exhibit 4, and based on ICE FOIA's familiarity with ICE records systems, the applicable records disposition schedules, and the substantive and functional mandates and missions of ICE offices, the ICE FOIA Office determined that ICE ERO should be tasked to conduct a search for records responsive to Plaintiffs' FOIA request. On March 7, 2018, ICE FOIA tasked ERO to conduct the search.

**28.** On March 13, 2018, ERO provided a negative response to the search tasking based on the fact that final I-213s, the records Plaintiffs requested, are not maintained in either an ICE database or an ICE system of records. Therefore, pursuant to a letter dated March 26, 2018, ICE FOIA provided Plaintiffs with a final response, stating that no responsive records were located.

**29.** By letter dated May 14, 2018, Plaintiffs appealed ICE FOIA's final determination. OPLA GILD adjudicated Plaintiffs' FOIA appeal, and by letter dated June 25, 2018, affirmed the ICE FOIA Office's response to Plaintiffs' FOIA request.

**30.** As stated above, in the administrative stage, Plaintiffs stated in their January 16, 2018 e-mail that an objection would be raised if redactions were made to protect the individuals' names. Based on this information, OPLA GILD's adjudication letter provided Plaintiffs with an explanation supporting its decision to affirm the ICE FOIA Office's decision. GILD's

adjudication letter offered two supporting reasons: (1) the ICE FOIA Office needed privacy waivers because the request sought third-party records and the disclosure of PII, i.e. the individuals' names in the I-213s; and (2) the request, as written, required an overly burdensome search.

**31.** GILD explained in the adjudication letter that I-213s are located in individual Alien Files (A-Files). A-Files, and records contained therein, are third-party records. PII included in these records cannot be disclosed to third-party requesters absent a waiver authorizing their release. 6 C.F.R. § 5.10(a)(2). Moreover, DHS FOIA Regulations elucidate that a balancing test is used to determine whether the personal privacy interests of the individual outweighs the public interest in disclosure of the records. Absent properly executed third-party authorization, in the event the personal privacy interests outweigh the public interest, a denial of access to third-party records may result. 81 FR 83628 (Nov. 22, 2016).

**32.** OPLA GILD's final adjudication letter further explained to Plaintiffs that even if an overriding public interest was identified, the request, as written, was overly burdensome and voluminous. I-213s are not stored electronically; they are located in individual A-Files. In order to search for, locate, and gather all I-213s requested on or after January 1, 2012, an extraordinary amount of ICE resources would have been required to assist. Based on these reasonings, OPLA GILD affirmed the ICE FOIA Office's determination.

**33.** Following the filing of the present Complaint, and after a litigation review of the administrative record, ICE initiated negotiations with the Plaintiffs in an effort to narrow the scope of the FOIA request and attempt to resolve the case. Thus, during a phone call dated March 29, 2019, ICE attempted to obtain more information about exactly the type of data Plaintiffs were seeking. ICE explained that in the event I-213s could be produced to the Plaintiffs, these records

would be heavily redacted because of privacy concerns and/or law enforcement sensitive information included throughout.

**34.** Plaintiffs recommended resolution was to produce a spreadsheet of data with the following data points: date, age or date of birth (DOB), sex, complexion, hair and eye color, country of citizenship, event number, date, place, manner of last entry, number and nationality of minor children, narrative, method of location/apprehension, at/near, date/hour, status when found, and criminal record. Although ICE is capable of retrieving and producing certain data, the majority of the data points Plaintiffs requested was not tracked electronically by ICE. The data points tracked by ICE that could be produced are as follows, for initial book-ins: initial book-in date, DOB, gender, country of citizenship, facility, apprehension method, and most serious conviction (MSC) charge. For administrative arrests, the tracked data points are the following: arrest date, DOB, gender, country of citizenship, event number, apprehension landmark, arrest method, and MSC charge. For expedited and other removals, the tracked data points are the following: departed date, DOB, gender, country of citizenship, event number, MSC charge, and case category. Consequently, ICE was unable to produce all data points requested by Plaintiffs.

