UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RAMON RODRIGUEZ VAZQUEZ, on behalf of himself as an individual and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JULIO HERNANDEZ, et al.,[1]<br><br>Defendants. | Case No. 3:25-cv-05240-TMC<br><br>ORDER ON SECOND MOTION FOR FURTHER RELIEF |

## I. INTRODUCTION

This case concerns a class of noncitizens who entered the United States without inspection and were later detained by immigration authorities in the country's interior. For decades, the federal government interpreted the Immigration and Nationality Act ("INA") to allow noncitizens in this position to be released on bond during their removal proceedings. But in

[1] Julio Hernandez, Acting Director for the Seattle Field Office, Enforcement and Removal Operations, United States Immigration and Customs Enforcement, is substituted for Laura Hermosillo; Markwayne Mullin, Secretary of the United States Department of Homeland Security, is substituted for Kristi Noem; and Todd Blanche, Attorney General of the United States, is substituted for Pamela Bondi. Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to reflect these changes.

late 2022, the Tacoma Immigration Court departed from this "longstanding approach" and began systematically denying bond to noncitizens who had been detained within the interior of the United States. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164, 1170 (9th Cir. 2026). And in 2025, the Department of Homeland Security ("DHS") and the Board of Immigration Appeals nationalized the Tacoma court's practice, determining that the INA subjected similarly situated noncitizens to mandatory detention. *Id.* at 1170.

This Court was one of the first to consider the legality of the federal government's new position. In September 2025, the Court granted summary judgment to the "Bond Denial Class"—a certified class of noncitizens detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC")—and declared that the INA entitled each class member to a bond hearing. *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025).

In the year since, eleven courts of appeal have considered the same statutory question that was before this Court. Two months ago, the Ninth Circuit affirmed the Court's order and held that noncitizens present in the United States without admission and apprehended in the country's interior are subject to release on bond. *Rodriguez Vazquez*, 183 F.4th 1160. Eight other circuit courts have reached the same conclusion. *See Guerrero Orellana v. Moniz*, --- F.4th ----, No. 25-2152, 2026 WL 2352042 (1st Cir. Aug. 13, 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Buele Morocho v. Warden Phila. FDC*, --- F.4th ----, No. 26-1150, 2026 WL 2546223 (3d Cir. Aug. 28, 2026); *Lopez Garcia v. Guadian*, --- F.4th ----, No. 25-7044, 2026 WL 2661092 (4th Cir. Sept. 10, 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909 (7th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258 (11th Cir. 2026). Only two circuits—the Fifth and Eighth—have held that these noncitizens are subject to mandatory detention. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026);

*Herrera Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). On October 1, the U.S. Supreme Court granted certiorari in *Barbosa da Cunha* to resolve the circuit split. No. 26-104, --- S. Ct. ----, 2026 WL 2942994 (Mem) (Oct. 1, 2026).

The Bond Denial Class now moves for further relief under the Declaratory Judgment Act, 28 U.S.C. § 2202. Dkt. 136. The Class claims that the Defendants here, including DHS and federal immigration officials, have begun transferring class members from NWIPC to detention centers in the Fifth and Eighth Circuits, possibly to circumvent the Court's judgment. *Id.* at 2–3, 11. The Class further asserts that Defendants have been deficient in providing class counsel with the immigration documents of prospective class members, as ordered by the Court earlier this year. *Id.* at 3–4; *see Rodriguez Vazquez v. Hermosillo*, 816 F. Supp. 3d 1234, 1247–48 (W.D. Wash. 2026); Dkt. 116 (clarifying the prior order granting further relief).

Regardless of the reasons underlying these transfers, the movement of class members to the Fifth and Eighth Circuits before they have an opportunity for release on bond strips them of their rights under this Court's declaratory judgment. The Court concludes that it is therefore necessary and proper for any potential Bond Denial Class member who has requested a bond hearing before an Immigration Judge ("IJ") to receive meaningful notice and an opportunity to seek relief prior to any transfer to the Fifth or Eighth Circuit. Moreover, to ensure that Defendants timely transmit detainees' I-213s and Notices to Appear to class counsel in accordance with the Court's prior orders (Dkts. 112, 116), Defendants must submit monthly status reports detailing their compliance with this requirement. The motion for further relief (Dkt. 136) is thus GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