**35.** However, ICE did produce to the Plaintiffs, by letter dated August 21, 2019, a spreadsheet that included the numerous fields of tracked statistical data referenced in paragraph 34 above that is tracked by ICE in the normal course of business. Again, this data related to "Arrests," "Book Ins," "Expedited Removals," and "Other Removals" for the Seattle Area of Responsibility (AOR). This spreadsheet was released to the Plaintiffs, in part, with redactions appropriately made pursuant to FOIA Exemptions 6, 7(C), and 7(E).

**36.** Following this August 2019 production, ICE did not receive any further inquiries regarding this request from the Plaintiffs. By e-mail dated January 24, 2020, however, Plaintiffs requested the present briefing on the issue of ICE's ability to search for, and produce, final I-213s.

## IV. OVERLY BURDENSOME SEARCH OF FINAL I-213s

**37.** I-213s, Record of Deportable/Inadmissible Alien, are forms utilized by DHS to support the removability of an individual based on their alienage. Final I-213s are physically stored in individual A-Files, not in an ICE database. When not in use by ICE or the Customs and Border Protection for enforcement purposes, the A-Files reside with U.S. Citizenship and Immigration Services (USCIS), a separate component of DHS. The USCIS is the formal custodian of the A-files.

**38.** ICE's position in this litigation has remained the same since the administrative stage: Plaintiffs' request, as written, is overly burdensome and, given that Plaintiffs specifically requested the disclosure of the aliens' names from the I-213s in the clarification email they sent to ICE FOIA on January 16, 2018, Plaintiffs have failed to make a showing of a significant public interest, thus the need for third-party authorization is required.

**39.** As an initial matter, the process of retrieving one I-213 from one A-File is a burdensome one. Adding in the specifics of Plaintiffs' request, seeking I-213s for the past eight years, makes it an overly burdensome one which would require an inordinate amount of ICE resources to satisfy. Because Plaintiffs' request is overly burdensome, ICE cannot process it, as written.

**40.** As previously stated, physical copies of final I-213s are stored in individual A-files. Plaintiffs have requested records dating back to January 1, 2012. In order to provide responsive

records to Plaintiffs' request, ICE would need to request and obtain the A-Files for every individual detained in the Seattle AOR for the past eight years.

**41.** In order for ICE to even begin with such a request, the first step would be to determine who was detained in the Seattle AOR since January 1, 2012. This step would impose on ICE the challenge of not only determining how many people were detained, but also determining an identifier associated with each individual, i.e. a name, A-Number, or date of birth. A-Files are third-party records, thus they are located and retrieved using a personal identifier. Each arrested individual for the given time period needs to be matched with the correct A-number before ICE can request the delivery of the physical A-file for review.

**42.** Strictly based on numbers and no other identifying information, as of February 8, 2020, there were approximately 38,652 individuals detained by ICE in the Seattle AOR since January 1, 2012. This means that in order to obtain, review, and produce the final I-213s requested by the Plaintiffs, ICE would need to request approximately 38,652 individual A-Files.

**43.** Once ICE determines how many individuals were detained for the requisite time-period, further searches in ICE's databases would need to be conducted in order to obtain a personal identifier, in this case the Alien Number (A-number), that can be used to locate the A-File. Based on the number in paragraph 42, ICE estimates that the process alone of obtaining the A-numbers could take several weeks.

**44.** After retrieving a personal identifier of every person detained in the Seattle AOR since January 1, 2012, ICE would then need to determine where the A-File is located so it can be requested. Although USCIS is the formal custodian of the A-File, a number of factors could affect its physical location. If, for example, the individual's immigration court proceedings were active, the A-File may be with one of the twenty-six (26) ICE Office of the Principal Legal Advisor field

offices/sub-offices that is in charge of conducting the removal proceedings. The A-File could also be at one of the twenty-four (24) ICE ERO field offices if the individual is a target of an active operation or is being supervised by a particular ERO field office as a condition of release. On the other hand, if all proceedings have been completed, the A-file may be located at the USCIS National Records Center. Further, the process of locating the A-File, itself, may require coordination with a number of other parties. For example, an A-file may be lost, in transit, missing, already requested by another office or in use by another ICE field office and thus not immediately available for delivery. Further coordination may be required to ascertain the exact location of the A-file and/or when it may be available. Again, as of February 8, 2020, ICE would need to determine the location of approximately 38,652 individual A-Files. It would likely take ICE many weeks to go through these many thousands of individual A-file numbers in order to ascertain the location of each individual A-file and request its timely delivery.