On March 20, 2025, Plaintiff Ramon Rodriguez Vazquez filed suit seeking to represent a class of noncitizens in challenging the Tacoma Immigration Court's bond denial practice. Dkt. 1

¶¶ 89–93, 99–102. On May 2, 2025, the Court certified a Bond Denial Class comprised of the following individuals:

> All noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

*Rodriguez Vazquez v. Bostock*, 349 F.R.D. 333, 365 (W.D. Wash. 2025). Then, on September 30, 2025, the Court granted summary judgment to the Bond Denial Class and issued the following declaratory relief:

> Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration Court's practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

802 F. Supp. 3d at 1336.

One month later, the Class moved for further relief under the Court's declaratory judgment and § 2202. Dkt. 74. On January 14, 2026, the Court granted the Class's motion in part. 816 F. Supp. 3d at 1248. The Court noted that the Tacoma IJs had declined to follow the declaratory judgment, forcing class members to file habeas petitions in federal district court as the only means of enforcing their rights. *Id.* at 1239–40. The Court ordered Defendants to "provide individual notice of the *Rodriguez Vazquez* declaratory judgment . . . to all noncitizens charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) or (a)(7) who are detained at NWIPC" and "provide a weekly list to class counsel of all detainees who received the notice that week, along with a copy of each listed detainee's I-213 and charges or Notice to Appear." *Id.* at 1248. The Court then issued a subsequent order clarifying that "as part of the weekly lists to class counsel, Defendants must provide class counsel with each listed detainee's (1) I-213 *and* (2) either a list of the detainee's charges or their Notice to Appear." Dkt. 116 at 2.

In July, the Ninth Circuit affirmed the Court's summary judgment order. 183 F.4th at 1165. As far as the Court is aware, the Tacoma IJs have since begun to grant bond hearings to class members who request them, obviating the need for individual habeas petitions. In August, the parties stipulated to amend the notice provided to NWIPC detainees to reflect this development. Dkts. 132, 133. At a status conference following the Ninth Circuit's ruling, the Court instructed Defendants to file a motion if they sought any other modifications to or dissolution of the January 14 order. Dkt. 131 at 8. Defendants have yet to do so.

On September 4, the Bond Denial Class again moved for further relief under the Court's declaratory judgment. Dkt. 136. The Class seeks an order requiring Defendants to provide five days' notice to class counsel "[p]rior to transferring any individual covered by the notice requirements required by the Court's previous order granting relief under 28 U.S.C. § 2202" and to "provide weekly status reports regarding their compliance with the Court's previous order granting relief under 28 U.S.C. § 2202." Dkt. 136-1 at 1. On September 21, Defendants responded to the motion (Dkt. 142), and on September 25, the Class replied (Dkt. 146). On September 28, the Court held a hearing. Dkt. 149. The motion is now ripe for the Court's review.

## III. JURISDICTION

### A. Jurisdiction under the Declaratory Judgment Act

Under the Declaratory Judgment Act, "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. A request for relief under § 2202 is "not the functional equivalent of a motion to alter or to amend the judgment," *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 621 (7th Cir. 1995), and the fact that the relief requested may be coercive or injunctive does not divest a court of jurisdiction to consider it, *see Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 548 (D.C.

Cir. 1988) (concluding that § 2202 "clearly anticipate[s] ancillary or subsequent coercion to make an original declaratory judgment effective"). The "purpose of a motion under this section of the judicial code is not to change the declaratory judgment but to enforce it." *GNB Battery*, 65 F.3d at 621.

A district court retains jurisdiction to grant relief under this section even after a party has appealed a declaratory judgment order. *See Liberty Mut. Fire Ins. Co. v. Bosa Dev. California II, Inc.*, No. 317CV00945AJBBGS, 2020 WL 4285003, at *2 (S.D. Cal. July 27, 2020); *Horn & Hardart Co.*, 843 F.2d at 548; *United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 572 (5th Cir. 2005) ("[N]either the filing of an appeal nor a lengthy delay after the trial court's initial ruling terminates the court's authority to grant further relief pursuant to § 2202."); *Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 834 (6th Cir. 2019) ("In fact, the district court can grant further relief even after a *completed* appeal.").