**45.** At this point in the process, the A-File is still not in ICE's possession, which means neither is the I-213.

**46.** Once the location(s) of an individual's A-File is determined, and ICE has requested it, the time it may take for the A-File to make its way into ICE's possession varies. The speed at which the A-File is sent to ICE lies solely in the hands of the component/office/individual who has possession of it at the time of the request.

**47.** Once ICE finally does gain possession of the A-File, a manual search of the contents must be conducted in order to identify the I-213. It should be noted here that no ICE field office likely has the capacity to store over 38,000 physical A-files in one place.

**48.** A-Files are unique. They contain official immigration records of persons who are not citizens or nationals of the United States, including records created as the individual passes

through the U.S. immigration and inspection processes and, when applicable, records related to any law enforcement action against or involving the alien. One individual does not and will not have the same contents in their A-File as another individual. Some A-Files may contain hundreds and hundreds of pages therein because of a lengthy immigration history, while other A-Files may be smaller. There is no way of knowing the size of an A-File until it is physically in ICE's possession.

**49.** Moreover, and specifically regarding the I-213, this form is not located in the same place of every A-File. For some A-Files, the I-213 could be on top; for others, the I-213 could be somewhere in the middle or at the back of the A-File. There is no requirement that the I-213 must be the first page in every A-File. Because of the unstructured organization of the A-File, as stated above, a manual search of every single page in every single A-File would have to be conducted in order to locate the I-213 – and that is assuming the I-213 is properly placed in the A-File in the first place. ICE cannot provide a guarantee that every A-File pulled will have the I-213, thus, it is entirely plausible that a review of every single page in an A-File could prove futile.

**50.** Strictly for purposes of moving on with the explanation of the process, assuming ICE has located the I-213 in the A-File, the form would then need to be manually scanned into an electronic format and uploaded into ICE FOIA's review platform. Further assuming that an I-213 can be found for all 38,652 individuals detained in the Seattle AOR, these forms are usually more than one page long. If we estimate that each I-213 consists of two pages, that would mean that ICE would have to individually scan at least 77,304 pages into an electronic format. This step, in and of itself, is overly burdensome.

**51.** Once all scanning is complete and the I-213s are in an electronic format, uploaded into ICE's review platform, the review and processing of the records can finally begin. The ICE

FOIA Office would need to conduct a line-by-line review in order to apply redactions pursuant to the appropriate exemptions. I-213s are inherently personal documents that will require a number of redactions based on FOIA Exemptions 6, 7(C), and 7(E).

**52.** Only after the review and processing of the I-213s is complete would they be produced to the Plaintiffs.

**53.** Courts have consistently held that an agency is not required to conduct a search that is overly or unreasonably burdensome. The search Plaintiffs want ICE to perform is just that. The information that would ultimately be released is minimal compared to the effort that has to go into searching for, locating, retrieving, and processing the I-213s.

**54.** Based on the foregoing, it is ICE's position that Plaintiffs' request is overly burdensome, thus the agency is unable to process it, as written.

## V. ERO DATABASE DESCRIPTIONS AND OVERLY BURDENSOME SEARCH OF DRAFT I-213s

**55.** ICE has repeatedly explained to Plaintiffs that the agency does not maintain electronic copies of final I-213s in our databases. Such records are maintained in individual A-Files, as explained in paragraphs 37-54 above.

**56.** While final I-213s are not located in any of ICE's electronic databases, draft, unsigned I-213s can be retrieved from a subsystem of ERO's Enforcement Integrated Database (EID), which captures and maintains information related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations conducted by ICE and CBP. The EID Arrest Guide for Law Enforcement (EAGLE), a subsystem of EID, is the booking application used to process the biometric and biographic information of individuals arrested by ICE Homeland Security

Investigations (HSI) Special Agents for violations of law and ICE ERO officers to support bookings of individuals arrested for criminal and administrative violations of the INA and related laws. Additionally, the Immigration and Enforcement Operational Records System (ENFORCE) Alien Removal Module (EARM) is one system in the ICE ERO ENFORCE suite of applications. The narrative portion of an I-213 is located in the EARM encounter screen.