**B. Jurisdiction under the INA**

The parties dispute whether the Court has jurisdiction to order Defendants to provide notice before transferring detainees out of NWIPC. Defendants argue that two provisions of the INA, 8 U.S.C. §§ 1252(f) and 1231(g), bar the Court from considering this request, as requiring such notice would functionally enjoin a planned transfer for five days. Dkt. 142 at 4–7. The Class contends that these provisions do not strip courts of the ability to enjoin detainee transfers, and that even if they did, pre-transfer notice is simply a "procedural prerequisite," not a prohibition. Dkt. 146 at 2; *see also* Dkt. 136 at 7–9. The Court agrees with the Class's second argument.

Section 1231(g)(1) provides that "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." And § 1252(f)(1) strips lower courts of "jurisdiction or authority to enjoin or restrain the operation of"

8 U.S.C. §§ 1221–1232, "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." The Supreme Court has explained that "§ 1252(f)(1) generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" the specified provisions on a classwide basis. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022).

Federal courts of appeal are divided over whether these provisions prohibit district courts from enjoining transfers of noncitizen detainees. *See Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (concluding under § 1231(g) and § 1252(f) that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a *Bivens* class action suit"); *Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 209 (4th Cir. 2019) (reasoning that "the language of § 1231(g) does not address transfers at all" and "appears to relate more centrally to the government's brick and mortar obligations" for procuring detention facilities); *Ozturk v. Hyde*, 136 F.4th 382, 396 (2d Cir. 2025) ("[E]ven if the discretionary authority to transfer a detainee between facilities is contemplated under § 1231(g), such authority is merely implied." (emphasis omitted)).

The Ninth Circuit has not yet interpreted the current language of § 1231(g). However, it cited a former provision of the INA containing substantially similar language for the contention that the Attorney General has the authority to transfer detainees "out of the circuit in which they were apprehended." *Maldonado-Cruz v. U.S. Dep't of Immigr. & Naturalization*, 883 F.2d 788, 790 (9th Cir. 1989) (citing a former version of 8 U.S.C. § 1252(c), which at that time authorized the Attorney General to "arrange for appropriate places of detention" for noncitizens in federal immigration custody), *abrogated on other grounds by I.N.S. v. Elias-Zacarias*, 502 U.S. 478 (1992); *Rios-Berrios v. I.N.S.*, 776 F.2d 859, 863 (9th Cir. 1985) (noting that the decision to

transfer a detainee from California to Florida was "within the province of the Attorney General" (citing former 8 U.S.C. § 1252(c))). These prior cases suggest that the Ninth Circuit may interpret § 1231(g) to confer similar authority over transfers.

But even assuming that § 1231(g) does grant such authority, it is not clear that a notice requirement "enjoin[s] or restrain[s] the operation of" that provision. The Court agrees with the Class that pre-transfer notice does not require Defendants to "refrain from taking actions to enforce, implement, or otherwise carry out" the Attorney General's transfer authority. *Aleman Gonzalez*, 596 U.S. at 550. In another order arising from the transfer of a Bond Denial Class member out of NWIPC, this Court found that the detainee was identified for possible transfer at least three and possibly four days before the transfer occurred. *Cantero Garcia v. Wamsley*, No. 2:25-cv-02092-TMC, 2026 WL 2411545, at *2 (W.D. Wash. Aug. 13, 2026). Requiring notice to class members when they have been identified for transfer to the Fifth or Eighth Circuit does not enjoin that transfer; it simply provides an opportunity for them to challenge that transfer on an individual basis, as § 1252(f) plainly allows.

Moreover, the Ninth Circuit has suggested that § 1252(f) does not prohibit injunctive relief related to activity that does not appear in the text of the covered provisions. *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 812–15 (9th Cir. 2020) (concluding that § 1252(f)(1) did not bar classwide relief enjoining Immigration and Customs Enforcement from issuing immigration detainers in certain jurisdictions because "none of the provisions that § 1252(f)(1) encompasses refers to immigration detainers"). Under a notice requirement, Defendants remain free to transfer detainees as needed to address capacity concerns, removal logistics, and detainee safety. They simply need to take the additional step of informing counsel before such transfers occur. Barring any further action by class members or their counsel, these

transfers would then proceed as normal. The Court thus concludes that it retains jurisdiction to order notice prior to transfer of a class member.