**57.** As stated above, drafts of I-213s can be obtained from a subsystem of EID. That subsystem is EAGLE. In order to search for, locate, and retrieve draft I-213s, a multi-step process is required. First, electronic, draft I-213s can only be searched one at a time using a unique identifier. It is not possible to conduct a search for all I-213s for a given year, or a given AOR. Once a unique identifier is entered into the EAGLE system, the user must navigate to the appropriate folder or tab where the draft I-213 can be found. Once the draft I-213 is found, it has to be downloaded. Thereupon, it can either be printed or saved to a folder. If the draft I-213 is printed, the document would then need to be manually scanned into an electronic format and uploaded into ICE FOIA's review platform. If the draft I-213 is saved to a folder, that folder would be transferred to the ICE FOIA Office to upload the draft I-213s into ICE FOIA's review platform. Only after the draft I-213s are uploaded into ICE FOIA's review platform can they be processed.

**58.** As referenced above, as of February 8, 2020, there were approximately 38,652 individuals detained by ICE in the Seattle AOR since January 1, 2012. This means that in order to obtain, review, and produce the draft I-213s requested by the Plaintiffs, ICE would need to input 38,652 unique identifiers into the EAGLE system, one at a time. ICE would then need to navigate to the appropriate folder, download the draft I-213, and either print or save the draft I-213, again, one at a time.

**59.** If the draft I-213 is printed, and, as stated above, if we estimate each I-213 to consist of at least two pages, that would mean that ICE would have to individually scan at least 77,304 pages into an electronic format. This step, in and of itself, is overly burdensome.

**60.** Again, only after all 38,652 draft I-213s are located, downloaded, saved or printed, scanned, if necessary, and uploaded into ICE FOIA's review platform can the review and processing of the records begin. As with final I-213s, the ICE FOIA Office would need to conduct a line-by-line review of the draft I-213s in order to apply redactions pursuant to the appropriate exemptions. I-213s are inherently personal documents that will require a number of redactions based on FOIA Exemptions 6, 7(C), and 7(E), and this line-by-line review and application of redactions will be the same regardless of whether the I-213 is a final version or a draft version.

**61.** Courts have consistently held that an agency is not required to conduct a search that is overly or unreasonably burdensome. The search Plaintiffs want ICE to perform is just that. The information that would ultimately be released is minimal compared to the effort that has to go into searching for, locating, retrieving, and processing the I-213s.

**62.** Based on the foregoing, it is ICE's position that Plaintiffs' request is overly burdensome, thus the agency is unable to process it, as written.

## VI. THIRD-PARTY AUTHORIZATION REQUIRED FOR I-213s

*DHS FOIA Regulations and Applicable Freedom of Information Act Withholdings*

**63.** Again, strictly for purposes of this declaration only, in the event the search for records responsive to Plaintiffs' request is not unreasonably burdensome, ICE is still unable to comply with Plaintiffs' request because they failed to overcome the need for a privacy waiver, in light of the fact that the Plaintiffs specifically requested the disclosure of the aliens' names from the I-213s.

**64.** According to DHS' final rule on FOIA Regulations, in order to determine the ability to disclose third-party records, a balancing test is applied that evaluates the privacy interest of the individual subject of the records against the public interest in disclosing such information. *See* 81 FR 83626 (Nov. 22, 2016).

**65.** In conducting this evaluation, "DHS will weigh the existence or non-existence of a signed authorization on a case-by-case basis." *Id.* "[In many cases], the lack of a signed authorization may prove to be a barrier to access of third-party records unless a significant public interest is raised." *Id.*

**66.** The records sought by Plaintiffs in this request are indisputably a third-party record. I-213s include specific, personally identifiable information about an individual. Based on the nature of the records sought, the burden was placed on the Plaintiffs to show that a significant public interest outweighed the privacy interests of these individuals.

**67.** In the administrative stage of this FOIA request, Plaintiffs provided a relatively brief attempt at meeting the significant public interest threshold. By e-mail dated January 16, 2018, Plaintiffs state that "copies of Form I-213…constitutes a critical tool for understanding the impact of immigration enforcement in our state." *See* Exhibit 4. Plaintiffs go on to say that Courts in the past have granted access to such records, therefore, Plaintiffs should also be granted such access. Pursuant to a litigation review of these statements, alone, it was determined that Plaintiffs' attempt at offering a significant public interest in the disclosure of these records did not rise to the appropriate level.