## IV. LEGAL STANDARD

Section 2202 "provid[es] for 'supplemental' relief which may be granted in a proceeding subsequent to the original." *Cent. Freight Lines, Inc. v. Amazon Fulfillment Servs.*, No. C17-0814JLR, 2019 WL 5227400, at *5 (W.D. Wash. Oct. 16, 2019) (quoting *Horn & Hardart Co. v. Nat'l R.R. Passenger Corp.*, 659 F. Supp. 1258, 1261 (D.D.C. 1987), *aff'd sub nom. Horn & Hardart Co.*, 843 F.2d 546). Per "the plain language of the Declaratory Judgment Act," a request under this section need not be "'necessary' to effectuate" a declaratory judgment; it "need only be proper." *Horn & Hardart Co.*, 843 F.2d at 548.

## V. DISCUSSION

### A. Once a potential class member has requested a bond hearing before an Immigration Judge, Defendants must provide 72 hours' notice before transfer to the Fifth or Eighth Circuit.

The Class argues that five days' pre-transfer notice is necessary and proper because transfer from NWIPC to the Fifth or Eighth Circuit effectively strips class members of their right, established by this Court's declaratory judgment and affirmed by the Ninth Circuit, to consideration for release on bond. Dkt. 136 at 9–12. Defendants counter that the requested relief would expand the declaratory judgment beyond its scope by imposing "new substantive obligations untethered from what the Court has already ordered." Dkt. 142 at 7–9.

The Court agrees with the Class that some form of pre-transfer notice is proper to give effect to the Court's declaratory judgment. *Horn & Hardart Co.*, 843 F.2d at 548. Regardless of whether previous transfers of class members were intended to evade the Court's judgment, *see* Dkt. 137-1 at 3–4, Dkt. 142 at 11–12, the fact remains that transfer of a class member to a jurisdiction where they will be considered subject to mandatory detention denies that person

access to a bond hearing. Although circuit splits in immigration law are not uncommon, two factors make this case unique. First, the Bond Denial Class members are not only the beneficiaries of the Ninth Circuit's ruling—they are parties to the case who have enforceable rights under the judgment they won. Second, it is rarely the case that one party to a judgment can forcibly transfer the other to a jurisdiction where their rights under that judgment will be ignored, let alone where what is at stake is the opportunity for release from imprisonment. *Cf. Maldonado-Cruz*, 883 F.2d at 790–91 (noting that in petition for review context, transfer of detainee to another circuit should not facilitate "forum shopping" by the government). Transfer without notice and a meaningful opportunity to enforce the rights granted under the declaratory judgment thus renders the Court's order ineffective as to that class member.

As both parties acknowledge, Dkt. 136 at 9–11, Dkt. 142 at 10–12, the Court previously rejected a similar request for pre-transfer notice in this case. 816 F. Supp. 3d at 1247–48. In so doing, the Court cited both the nationwide declaratory judgment in *Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), which vacated the DHS policy considering all similarly situated detainees as subject to mandatory detention, and the availability of pre-transfer notice for habeas petitioners seeking to enforce their rights under this Court's declaratory judgment. 816 F. Supp. 3d at 1247–48; *see* General Order 10-25 Ex. 1 (Dec. 18, 2025). But as the Class points out, the Ninth Circuit has since stayed the nationwide effect of *Maldonado Bautista*, and a class member is no longer required to file a habeas petition to obtain a bond hearing at the Tacoma Immigration Court. Dkt. 136 at 9–10. These justifications no longer persuade the Court that pre-transfer notice is improper.

In crafting the proper form of pre-transfer notice, the Court aims to provide relief that protects the adjudicated rights of class members while minimizing the operational burden on Defendants. *See* Dkt. 143 ¶¶ 13–15. The Class's proposal for the persons covered by the

notice—"any individual covered by the notice requirements" of the prior order granting further relief—is overinclusive, as it would almost certainly include individuals who either do not request a bond hearing (for instance, if they wish to voluntarily depart) or have already had one. Dkt. 136-1 at 1. Instead, the notice should cover only those potential class members—defined by the notice requirements of the Court's prior order granting further relief—who have invoked their rights under the Court's declaratory judgment by requesting a bond hearing, but have not yet had one.