**68.** Moreover, since the filing of the present action, Plaintiffs have still not provided any additional information supporting their significant public interest argument. They have, again, relied solely on the fact that Courts in the past may have allowed access to similar records;

however, merely reiterating actions taken by Courts in other litigations is not proffering support for any public interest, let alone a *significant* public interest. Since ICE has not been provided with additional support in order to properly evaluate the significant public benefit that could derive from the records, the agency's position has remained the same.

**69.** In accordance with DHS regulations, Plaintiffs have failed to show that the public interest sought to be advanced is a significant one, thus, the individuals' privacy interests outweighs the public interest. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 158, 124 S. Ct. 1570, 1573, 158 L. Ed. 2d 319 (2004).

**FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold**

**70.** The privacy waiver is also required based on the application of FOIA Exemptions 6 and 7(C) to the PII located within an I-213. Under these two exemptions, the balancing test between the privacy interests of the aliens compared with the public interest in disclosure weighs in favor of redacting all PII, including the aliens' names.

**71.** 5 U.S.C. § 552(b)(7) establishes a threshold requirement that, to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes.

**72.** The information for which the ICE FOIA Office would assert Exemption 7 satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. *See* 8 U.S.C. § 1103. ICE is the largest investigative arm of DHS and is responsible for identifying and eliminating vulnerabilities within the nation's borders. ICE is tasked with preventing any activities that threaten national security and public safety by investigating the

people, money, and materials that support illegal enterprises.

**73.** The records and information at issue in this matter pertain to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be present in the United States illegally, including records of interviews, arrests, bookings, detentions, removals, other related investigations, and investigations of allegations of misconduct. Therefore, all I-213s that were requested pursuant to Plaintiffs' FOIA request were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption 7.

**FOIA Exemptions 5 U.S.C. § 552(b)(6) & (7)(C)**

**74.** FOIA Exemption 6 provides that the FOIA does not apply to matters that are "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) ("Exemption 6").

**75.** FOIA Exemption 7(C) protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)").

**76.** When asserting Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in shedding light on ICE's performance of its statutory duties.

**77.** Specifically regarding Plaintiffs' FOIA request, ICE would apply Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the names, dates of birth, A-numbers, signatures, and contact information of third-party individuals and ICE employees.

**78.** Such information, if disclosed to the public or to a third-party requester without the permission of the individual, could expose the individual to identity theft and may reasonably lead to unwanted contact from persons that might seek to harm the individual.

**79.** Furthermore, third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. The identities of persons named in law enforcement files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under Exemptions 6 and 7(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files. The individuals' privacy interest in the information contained I-213s, including the aliens' names, outweighs any minimal public interest in the disclosure of the information. As referenced above, Plaintiffs have not articulated a sufficient public interest or public need to justify release of this information. The disclosure of this PII serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities. Finally, the third parties mentioned in the law enforcement records did not consent to the disclosure of their PII.

**80.** The disclosure of the information described in Paragraph 77 above would constitute a clearly unwarranted invasion of personal privacy and thus Exemption 6 applies. In addition, the disclosure of the information described in Paragraph 77, which was compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy, and thus Exemption 7(C) applies.

**81.** Having determined that the individuals identified in the responsive I-213 records have a cognizable privacy interest in not having their information released, ICE FOIA then has to balance the interest in safeguarding the individuals' privacy from unnecessary public scrutiny

against the public's interest in shedding light on the operations and activities of ICE in the performance of its statutory duties. In this case, Plaintiffs have failed to show that disclosure of the PII in an I-213, including the name of the alien, would shed any further light as to the operations or activities of ICE.

**82.** Based upon the traditional recognition of strong privacy interests in law enforcement records, the categorical withholding of third-party information identified in law enforcement records is appropriate. Moreover, the third parties identified in these records have not provided consent to the release of their personally identifying information as required by 6 C.F.R. §§ 5.3(a) & 5.21(d).

**VII. VI. JURAT CLAUSE**

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Signed this 12th day of March 2020.

Toni Fuentes, Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W.
Washington, D.C. 20536