In addition, it is proper to order notice only before transfer to a detention center in the Fifth Circuit or Eighth Circuit, where class members would become subject to mandatory detention. While the Class argues that "all transfers, including those to other facilities within the Ninth Circuit may also violate class members' rights," such as access to counsel, Dkt. 138 ¶ 18, these rights are beyond the scope of the Court's declaratory judgment, which concerned only the ability to obtain a bond hearing under the INA. And although class counsel suggested at the hearing that Defendants may circumvent this ruling by transferring class members first to another location within the Ninth Circuit and *then* to the Fifth or Eighth Circuit, the record at this point is too speculative for the Court to order further relief to guard against this possibility. If Plaintiffs develop evidence that Defendants are indeed engaged in such dedicated evasion, they may seek modification of the Court's order. Finally, as to the timing of the notice, the Court requires that notice be provided 72 hours in advance of any planned transfer to these circuits, consistent with this district's practice with regard to habeas petitions. *See* General Order 10-25 Ex. 1 (Dec. 18, 2025).

**B. Defendants must submit monthly status reports regarding their compliance with the requirement that they provide class counsel with immigration documents for certain detainees.**

In addition to pre-transfer notice, the Class asks the Court to require Defendants to submit weekly status reports regarding their required production of I-213s and Notices to Appear for prospective class members. Dkt. 136 at 12–13. The Class submits declarations showing that Defendants are frequently late in providing these documents to class counsel or fail to provide them at all. Dkts. 138-1, 138-2, 138-3, 148-1. Defendants respond that this requirement would be "unduly burdensome" and that the Ninth Circuit's decision renders the Court's previous document production requirement moot. Dkt. 142 at 12–14. They submit a declaration explaining that some delay in production occurs because NWIPC staff do not always receive these documents promptly along with a noncitizen's arrival at the detention facility. Dkt. 143 ¶ 16.

To the extent that Defendants argue that the document production requirement is overly burdensome or moot, the Court reminds Defendants that the proper avenue to raise these arguments is by filing a separate motion to amend or dissolve the order entered at Dkt. 112. *See* Dkt. 131 at 8. While that requirement remains in effect, Defendants must meet their obligations under the order by making a complete and timely production of the specified detainee records. However, the Court acknowledges that delays may be due in part to logistical circumstances outside the control of NWIPC staff. In recognition of this administrative burden, the Court therefore requires Defendants to provide status reports as requested by the Class on a monthly rather than weekly basis.

**C. Defendants may propose modifications to this order.**

At the hearing, the Court questioned both parties with the aim of crafting an order that would minimize the operational burden of the notice requirement on Defendants. Plaintiffs

suggested, for example, that it may be easier for Defendants to simply provide notice for any potential class member, rather than first discern whether the individual has requested or had a bond hearing. Defendants' counsel, however, stated that he would need further input from his clients to provide such guidance. The Court invites Defendants to propose modifications to this Order if there is a different notice procedure that would protect the adjudicated rights of class members while minimizing the effect on their management of operations at NWIPC. Of course, Defendants could also unburden themselves of any notice procedure by agreeing to comply with the Court's judgment even if they transfer a class member elsewhere. In the absence of such agreement, or more detailed input from Defendants, the Court has aimed to order notice that is as narrowly tailored as possible to protect class members' rights under the judgment.

## VI. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. The second motion for further relief under 28 U.S.C. § 2202 (Dkt. 136) is GRANTED IN PART and DENIED IN PART.
2. Once a potential class member has requested a bond hearing before an Immigration Judge, Defendants must provide that potential class member, class counsel, and the potential class member's immigration attorney (if applicable) with 72 hours' notice before transferring the potential class member to a detention facility within the Fifth or Eighth Circuit.
3. This requirement does not apply to potential class members for whom a bond hearing has already occurred.
4. Defendants must submit to the Court monthly status reports regarding their compliance with the requirement, located in paragraph 3 of the Order granting further relief (Dkt. 112 at 19), that they provide class counsel with each listed

detainee's (1) I-213 and (2) either a list of the detainee's charges or their Notice to Appear ("NTA").

5. This status report will be due on the last court day of each month (beginning in October 2026) and must include (1) the number of individuals listed on all lists of prospective class members produced during the previous month; (2) the number of I-213s produced for individuals on those lists in that same time frame; (3) the number of NTAs produced for individuals on those lists in that same time frame; (4) an explanation for why any I-213s or NTAs were not produced as required; and (5) an update as to any I-213s or NTAs not previously produced, including how many additional such documents have been produced and to which weekly production those supplemental documents correspond.

6. This order, along with the orders entered at Dkts. 112, 116, and 133, will remain in effect until further order of this Court or a decision from the Supreme Court in No. 26-104, *Rhoney v. Barbosa da Cunha.*

Dated this 1st day of October, 2026.

Tiffany M. Cartwright
United States District Judge